UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COLBY TAYLOR, individually and as a personal representative of the ESTATE OF JAY TAYLOR, a deceased individual; LESLIE TAYLOR, individually and as a personal representative of the ESTATE OF JAY TAYLOR, a deceased individual,<br><br>Plaintiffs,<br><br>v.<br><br>DISCORD INC., a Delaware company<br><br>Defendant. | No. 3:26-cv-05245-BHS<br><br>**DEFENDANT DISCORD INC.'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>**NOTE ON MOTION CALENDAR: June 9, 2026** |

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

<strong>Page</strong>

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF FACTS .................................................................................... 1

    A.   Discord Users Agree to Be Bound by Its Terms of Service. .................................. 1

    B.   The Terms of Service Contain a Mandatory Arbitration Agreement That Delegates Questions of Arbitrability to the Arbitrator. ......................................... 5

    C.   Plaintiffs' Son Repeatedly Agreed to Discord's Terms of Service. ....................... 6

    D.   Plaintiffs Filed Suit in Contravention of the Arbitration Agreement. .................... 7

III. LEGAL STANDARD ........................................................................................... 7

IV.  ARGUMENT ........................................................................................................ 8

    A.   Plaintiffs' Son Agreed to Arbitrate When He Repeatedly Assented to Discord's Terms of Service. .................................................................................... 8

    B.   Plaintiffs Must Arbitrate the Claims They Bring As Successors-in-Interest. ....... 10

    C.   Because the Arbitration Agreement Incorporates the FAA and JAMS Rules, the Arbitrator Must Decide Any Arguments Concerning Arbitrability. ............... 10

    D.   The Court Should Stay These Proceedings, Including Adjudication of Plaintiffs' Individual Claims, Pending Arbitration. .............................................. 12

V.   CONCLUSION ................................................................................................... 14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*A.C. by & through Carbajal v. Nintendo of Am. Inc.*,
2021 WL 1840835 (W.D. Wash. Apr. 29, 2021) ................................................................. 12

*Adibzadeh v. Best Buy, Co.*,
2021 WL 4440313 (N.D. Cal. Mar. 2, 2021) ........................................................................ 9

*Angelilli v. Activision Blizzard, Inc.*,
2025 WL 524276 (N.D. Ill. Feb. 18, 2025) ........................................................................ 12

*Antonetti v. Activision Blizzard, Inc.*,
764 F. Supp. 3d 1309 (N.D. Ga. 2025) ............................................................................... 12

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .............................................................................................................. 8

*Briggs v. Serv. Corp Int'l*,
2023 WL 2075958 (W.D. Wash. Feb. 17, 2023) ............................................................... 11

*Chen v. Sierra Trading Post, Inc.*,
2019 WL 3564659 (W.D. Wash. Aug. 6, 2019) .................................................................. 9

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) ............................................................................................................ 12

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ....................................................................................................... 8, 14

*Dunn v. Activision Blizzard, Inc.*,
749 F. Supp. 3d 976 (E.D. Ark. 2024) ............................................................................... 12

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .............................................................................................................. 7

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) .............................................................................................................. 8

*Gabriella v. Recology Inc.*,
2022 WL 6271866 (N.D. Cal. Sept. 9, 2022) ..................................................................... 14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ............................................................................................... 7, 8, 11, 12

*Johnson v. Activision Blizzard, Inc.*,
2025 WL 679033 (E.D. Ark. Mar. 3, 2025) ....................................................................... 12

DISCORD'S MOTION TO COMPEL - ii
Case No. 3:26-cv-05245-BHS

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) ...................................................................................................... 14

*Lee v. DoNotPay, Inc.*,
683 F. Supp. 3d 1062 (C.D. Cal. 2023)........................................................................... 9

*Lee v. Ticketmaster LLC*,
817 F. App'x 393 (9th Cir. 2020).................................................................................. 10

*Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*,
652 F. Supp. 3d 1313 (W.D. Wash. Jan. 24, 2023)....................................................... 13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
473 U.S. 614 (1985) ........................................................................................................ 8

*Moreno v. T-Mobile USA, Inc.*,
2023 WL 401913 (W.D. Wash. Jan. 25, 2023) .............................................................. 11

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023)...................................................................................... 9, 10

*Open Book Theatre Co. v. Brown Paper Tickets, LLC*,
749 F. Supp. 3d 1076 (S.D. Cal. 2024) ........................................................................... 9

*Orellana v. Roblox Corp.*,
769 F. Supp. 3d 1273 (M.D. Fla. 2025) ........................................................................ 12

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024).................................................................................... 9, 11

*Patton v. Cox*,
276 F.3d 493 (9th Cir. 2002)........................................................................................... 8

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) .............................................................................................. 8, 10, 11

*Reynolds v. Safeway, Inc.*,
2023 WL 2560853 (W.D. Wash. Mar. 17, 2023)............................................................ 11

*Saeedy v. Microsoft Corp.*,
757 F. Supp. 3d 1172 (W.D. Wash. 2024) .................................................................. 9, 10

*Sandler v. Modernizing Med., Inc.*,
170 F.4th 1209 (9th Cir. 2026)...................................................................................... 11

*Smiles Servs. LLC v. Frye*,
2023 WL 6066683 (W.D. Wash. Sept. 18, 2023) .......................................................... 13

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ...................................................................................................... 12

DISCORD'S MOTION TO COMPEL- iii
Case No. 3:26-cv-05245-BHS

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*In re StockX Customer Data Sec. Breach Litig.*,
19 F.4th 873 (6th Cir. 2021).................................................................................. 12

*Tuminello v. Richards*,
2012 WL 750305 (W.D. Wash. Mar. 8, 2012), *aff'd*, 504 F. App'x 557 (9th Cir. 2013).........8

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
46 F. App'x 412 (9th Cir. 2002)............................................................................ 13

*Weber v. X Corp.*,
2024 WL 470255 (E.D. Wash. Jan. 8, 2024) ......................................................... 13

**State Cases**

*B.D. v. Blizzard Ent., Inc.*,
76 Cal. App. 5th 931 (2022).............................................................................. 9, 10

*Coughenour v. Del Taco, LLC*,
57 Cal. App. 5th 740 (2020)................................................................................. 11

*Hearden v. Windsor Redding Care Ctr., LLC*,
103 Cal. App. 5th 1010 (2024)............................................................................. 10

*Mahram v. Kroger Co.*,
104 Cal. App. 5th 303 (2024)................................................................................. 9

*San Diego Gas & Elec. Co. v. Super. Ct.*,
146 Cal. App. 4th 1545 (2007)............................................................................. 10

*Thomas v. Westlake*,
204 Cal. App. 4th 605 (2012)............................................................................... 10

*Woodall v. Avalon Care Center-Federal Way, LLC*,
155 Wn. App. 919 (2010)..................................................................................... 10

**Federal Statutes**

9 U.S.C. § 2 .................................................................................................... 5, 7

9 U.S.C. § 3 .................................................................................................. 1, 12

9 U.S.C. § 4 ...................................................................................................... 11

**State Statutes**

Cal. Fam. Code § 6700......................................................................................... 11

Cal. Fam. Code § 6701......................................................................................... 11

Cal. Fam. Code § 6710......................................................................................... 11

DISCORD'S MOTION TO COMPEL- iv
Case No. 3:26-cv-05245-BHS

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

RCW 26.28.030......................................................................................................... 12

**Rules**

JAMS Comprehensive Arbitration Rules & Procedures Rule 11(b)............................................ 11

DISCORD'S MOTION TO COMPEL- v
Case No. 3:26-cv-05245-BHS

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# I. INTRODUCTION

Plaintiffs bring this action against Discord Inc., an online messaging service, seeking to hold it liable for the criminal conduct of third parties who, through messages exchanged on Discord, manipulated their son to take his own life. They bring survivor claims as the representatives of his estate and non-survivor claims on their own behalf. Although no family should have to endure the tragedy Plaintiffs experienced, Discord cannot be held liable for this misuse of its platform. Before this case proceeds any further, however, the Court should send the parties to arbitration because Plaintiffs' son entered a valid agreement to arbitrate with Discord.

Plaintiffs' son accepted Discord's Terms of Service at least three times. Each time, the Terms contained an arbitration agreement. And each time, the Terms contained clear and unmistakable language agreeing to delegate all disputes concerning the agreement's scope and enforceability to the arbitrator.

Because Plaintiffs' son agreed to arbitrate with Discord, Plaintiffs must resolve the survivor claims in arbitration. Discord respectfully requests that the Court order Plaintiffs to arbitrate those claims and stay all proceedings pending the arbitration. *See* 9 U.S.C. § 3. To avoid unnecessary parallel proceedings and the potential for conflicting rulings, the stay should extend to Plaintiffs' non-survivor claims, which are factually and legally intertwined with the survivor claims, until the arbitration is complete.

# II. STATEMENT OF FACTS

Discord is an online messaging service that enables people to communicate by making calls, sending messages, and sharing documents, pictures, videos, and other media. Compl. ¶ 39.

## A. Discord Users Agree to Be Bound by Its Terms of Service.

The Terms of Service are an agreement between Discord and users that governs the use of Discord's services, apps, websites, and other products. *See* Robbins Declaration Exs. E-F. To use the service, a user must first create a Discord account. Robbins Decl. ¶ 2. Creating a Discord account requires first accepting the Terms of Service. *Id.* ¶¶ 8–11.

Discord has identified three accounts created by Plaintiffs' son. *Id.* ¶ 3. These accounts were created on Discord's website in August 2019, December 2019, and January 2022. *Id.* ¶¶ 4–

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

6. There are two ways to create a Discord account on Discord's website: through the home page or through the registration page. *Id.* ¶ 7. Although it is unclear whether Plaintiffs' son used the home page or registration page to create his accounts, both methods required him to accept Discord's Terms of Service.

***First***, users creating an account on Discord's *home* page in August 2019 and December 2019 were required to click a button titled "Open Discord in Your Browser," which brought users to a page identical or nearly identical to the following:



*Id.* ¶ 8 & Ex. A. As shown above, Discord displayed a notice explaining that, "By registering, you agree to Discord's **Terms of Service** and **Privacy Policy**." *Id.* The notice appeared immediately below an arrow button that users were required to click to register. *Id.* The phrases "Terms of Service" and "Privacy Policy" are set off in bolded, white text that contrasts with the black background of the page and the gray text of the rest of the sentence, indicating that they were hyperlinks through which registrants could access and review the full text. *Id.* Users could not register their account without clicking the arrow button next to this notice. *Id.*

Users creating an account on Discord's *home* page in January 2022 were likewise required to click a button titled "Open Discord in Your Browser," which brought users to a page identical or nearly identical to the following:

DISCORD'S MOTION TO COMPEL - 2
Case No. 3:26-cv-05245-BHS

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax



*Id.* ¶ 9 & Ex. B.  As shown above, Discord displayed a notice explaining that "By registering, you agree to Discord's Terms of Service and Privacy Policy."  *Id*.  The notice appeared immediately below an arrow button that users were required to click to register.  *Id.*  And the phrases "Terms of Service" and "Privacy Policy" were underlined, in contrast to the other language in the notice, indicating they were hyperlinks through which registrants could access and review the full text.  *Id.*  Users could not register their account without clicking the arrow button by this notice.  *Id.*

*Second*, users creating an account on Discord's *registration* page in August 2019 and December 2019 were presented a page identical or nearly identical to the following:

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax



*Id.* ¶ 10 & Ex. C. Users creating an account on Discord's *registration* page in January 2022 were presented with a page identical or nearly identical to the following:



*Id.* ¶ 11 & Ex. D.

DISCORD'S MOTION TO COMPEL - 4
Case No. 3:26-cv-05245-BHS

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

As shown above, a user creating an account through Discord's registration page in August 2019 to January 2022 would have been shown a notice explaining that "By registering, you agree to Discord's Terms of Service and Privacy Policy." *Id.* ¶¶ 10–11 & Exs. C–D. The notice appeared immediately below a "Continue" button that users were required to click to register. *Id.* The phrases "Terms of Service" and "Privacy Policy" were set off in a distinct color in blue text, in contrast to the other language in the notice, indicating they were hyperlinks that, when clicked, displayed the full terms. *Id.* Users could not create an account through this process without clicking the action button. *Id.*

**B.      The Terms of Service Contain a Mandatory Arbitration Agreement That Delegates Questions of Arbitrability to the Arbitrator.**

The 2020 Terms of Service contain a conspicuous, easy-to-understand agreement to arbitrate. *See* Robbins Decl. Ex. F (hereinafter "2020 TOS") at 9–11.[1] The introduction to the Terms calls attention to the arbitration agreement in an all-caps, bold notice:

> **IMPORTANT NOTICE: THESE TERMS OF SERVICE CONTAIN A BINDING ARBITRATION PROVISION AND CLASS ACTION WAIVER. IT AFFECTS YOUR LEGAL RIGHTS AS DETAILED IN THE DISPUTE RESOLUTION AND CLASS ACTION WAIVER SECTION BELOW. PLEASE READ CAREFULLY.**

*Id.* at 1.

The section header appears in large bold font: "**DISPUTE RESOLUTION**." *Id.* at 9. The agreement requires the user to first attempt to resolve any dispute with Discord informally. *Id.* at 10. If the parties cannot resolve the dispute this way, the user agrees to mandatory arbitration. *Id.* The agreement also provides that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, governs its interpretation and enforcement. 2020 TOS at 9.

The agreement further states that the arbitration "shall be ... governed by the rules of JAMS that are in effect at the time the arbitration is initiated." *Id.* at 10. Under the current JAMS rules,

---

[1] Discord cites its 2020 Terms of Service, updated May 7, 2020, because they were in effect when Plaintiffs' son created his most recent account in January 2022. *See infra* § II.C. The arbitration agreement in Discord's 2018 Terms of Service, in effect when Plaintiffs' son made his first two Discord accounts, is materially the same because it contained a mandatory arbitration agreement incorporating the "rules of JAMS that are in effect at the time the arbitration is initiated." *Compare* 2020 TOS at 10, *with* Robbins Decl. Ex. E (2018 TOS) at 10.

DISCORD'S MOTION TO COMPEL - 5
Case No. 3:26-cv-05245-BHS

"[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." Robbins Decl. Ex. G § 11(b). Further, "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *Id.*

In a subsection titled "**Opt-Out Right**," the agreement permits users to decline the arbitration agreement by emailing notice to a specified email address within ninety days of either account creation or the Terms of Service's effective date. 2020 TOS at 11. The agreement also contains a subsection titled "**Survival**," which states that the arbitration section of the Terms "shall survive any termination of your account or the Service." *Id.*

The Terms further state that, "[b]y using or accessing" the Discord app or website, "you agree (i) that you are 13 years of age and the minimum age of digital consent in your country, (ii) if you are the age of majority in your jurisdiction or over, that you have read, understood, and accept to be bound by the Terms, and (iii) if you are between 13 (or the minimum age of digital consent, as applicable) and the age of majority in your jurisdiction, that your legal guardian has reviewed and agrees to these Terms." *Id.* at 1.

Finally, the Terms state that California law will govern any dispute arising from them. *Id.* at 12 ("By visiting or using the Service, you agree that the laws of the United States and the State of California, without regard to principles of conflict of laws and regardless of your location, will govern these Terms and any dispute of any sort that might arise between you and the Company.").

### C. Plaintiffs' Son Repeatedly Agreed to Discord's Terms of Service.

Plaintiffs' counsel provided Discord with the email addresses and user IDs associated with the Discord accounts Plaintiffs claim their son used. Li Decl. ¶ 2. Discord located three accounts based on this information. Those three accounts were created through Discord's website in August 2019, December 2019, and January 2022. Robbins Decl. ¶¶ 3–6.

Plaintiffs' son agreed to the 2018 Terms of Service twice, when he created his first and second accounts in August 2019 and December 2019. *See id.* ¶¶ 3–5 & Ex. E. At the time, he was approximately ten or eleven years old. *Cf.* Compl. ¶ 23. Plaintiffs' son agreed to the 2020

DISCORD'S MOTION TO COMPEL - 6
Case No. 3:26-cv-05245-BHS

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Terms of Service when he created his third Discord account in January 2022, when he was thirteen years old. *Id.*; Robbins Decl. ¶¶ 3, 6 & Ex. F. On each occasion, he clicked the action button or checked a box, which was immediately next to a notice indicating that taking such action meant agreeing to the hyperlinked Terms. *See supra* § II.A; Robbins Decl. ¶¶ 8–11. In each case, the notice's reference to the "Terms of Service" contained a hyperlink that provided a reasonable opportunity to review the Terms before deciding whether to create the account. *See id*.

Plaintiffs' son could not have created his accounts without first clicking the action button or checking the box to accept the Terms. *See id*. The Complaint does not allege, and Discord has not located records suggesting, that Plaintiffs' son followed the arbitration agreement's opt-out procedure. Robbins Decl. ¶ 14.

### D. Plaintiffs Filed Suit in Contravention of the Arbitration Agreement.

Plaintiffs filed this action on February 19, 2026. *See generally* Compl. The Complaint alleges that another Discord user began communicating with Plaintiffs' son and eventually manipulated him to take his own life. Compl. ¶¶ 107–114. Against Discord, Plaintiffs assert individually and as successors-in-interest to their son's estate claims for outrage (*id.* ¶¶ 136–145); negligence (*id.* ¶¶ 166–170); and violations of Washington's product liability and sex trafficking statutes (*id.* ¶¶ 146–165, 171–180).

### III. LEGAL STANDARD

Under the FAA, which governs the arbitration agreement, 2020 Terms at 9, agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects federal policy recognizing that "courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019). Congress enacted the FAA to overcome judicial hostility to arbitration because "in Congress's judgment arbitration had more to offer than courts recognized—not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018).

The FAA "leaves no place for the exercise of discretion" but instead "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration

DISCORD'S MOTION TO COMPEL - 7
Case No. 3:26-cv-05245-BHS

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). As this Court has explained, "the FAA divests courts of their discretion and requires courts to resolve any doubts in favor of compelling arbitration." *Tuminello v. Richards*, 2012 WL 750305, at *2 (W.D. Wash. Mar. 8, 2012) (citing *Dean Witter Reynolds.*, 470 U.S. at 213), *aff'd*, 504 F. App'x 557 (9th Cir. 2013); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 631 (1985) (noting the "emphatic federal policy in favor of arbitral dispute resolution").

Under the FAA, courts must enforce an agreement to delegate arbitrability questions to the arbitrator, just as they must enforce the arbitration agreement itself. *See, e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67-69 (2010); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995). This enforcement obligation has no exceptions. When an arbitration agreement "delegates the arbitrability question to an arbitrator, a court may not override the contract[,] ... even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 586 U.S. at 68. The only question, then, is whether a valid arbitration agreement delegating arbitrability questions to the arbitrator exists. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986). If so, "a court may not decide the arbitrability issue" and must send the parties to arbitration. *Henry Schein*, 586 U.S. at 69.

## IV. ARGUMENT

### A. Plaintiffs' Son Agreed to Arbitrate When He Repeatedly Assented to Discord's Terms of Service.

In deciding whether parties agreed to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi.*, 514 U.S. at 944. To determine which state's law applies, courts use the choice-of-law rules of the forum state. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). Here, the forum state is Washington, while Discord's Terms of Service include a California choice-of-law provision. 2020 TOS at 12. But the Court need not engage in any choice-of-law analysis because the outcome under either Washington or California law is the same. Both states' laws provide that online agreements, including "clickwrap" and "sign-in wrap" agreements, are enforceable where, as here, the website provides reasonably

DISCORD'S MOTION TO COMPEL - 8
Case No. 3:26-cv-05245-BHS

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

conspicuous notice of the agreement's terms, and the consumer takes some action that objectively manifests assent to those terms, such as clicking a button. *Compare Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 514–15 (9th Cir. 2023) (applying California law) *with Chen v. Sierra Trading Post, Inc.*, 2019 WL 3564659, at *2–3 (W.D. Wash. Aug. 6, 2019) (applying similar test under Washington law; collecting cases).

Discord's Terms of Service constitute a classic, enforceable "clickwrap" or "sign-in wrap" agreement because Discord presents users with conspicuous notice of and an opportunity to review the Terms, and users must click a button to accept the Terms before accessing Discord. *See supra* § II.A. Courts routinely enforce "clickwrap" and "sign-in wrap" agreements under California[2] and Washington[3] law.

The process by which Plaintiffs' son accepted the Terms of Service multiple times fits squarely within these authorities. To create each of his Discord accounts, he clicked a button or checked a box next to a notice indicating that doing so means accepting "Discord's <u>Terms of Service</u> and <u>Privacy Policy</u>." Robbins Decl. ¶¶ 8–11 & Exs. A–D. He could easily review the

---

[2] *See, e.g.*, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (agreement enforceable where notice of terms of use was "clear and legible" and placed directly below button to complete purchase); *Oberstein*, 60 F.4th at 515–17 (agreement enforceable where users were shown notice stating that "[b]y continuing past this page, you agree to the Terms of Use[,]" notice included hyperlink to Terms in contrasting blue text, and notice was placed "directly on top of or below each action button"); *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 951 (2022) (pop-up next to "continue" button explaining that "[b]y clicking 'Continue', I acknowledge that I have read and understand the" relevant terms provided notice); *Mahram v. Kroger Co*., 104 Cal. App. 5th 303, 306, 308–09 (2024) (button next to language stating "[b]y signing up, you agree" to terms); *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1070, 1075–76 (C.D. Cal. 2023) (button "directly above reasonably conspicuous and explicit language" stating clicking "would manifest assent" to hyperlinked terms); *Adibzadeh v. Best Buy, Co.*, 2021 WL 4440313, at *5 (N.D. Cal. Mar. 2, 2021) ("mutual assent manifests" when users "accept 'clickwrap' agreements").

[3] *See, e.g.*, *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1195–98 (W.D. Wash. 2024) ("sign-in wrap" agreement enforceable where users creating new accounts were presented with screen "stating that, by choosing or clicking on a button, the user indicates they agree with" the terms of service); *Open Book Theatre Co. v. Brown Paper Tickets, LLC*, 749 F. Supp. 3d 1076, 1081–84 (S.D. Cal. 2024) (applying Washington law and holding that agreement was enforceable where hyperlink to terms of use was in contrasting color, "hyperlink was placed front and center," and users were required to click checkbox confirming agreement to terms before proceeding).

DISCORD'S MOTION TO COMPEL - 9
Case No. 3:26-cv-05245-BHS

Terms before accepting by clicking the phrase "<u>Terms of Service</u>," which was underlined or highlighted in a contrasting color and contained a one-click hyperlink to the Terms. *Id.*

Each time Plaintiffs' son created an account, the notice language and conspicuous hyperlink provided reasonable notice of and an opportunity to review the Terms before clicking to proceed. *Id.* His decisions to click to create an account—on three separate occasions—constitute objective manifestation of assent to the Terms. *See Oberstein*, 60 F.4th at 515–16; *Saeedy*, 757 F. Supp. 3d at 1195–97; *Blizzard Ent., Inc.*, 76 Cal. App. 5th at 950–51; *see also, e.g.*, *Lee v. Ticketmaster LLC*, 817 F. App'x 393, 395 (9th Cir. 2020) (fact that plaintiff clicked to assent to website's terms multiple times "reinforces" that he had many opportunities to review terms before agreeing).

**B.      Plaintiffs Must Arbitrate the Claims They Bring As Successors-in-Interest.**

Plaintiffs must arbitrate the survivor claims they bring on behalf of their son's estate because he entered a valid arbitration agreement that binds his estate and heirs. California courts have held as much on multiple occasions. *Hearden v. Windsor Redding Care Ctr., LLC*, 103 Cal. App. 5th 1010, 1017 (2024); *San Diego Gas & Elec. Co. v. Super. Ct.*, 146 Cal. App. 4th 1545, 1553 (2007). As their son's successors-in-interest, Plaintiffs are "bound by the arbitration provisions of the agreements [their son] signed" because they "step[ped] into [his] position as to a particular action." *Thomas v. Westlake*, 204 Cal. App. 4th 605, 613 & n.5 (2012).

The same principle holds under Washington law. In *Woodall v. Avalon Care Center-Federal Way, LLC*, 155 Wn. App. 919 (2010), for example, the court granted the defendant's motion to compel arbitration of survival claims brought by an individual's heirs. Because the heirs brought the survival claims "as personal representative[s] of" the decedent's estate, the defendant could "properly require those claims to be arbitrated under its agreement with [the decedent]," based on principles of agency law. *Id.* at 931.

**C.      Because the Arbitration Agreement Incorporates the FAA and JAMS Rules, the Arbitrator Must Decide Any Arguments Concerning Arbitrability.**

The Court need not and may not proceed further to compel arbitration. *Rent-A-Ctr.*, 561 U.S. at 69 n.2. The 2020 Terms incorporate both the FAA and the JAMS Comprehensive

DISCORD'S MOTION TO COMPEL - 10
Case No. 3:26-cv-05245-BHS

Arbitration Rules and Procedures. 2020 Terms at 9–10. The FAA requires courts to compel arbitration "in accordance with the terms of the agreement," consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4. When parties "clearly and unmistakably" demonstrate their intent to have the arbitrator decide arbitrability, those issues must be submitted to the arbitrator. *See Rent-A-Ctr.*, 561 U.S. at 70 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."). "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc.*, 586 U.S. at 69.

In the Ninth Circuit, "[i]ncorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability." *Patrick*, 93 F.4th at 481. That is because JAMS Rule 11(b) requires that the arbitrator decide "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are the proper parties to the Arbitration." *Id.* (quoting JAMS Rule 11(b)). The Ninth Circuit and courts in this District have come to the same conclusion. *See, e.g.*, *Sandler v. Modernizing Med., Inc.*, 170 F.4th 1209, 1212 (9th Cir. 2026) (arbitration agreement incorporating JAMS rules means the parties agreed to delegate the question of arbitrability to the arbitrator); *Reynolds v. Safeway, Inc.*, 2023 WL 2560853, at *4 (W.D. Wash. Mar. 17, 2023) (same; collecting cases); *Briggs v. Serv. Corp Int'l*, 2023 WL 2075958, at *7 (W.D. Wash. Feb. 17, 2023) (same); *Moreno v. T-Mobile USA, Inc.*, 2023 WL 401913, at *5 (W.D. Wash. Jan. 25, 2023) (same).

That Plaintiffs' son was a minor when he agreed to the Terms does not affect the formation of a valid arbitration agreement. Under California law, "a minor may make a contract in the same manner as an adult," Cal. Fam. Code § 6700, except in limited circumstances not applicable here, *id.* §§ 6701, 6710; *see Coughenour v. Del Taco, LLC*, 57 Cal. App. 5th 740, 745 (2020). Likewise, under Washington law, "[a] minor is bound, not only by contracts for necessaries, but also by his or her other contracts, unless he or she disaffirms them within a reasonable time after he or she

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

attains his or her majority[.]"  RCW 26.28.030; *see also A.C. by & through Carbajal v. Nintendo of Am. Inc.*, 2021 WL 1840835, at \*2 (W.D. Wash. Apr. 29, 2021) ("Minors ... have the capacity to enter into contracts ... under both California and Washington law.").  There is no indication that Plaintiffs' son ever attempted to disaffirm his arbitration agreement with Discord.

Because Plaintiffs' son had capacity to contract with Discord when he repeatedly accepted Discord's Terms of Service and its arbitration agreement, the Court's inquiry ends at confirming the formation of the agreement.  *Henry Schein, Inc.*, 586 U.S. at 69.  The agreement to delegate incorporated into the arbitration agreement requires an arbitrator to resolve "all arbitrability disputes."  *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024).  That includes any minority defenses Plaintiffs might raise when resisting arbitration.  *See, e.g.*, *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 883–84 (6th Cir. 2021) ("plaintiffs' infancy argument does not concern the formation or existence of a contract" and thus presents "a matter of enforceability covered under the delegation provision"); *Antonetti v. Activision Blizzard, Inc.*, 764 F. Supp. 3d 1309, 1322–23 (N.D. Ga. 2025) (similar as to "infancy, capacity, disaffirmance, and unconscionability arguments"); *Orellana v. Roblox Corp.*, 769 F. Supp. 3d 1273, 1283–84 (M.D. Fla. 2025) (similar as to infancy defense); *Johnson v. Activision Blizzard, Inc.*, 2025 WL 679033, at \*3 (E.D. Ark. Mar. 3, 2025) (similar as to infancy and competency defenses); *Angelilli v. Activision Blizzard, Inc.*, 2025 WL 524276, at \*6 (N.D. Ill. Feb. 18, 2025) (similar as to infancy and unconscionability defenses); *Dunn v. Activision Blizzard, Inc.*, 749 F. Supp. 3d 976, 982 (E.D. Ark. 2024) (similar as to infancy, competency, disaffirmation, and unconscionability defenses).

### D.     The Court Should Stay These Proceedings, Including Adjudication of Plaintiffs' Individual Claims, Pending Arbitration.

The Court should stay this case in its entirety while arbitration proceeds—both as to the survivor claims Plaintiffs bring on behalf of their son's estate and the non-survivor claims they bring in their individual capacities.  As to the former, a stay is mandatory.  9 U.S.C. § 3; *see Smith v. Spizzirri*, 601 U.S. 472, 477 (2024) ("[T]he FAA's structure and purpose confirm that a stay is required.").

DISCORD'S MOTION TO COMPEL - 12
Case No. 3:26-cv-05245-BHS

The Court should also stay Plaintiffs' non-survivor claims. A stay of those claims is appropriate because their outcome "will depend upon the arbitrator's decision." *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002) (citation & internal quotation marks omitted). "If the four corners of the complaint make clear that the non-arbitrable claims depend upon the same facts as and are inherently inseparable from the remainder of the arbitrable claims, a stay of all claims is appropriate." *Smiles Servs. LLC v. Frye*, 2023 WL 6066683, at *2 (W.D. Wash. Sept. 18, 2023) (cleaned up) (quoting *Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*, 652 F. Supp. 3d 1313, 1328 (W.D. Wash. Jan. 24, 2023)).

Here, Plaintiffs' non-survivor claims (based on pain and suffering from their son's death) will be informed by Discord's alleged liability for their son's death, an issue that the adjudicator— here, the arbitrator—must resolve first. *See* Compl. ¶¶ 131–135, 182–184 (Plaintiffs alleging economic and non-economic damages from loss of son). To resolve the non-survivor claims, the Court must reach the same legal and factual issues that an arbitrator will reach when resolving the survivor claims, risking conflicting outcomes and wasting judicial resources. *See, e.g.*, *id.* ¶¶ 136– 145 ("Count I: Outrage" for same "extreme and outrageous conduct" leading to son's "death by suicide" and Plaintiffs' resulting "severe emotional distress"); *id.* ¶¶ 166–170 ("Count IV: Negligence" for alleging "Discord's tortious conduct was a direct and proximate cause of the harms suffered by [son] and Plaintiffs"). For this reason, courts in the Ninth Circuit routinely stay non-arbitrable claims that are factually and legally intertwined with the defendant's alleged liability on the arbitrable claims. *See, e.g.*, *Weber v. X Corp.*, 2024 WL 470255, at *8 (E.D. Wash. Jan. 8, 2024) (staying non-arbitrable claims because they were "sufficiently intertwined" with arbitrable claims and "fundamentally implicate[d] the same facts and legal analysis"); *Maguire Ins. Agency*, 652 F. Supp. 3d at 1328–29 (staying non-arbitrable claims because they "turn on the same factual basis as" arbitrable claims such that arbitrator's resolution of arbitrable claims would "necessarily inform[]" the outcome of the non-arbitrable claims); *Smiles Servs.*, 2023 WL 6066683, at *3 (staying non-arbitrable claims because they "depend[] directly" on arbitrator's findings as to liability on arbitrable claim).

DISCORD'S MOTION TO COMPEL - 13
Case No. 3:26-cv-05245-BHS

Because the arbitrable survivor claims and non-arbitrable, non-survivor claims involve the same questions of fact and law, considerations of judicial economy and avoidance of inconsistent results weigh heavily in favor of staying the entire action. *See, e.g.*, *Gabriella v. Recology Inc.*, 2022 WL 6271866, at *5 (N.D. Cal. Sept. 9, 2022) (staying non-survivor claims pending arbitration of survivor claims because "there is factual overlap among the claims" and "[i]t thus would be highly inefficient and would risk conflicting rulings if the litigation of the [non-survivor] claims and the arbitration proceeded in parallel," whereas "allowing the arbitration to proceed first could streamline the case and ultimately conserve the parties' and Court's resources"). Nor can Plaintiffs show any significant prejudice from delay because any liability for their son's alleged injuries, on which all claims rely, will be resolved in a streamlined arbitration that will likely conclude before any parallel litigation on the non-survivor claims. *See Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184–85 (2019) (benefits of arbitration include "greater efficiency and speed"). A stay is necessary to further the strong federal policy favoring agreements to arbitrate. *See Dean Witter Reynolds*, 470 U.S. at 216–17.

## V. CONCLUSION

For these reasons, Discord respectfully requests an order granting its motion to compel arbitration and staying all of Plaintiffs' claims against Discord pending the outcome of arbitration.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Dated: April 24, 2026

By: */s/ Ambika Kumar*
Ambika Kumar

Adam S. Sieff (WSBA #59792)
Marcy Blattner Micale (*pro hac vice*)
Sam F. Cate-Gumpert (*pro hac vice* forthcoming)
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Tel: (213) 633-6800
Email:  adamsieff@dwt.com
      marcyblattnermicale@dwt.com
      samcategumpert@dwt.com

Ambika Kumar (WSBA #38237)
Xiang Li (WSBA #52306)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Tel: (206) 622-3150
Email:  ambikakumar@dwt.com
      xiangli@dwt.com

*Attorneys for Defendant Discord Inc.*

*I certify that this memorandum contains 4,576 words, in compliance with the Local Civil Rules.*

DISCORD'S MOTION TO COMPEL - 15
Case No. 3:26-cv-05245-BHS