UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COLBY TAYLOR, individually and as a personal representative of the ESTATE OF JAY TAYLOR, a deceased individual; LESLIE TAYLOR, individually and as a personal representative of the ESTATE OF JAY TAYLOR, a deceased individual,<br><br>Plaintiffs,<br><br>v.<br><br>DISCORD INC., a Delaware company,<br><br>Defendant. | No. 3:26-cv-05245-BHS<br><br>**DEFENDANT DISCORD INC.'S MOTION TO DISMISS**<br><br>**NOTE ON MOTION CALENDAR: June 9, 2026** |

DISCORD'S MOTION TO DISMISS
Case No. 3:26-cv-05245-BHS

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION................................................................................................................1

BACKGROUND..................................................................................................................2

    A.    Discord Is An Online Communications Service. ..................................................2

    B.    Plaintiffs Fault Discord For Failing to Block Harmful Messages............................3

LEGAL STANDARD ..........................................................................................................3

ARGUMENT .......................................................................................................................3

I.    PLAINTIFFS' CLAIMS ARE TIME-BARRED..........................................................3

II.    SECTION 230 BARS ALL OF PLAINTIFFS' CLAIMS .............................................4

    A.    Section 230 Protects Online Services From Claims That Would
    Require Them to Perfectly Moderate Content to Avoid Liability. .........................4

    B.    Section 230 Bars Plaintiffs' Claims. ...................................................................6

        1.    Discord is an interactive computer service. ..............................................6

        2.    The claims treat Discord as a publisher of third-party content. .................6

        3.    The content was provided entirely by third parties. ................................12

III.    THE FIRST AMENDMENT BARS PLAINTIFFS' CLAIMS .......................................13

IV.    PLAINTIFFS CANNOT STATE ANY CLAIM AS A MATTER OF LAW ..................14

    A.    Discord Is Not the Proximate Cause Of The Alleged Injuries (All Claims).........14

    B.    Plaintiffs Cannot Plead a Viable Outrage Claim (Claim 1). ................................16

    C.    Plaintiffs Cannot Plead Viable Product Liability Claims (Claims 2 and 3)..........18

    D.    Plaintiffs Cannot Plead a Viable Negligence Claim (Claim 4). ...........................20

    E.    Plaintiffs Cannot Plead a Viable Trafficking Claim (Claim 5). ...........................22

CONCLUSION ..................................................................................................................24

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*A.B. v. Salesforce.com, Inc.*,
2021 WL 3616097 (S.D. Tex. 2021)................................................................................ 17

*Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*,
418 F.3d 600 (6th Cir. 2005)............................................................................................ 13

*Armstrong v. Atrium Med. Corp.*,
2022 WL 17258345 (E.D. Wash. 2022)........................................................................... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................... 3

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009)......................................................................................5, 7

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) ........................................................................................................ 24

*Beckman v. Match.com, LLC*,
668 F. App'x 759 (9th Cir. 2016)....................................................................................... 6

*Beckman v. Match.com, LLC*,
743 F. App'x 142 (9th Cir. 2018)..................................................................................... 22

*Bogard v. TikTok Inc.*,
2025 WL 604972 (N.D. Cal. 2025)............................................................................. 6, 22

*Boladian v. UMG Recordings, Inc.*,
123 F. App'x 165 (6th Cir. 2005)..................................................................................... 14

*Bride v. Yolo Techs., Inc.*,
112 F.4th 1168 (9th Cir. 2024)................................................................................*passim*

*Caraccioli v. Facebook, Inc.*,
700 F. App'x 588 (9th Cir. 2017)..................................................................................... 11

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003)............................................................................................ 5

*Clark v. Amica Mut. Ins. Co.*,
2013 WL 3148262 (E.D. Wash. 2013)....................................................................... 17, 19

*Corrie v. Caterpillar, Inc.*,
403 F. Supp. 2d 1019 (W.D. Wash. 2005), *aff'd*, 503 F.3d 974 (9th Cir. 2007) ................... 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Crosby v. Twitter, Inc.*,
921 F.3d 617 (6th Cir. 2019) ................................................................................ 17

*Deditch v. Uber Techs., Inc.*,
2025 WL 1928937 (N.D. Ohio 2025) .................................................................... 20

*Doe ex rel Roe v. Snap, Inc.*,
2023 WL 4174061 (5th Cir. 2023) .......................................................................... 6

*Doe v. Discord, Inc.*,
2026 WL 1067574 (N.D. Ohio 2026) ................................................................. 1, 5

*Doe v. Grindr Inc.*,
128 F.4th 1148 (9th Cir. 2025) ......................................................................*passim*

*Doe v. Grindr, LLC*,
2023 WL 7053471 (M.D. Fla. 2023) ...................................................................... 6

*Doe v. Kik Interactive, Inc.*,
482 F. Supp. 3d 1242 (S.D. Fla. 2020) .................................................................. 6

*Doe v. MySpace, Inc.*,
474 F. Supp. 2d 843 (W.D. Tex. 2007), *aff'd*, 528 F.3d 413 (5th Cir. 2008) ........................ 23

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) ........................................................................ 6, 8, 9

*Doe v. Reddit, Inc.*,
2021 WL 4348731 (C.D. Cal. 2021) ..................................................................... 12

*Doe v. SexSearch.com*,
551 F.3d 412 (6th Cir. 2008) ............................................................................... 21

*Doe v. U.S. Ctr. for SafeSport, Inc.*,
2024 WL 3924663 (W.D. Wash. 2024) ................................................................ 18

*Does 1-6 v. Reddit, Inc.*,
51 F.4th 1137 (9th Cir. 2022) ........................................................................ 12, 13

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019) .................................................................... 5, 22, 23

*Eberhart v. Amazon.com, Inc.*,
325 F. Supp. 3d 393 (S.D.N.Y. 2018) .................................................................. 20

*Est. of B.H. v. Netflix, Inc.*,
2022 WL 551701 (N.D. Cal. 2022), *aff'd*, 2024 WL 808797 (9th Cir. 2024) ........................ 20

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) (en banc) ........................................................ 5, 7, 13

DISCORD'S MOTION TO DISMISS - iii
Case No. 3:26-cv-05245-BHS

*Fields v. Twitter, Inc.*,
881 F.3d 739 (9th Cir. 2018)...................................................................................... 16, 17

*Grigsby v. Valve Corp.*,
2013 WL 12310666 (W.D. Wash. 2013) ................................................................... 20

*Hall v. YouTube, LLC*,
2025 WL 3265494 (N.D. Cal. 2025)........................................................................... 22

*Herrick v. Grindr, LLC*,
306 F. Supp. 3d 579 (S.D.N.Y. 2018) .............................................................. 9, 11, 12

*Herrick v. Grindr LLC*,
765 F. App'x 586 (2d Cir. 2019) ....................................................... 6, 8, 10, 11

*Holekamp v. Westport LLC*,
767 F. Supp. 3d 1097 (W.D. Wash. 2025) ................................................................... 3

*Holmes v. Sec. Inv. Protection Corp.*,
503 U.S. 258 (1992) .................................................................................................... 15

*J.B. v. G6 Hosp., LLC*,
2020 WL 4901196 (N.D. Cal. 2020).......................................................................... 13

*Jackson v. Airbnb, Inc.*,
639 F. Supp. 3d 994 (C.D. Cal. 2022)........................................................................ 20

*Jackson v. Whitepages, Inc.*,
798 F. Supp. 3d 583 (N.D. W.Va. 2025)..................................................................... 14

*Jacobsen v. Marin Gen. Hosp.*,
192 F.3d 881 (9th Cir. 1999)....................................................................................... 18

*James v. Meow Media, Inc.*,
300 F.3d 683 (6th Cir. 2002)....................................................................................... 20

*Jane Doe No. 1 v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016) ................................................................................... 6, 13

*K.B. v. Backpage.com, LLC*,
768 F. Supp. 3d 1057 (N.D. Cal. 2025) ...............................................................*passim*

*King v. Facebook, Inc.*,
572 F. Supp. 3d 776 (N.D. Cal. 2021) ....................................................................... 18

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014) ................................................................................. 22

*L.W. v. Snap Inc.*,
675 F. Supp. 3d 1087 (S.D. Cal. 2023) ........................................................................ 6

DISCORD'S MOTION TO DISMISS - iv
Case No. 3:26-cv-05245-BHS

*Langfitt v. Pierce County*,
2022 WL 782574 (W.D. Wash. 2022), *aff'd*, 2024 WL 3617318 (9th Cir. 2024) .................. 15

*Lee v. OfferUp, Inc.*,
2018 WL 4283371 (E.D. La. 2018) ........................................................................................ 6

*Lewis v. Time Inc.*,
83 F.R.D. 455 (E.D. Cal. 1979) ........................................................................................... 14

*M.A. v. Vill. Voice Media Holdings, LLC*,
809 F. Supp. 2d 1041 (E.D. Mo. 2011) ................................................................................. 6

*M.L. v. Craigslist Inc.*,
2020 WL 6434845 (W.D. Wash. 2020),
*R. & R. adopted*, 2020 WL 5494903 (W.D. Wash. 2020) .................................... 22, 23, 24, 25

*Macek v. DraftKings, Inc.*,
2026 WL 802286 (E.D. Pa. 2026) ....................................................................................... 20

*Marshall's Locksmith Serv., Inc. v. Google, LLC*,
925 F.3d 1263 (D.C. Cir. 2019) .......................................................................................... 12

*Meador v. Apple, Inc.*,
911 F.3d 260 (5th Cir. 2018) ............................................................................................... 17

*Patrick v. Ramsey*,
2024 WL 776024 (W.D. Wash. 2024) ................................................................................... 4

*Quinteros v. InnoGames*,
2022 WL 898560 (W.D. Wash. 2022), *aff'd* 2024 WL 132241 (9th Cir. 2024) .................... 19

*Riley v. City of Spokane Valley*,
2022 WL 2195744 (E.D. Wash. 2022) .................................................................................. 16

*Rodriguez v. OfferUp, Inc.*,
2019 WL 13247290 (M.D. Fla. 2019) .................................................................................... 6

*Roland v. Letgo, Inc.*,
2024 WL 372218 (10th Cir. 2024) ....................................................................................... 17

*Saponaro v. Grindr, LLC*,
93 F. Supp. 3d 319 (D.N.J. 2015) .......................................................................................... 6

*Smith v. California*,
361 U.S. 147 (1959) ...................................................................................................... 2, 13

*Stebbins v. Polano*,
2022 WL 1601417 (N.D. Cal. 2022) ..................................................................................... 6

*Towner v. A Place for Rover Inc.*,
2026 WL 555642 (W.D. Wash. 2026) .................................................................................. 18

DISCORD'S MOTION TO DISMISS - v
Case No. 3:26-cv-05245-BHS

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*United States v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
    858 F.2d 534 (9th Cir. 1988) ................................................................................. 13, 15

*Video Software Dealers Ass'n v. Webster*,
    968 F.2d 684 (8th Cir. 1992) ...................................................................................... 14

*Voss-Curry v. Crown Equip. Corp.*,
    2022 WL 4368047 (W.D. Wash. 2022) ...................................................................... 16

*Winter v. G.P. Putnam's Sons*,
    938 F.2d 1033 (9th Cir. 1991) .................................................................................... 20

*Ziegler v. EAPM Co.*,
    2022 WL 2440111 (W.D. Wash. 2022) ........................................................... 15, 16, 17

*Ziencik v. Snap, Inc.*,
    WL 2638314 (C.D. Cal. 2023) .............................................................................. 20, 23

**State Cases**

*Baughn v. Honda Motor Co.*,
    107 Wn.2d 127 (1986) ................................................................................................ 20

*Cook v. Seidenverg*,
    36 Wn.2d 256 (1950) .................................................................................................. 16

*Curtin v. City of E. Wenatchee*,
    12 Wn. App. 2d 218 (2020)........................................................................................... 4

*Doe II v. MySpace Inc.*,
    175 Cal. App. 4th 561 (2009).................................................................................. 6, 10

*Doe v. Grindr, LLC*,
    2025 WL 977367 (N.Y. Sup. Ct. 2025) ....................................................................... 6

*Doe v. Snap, Inc.*,
    2025 WL 2926161 (Del. Super. Ct. 2025) ............................................................. 6, 11

*Doll v. Grindr Inc.*,
    2024 WL 4788525 (Ky. Cir. Ct. 2024) ......................................................................... 6

*Godwin v. Facebook, Inc.*,
    160 N.E.3d 372 (Ohio App. 2020) .............................................................................. 22

*Hopovac v. State Dep't of Corrs.*,
    197 Wn. App. 817 (2017)...................................................................................... 21, 22

*In re Facebook, Inc.*,
    625 S.W.3d 80 (Tex. 2021) ............................................................................... 6, 10, 11

DISCORD'S MOTION TO DISMISS - vi
Case No. 3:26-cv-05245-BHS

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Jacobs v. Meta Platforms, Inc.*,
2023 WL 2655586 (Cal. Super. Ct. 2023) ................................................................ 20

*Johnson v. State*,
77 Wn. App. 934 (1995) ........................................................................................ 17

*Lewis v. Bell*,
45 Wn. App. 192 (1986) ........................................................................................ 18

*Lund v. Caple*,
100 Wn.2d 739 (1984) ........................................................................................... 19

*Maltman v. Sauer*,
84 Wn.2d 975 (1975) ............................................................................................. 15

*McCollum v. CBS, Inc.*,
202 Cal. App. 3d 989 (1988) ................................................................................. 20

*Modisette v. Apple Inc.*,
30 Cal. App. 5th 136 (2018) .................................................................................. 17

*Payne v. Weyerhaeuser Co.*,
30 Wn. App. 2d 696 (2024) ................................................................................... 15

*Pitoitua v. Gaube*,
28 Wn. App. 2d 141 (2023) .............................................................................. 21, 22

*Reid v. Pierce County*,
136 Wn.2d 195 (1998) ........................................................................................... 17

*Repin v. State*,
198 Wn. App. 243 (2017) ....................................................................................... 18

*Robb v. City of Seattle*,
176 Wn.2d 427 (2013) ........................................................................................... 23

*Rose v. Zimmerman*,
194 Wn. App. 1045, 2016 WL 3598868 (2016) ...................................................... 4

*Rozner v. City of Bellevue*,
116 Wn.2d 342 (1991) ........................................................................................... 23

*State v. Braun*,
20 Wn. App. 2d 756 (2022) ................................................................................... 15

*State v. Valdiglesias LaValle*,
2 Wn.3d 310 (2023) ............................................................................................... 24

*Stoneman v. Wick Constr. Co.*,
55 Wn.2d 639 (1960) ............................................................................................. 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Thompson v. Devlin*,
    51 Wn. App. 462 (1988)..................................................................................................16

*Trujillo v. Nw. Tr. Servs., Inc.*,
    183 Wn.2d 820 (2015) .............................................................................................15, 17

*V.V. v. Meta Platforms, Inc.*,
    2024 WL 678248 (Conn. Super. Ct. 2024) ...................................................................6

*Washburn v. City of Fed. Way*,
    178 Wn.2d 732 (2013) .............................................................................................16, 17

*Wozniak v. YouTube, LLC*,
    100 Cal. App. 5th 893 (2024).......................................................................................11

*Zorchenko v. City of Fed. Way*,
    31 Wn. App. 2d 390 (2024)......................................................................................15, 18

**Federal Statutes**

18 U.S.C.
    § 1591.............................................................................................................................13
    § 1595.............................................................................................................................12

47 U.S.C.
    § 230..........................................................................................................................*passim*

**State Statutes**

RCW
    4.16.080...........................................................................................................................4
    4.16.190...........................................................................................................................4
    7.72.010.........................................................................................................................19
    7.72.060...........................................................................................................................4
    9A.40.100..................................................................................................................23, 24
    9A.82.100..................................................................................................................4, 12

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................................................*passim*

**Other Authorities**

Restatement (Third) of Torts: Prods. Liab. § 19 (1998)....................................................20

DISCORD'S MOTION TO DISMISS - viii
Case No. 3:26-cv-05245-BHS

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**INTRODUCTION**

Plaintiffs bring this action against Discord Inc., an online messaging service, seeking to hold it liable for the criminal conduct of third parties who manipulated their son, Jay Taylor, to take his own life through messages exchanged on Discord. Although no family should have to endure such a tragedy, Plaintiffs' claims against Discord rest on the faulty premise that an online messaging service can be liable for failing to police the speech (and control the offline conduct) of millions of users. Discord works assiduously to monitor for, block, and remove harmful messages and user profiles, but it is not liable under any theory for the actions of criminals who elude these efforts. The Complaint must be dismissed with prejudice.[1]

***First***, the claims are time-barred. The limitations period on Plaintiffs' claims—individually, and as representatives of Taylor's estate—began to run in January 2022, when law enforcement disclosed that Taylor died after exchanging messages on Discord. Because all of Plaintiffs' claims are subject to three-year statutes of limitations, the limitations period expired in January 2025. Nothing tolls the statutes, so the claims are barred.

***Second***, Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1), bars the claims. Section 230 provides broad protection from claims that would require online publishers like Discord to perfectly monitor, screen, block, or remove harmful content posted by third parties. The Complaint seeks to impose an unprecedented duty on messaging apps to prevent the criminal conduct of users by asking the Court to hold Discord liable for failing to screen for and block the messages Taylor exchanged with those users. Every appellate court to consider similar theories—including as to the very causes of action Plaintiffs assert here—has rejected them under Section 230, as did a federal district court in another case alleging similar claims against Discord, just this

---

[1] Discord asks the Court to compel arbitration, and only if it declines, to dismiss the claims under Rule 12(b)(6).

DISCORD'S MOTION TO DISMISS - 1
Case No. 3:26-cv-05245-BHS

week in *Doe v. Discord, Inc.*, 2026 WL 1067574 (N.D. Ohio 2026). This Court should hold Section 230 bars the claims here, too.

***Third***, the First Amendment also bars Plaintiffs' claims. Under *Smith v. California*, 361 U.S. 147 (1959), Discord cannot be liable for failing to block the profiles and unlawful messages that abusers posted to Discord unless Discord *actually knew* the content was unlawful. Plaintiffs do not, and cannot, allege such knowledge.

***Finally***, all of the state law claims fail as a matter of law. The Complaint does not and cannot plausibly allege that Discord proximately caused Taylor's suicide given the intervening criminal conduct of third parties who directed the communications at issue. Beyond causation, each claim suffers from independent defects. The outrage claim (Claim I) fails because Discord's conduct was neither actionably extreme nor specifically directed to Taylor or his parents, and because Taylor's parents were not physically present for the conduct that caused their distress. The product liability claims (Claims II-III) fail because Discord is a messaging service that transmits speech, not a tangible product, and because the service's alleged dangers are inherent in online communication. The negligence claim (Claim IV) fails because Discord owed Plaintiffs no actionable duty. And the trafficking claim (Claim V) fails because the Complaint does not and cannot possibly allege that Discord knowingly caused Taylor's exploitation.

**BACKGROUND**

**A.      Discord Is An Online Communications Service.**

Discord operates a global voice, video, and text messaging service. Dkt. 1-1 ("Compl.") ¶ 39. Unlike social media platforms, Discord does not use algorithms to select content for users. Instead, Discord allows users to post messages, upload files, and share images in direct messages and in group chats (known as "servers") they have joined. *Id*.

Although no law requires communications apps like Discord to screen messages or implement any safety technologies, Discord takes content moderation and safety seriously. The

DISCORD'S MOTION TO DISMISS - 2
Case No. 3:26-cv-05245-BHS

service aspires to maintain a "zero-tolerance policy" for users who exploit other users. *Id*. ¶ 68. As of January 2024, Plaintiffs allege, about 15 percent of Discord employees accordingly work on moderating content. *Id*. ¶ 74 n.19. And Discord takes a "proactive and automated approach to safety," enabling parents to restrict the settings of their children's accounts. *Id*. ¶ 61, 76. Discord also emphasizes transparency, releasing regular, public reports on its efforts to protect users from harmful content. *Id*. ¶¶ 68-70.

### B. Plaintiffs Fault Discord For Failing to Block Harmful Messages.

A teenager (L.S.) messaged Taylor on Discord, convinced him to join a suicide pact, and, in concert with an adult cult-member (Shahriar Javan) who spoke with Taylor by phone, instructed Taylor to commit suicide on January 14, 2022. *Id*. ¶¶ 82-83, 109, 113-114.

Plaintiffs have not sued L.S., Javan, or the phone company. But they claim Discord is liable because it does not restrict messages minors like Taylor can exchange, *id.* ¶¶ 52-53, 60-62, "do[es] not monitor" or "moderat[e]" user communications sufficiently, *id.* ¶¶ 72, 76-77, 90, 121, does not identify and remove predatory user profiles, *id.* ¶¶ 89, 117, and neglects to prevent bad actors from sending harmful messages to minors, *id.* ¶¶ 155, 167-169. Plaintiffs assert claims for outrage, products liability, negligence, and trafficking. *Id.* ¶¶ 136-180.

### LEGAL STANDARD

A complaint must be dismissed if it fails to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The failure to plead a cognizable legal theory requires dismissal. *Holekamp v. Westport LLC*, 767 F. Supp. 3d 1097, 1099 (W.D. Wash. 2025) (Settle, J.).

### ARGUMENT

### I. PLAINTIFFS' CLAIMS ARE TIME-BARRED

A claim must be dismissed under "the applicable statute of limitations if the running of the limitations period is apparent on the face of the complaint." *Patrick v. Ramsey*, 2024 WL 776024, at *8 (W.D. Wash. 2024). All of Plaintiffs' claims (Compl. ¶¶ 136-180) are subject to three-year

DISCORD'S MOTION TO DISMISS - 3
Case No. 3:26-cv-05245-BHS

statutes of limitations. *See* RCW 4.16.080(2) (outrage, negligence); RCW 7.72.060(3) (product liability); RCW 9A.82.100(7)(b) (trafficking). Those limitations periods began to run when Taylor died in January 2022 and Plaintiffs learned the third-party abusers used Discord to communicate with him. *See* Compl. ¶¶ 107-114. That means the limitations periods expired in January 2025. Since this action was brought on February 19, 2026, the claims are barred.

Nothing tolls these limitations periods. Although RCW 4.16.190 tolls the limitations periods for minors and other incapacitated persons until they reach majority or overcome their disability to protect their claims "from a parent's or guardian's inaction," *Curtin v. City of E. Wenatchee*, 12 Wn. App. 2d 218, 225 (2020), that rationale "expire[s] upon … death" such that the relevant statutes of limitations begin to accrue on the death of a minor or otherwise incapacitated person, *Rose v. Zimmerman*, 194 Wn. App. 1045, 2016 WL 3598868, at *6-7 (2016) (same conclusion as to incapacitated adult). The limitations periods on the estate's claims thus began to run in January 2022 when Taylor died and law enforcement discovered the abusers' use of Discord. Compl. ¶ 107. In any event, Plaintiffs' *individual* claims cannot be tolled by Taylor's minority since the minor tolling statute "is 'person' specific" such that it "does not apply to a parent." *Curtin*, 12 Wn. App. 2d at 224-25 (statute does not "permit a parent or guardian who has failed to take timely action to bootstrap their own otherwise untimely claim to the minor or disabled person's claim"). The claims are all accordingly barred.

## II. SECTION 230 BARS ALL OF PLAINTIFFS' CLAIMS

### A. Section 230 Protects Online Services From Claims That Would Require Them to Perfectly Moderate Content to Avoid Liability.

Enacted to bolster First Amendment protections online, Section 230 exists "to promote the free exchange of information" and "to encourage voluntary monitoring for offensive or obscene material" by broadly protecting online publishers from suit—not just liability—when offensive material slips through. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099-1100 (9th Cir. 2009). It does

DISCORD'S MOTION TO DISMISS - 4
Case No. 3:26-cv-05245-BHS

this by superseding the common law under which a platform could escape liability for hosting harmful content if it made *no effort* to locate and remove it, but could be liable *if it tried and failed* to catch it all. *See Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008) (en banc) (statute eliminates "grim choice" created by common law). Section 230 thus bars claims seeking to hold platforms liable for failing to perfectly monitor, screen, block, modify, edit, or remove content provided by third parties. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003).

Disputes as to the statute's application must be resolved promptly, and in favor of protection, to shield online platforms "not merely from ultimate liability, but from having to fight costly and protracted legal battles" in the first place. *Roommates.com*, 521 F.3d at 1175. That requires dismissing complaints whose claims would impose liability on an online platform for publishing—or failing to remove—user-generated content. *See Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (Section 230 requires dismissal on pleadings).

Courts consistently apply Section 230 to dismiss claims seeking to hold platforms liable for the abuse of one user by another "when the factual predicate is that the two users engaged in messaging using the platform's service," no matter the cause of action asserted. *Doe v. Discord*, 2026 WL 1067574, at *7; *see also, e.g., Doe v. Grindr Inc.*, 128 F.4th 1148, 1153-54 (9th Cir. 2025) (minor abused by adult he met on app); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (same); *In re Facebook, Inc.*, 625 S.W.3d 80, 101 (Tex. 2021) (similar); *Doe ex rel Roe v. Snap, Inc.*, 2023 WL 4174061, at *1 (5th Cir. 2023) (similar); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016) (similar); *Herrick v. Grindr LLC*, 765 F. App'x 586, 588, 591 (2d Cir. 2019) (offline harassment); *Beckman v. Match.com, LLC*, 668 F. App'x 759, 759 (9th

DISCORD'S MOTION TO DISMISS - 5
Case No. 3:26-cv-05245-BHS

Cir. 2016) (similar); *Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561, 572-75 (2009) (abuse of minor by an adult).[2] Plaintiffs' claims are foreclosed by this unbroken line of appellate authority.

**B.     Section 230 Bars Plaintiffs' Claims.**

"Section 230 prohibits holding companies responsible for moderating or failing to moderate content." *Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1182 (9th Cir. 2024). It applies where (1) the defendant is an interactive computer service, and (2) a claim treats the defendant as the publisher (3) of content provided by a third party. *Grindr*, 128 F.4th at 1151 (citing *Barnes*, 570 F.3d at 1100). These elements are met here.

**1.     Discord is an interactive computer service.**

An interactive computer service "provides or enables computer access by multiple users to a computer server[.]" 47 U.S.C. § 230(f)(2). Discord indisputably meets this test. *Stebbins v. Polano*, 2022 WL 1601417, at *3 (N.D. Cal. 2022) (Discord qualifies).

**2.     The claims treat Discord as a publisher of third-party content.**

A claim treats a defendant as a publisher if it seeks to hold the defendant liable for decisions involving "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102. This is a broad standard. "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates.com*, 521 F.3d at 1170-71. The determinative question is the nature of "the duty that the plaintiff alleges the defendant violated." *Barnes*, 570 F.3d at 1102. If that duty requires the exercise of editorial functions—monitoring for and deciding

---

[2] Trial courts likewise dismiss claims that services are responsible for users' offline misconduct. *See, Doe v. Grindr, LLC*, 2025 WL 977367, at *3 (N.Y. Sup. Ct. 2025); *K.B. v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1067 (N.D. Cal. 2025); *Bogard v. TikTok Inc.*, 2025 WL 604972, at *18 (N.D. Cal. 2025); *Doe v. Snap, Inc.*, 2025 WL 2926161, at *4 (Del. Super. Ct. 2025); *Doll v. Grindr Inc.*, 2024 WL 4788525, at *4-8 (Ky. Cir. Ct. 2024); *V.V. v. Meta Platforms, Inc.*, 2024 WL 678248, at *9-11 (Conn. Super. Ct. 2024); *L.W. v. Snap Inc.*, 675 F. Supp. 3d 1087, 1101 (S.D. Cal. 2023) *Doe v. Grindr, LLC*, 2023 WL 7053471, at *2 (M.D. Fla. 2023); *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1252 (S.D. Fla. 2020); *Rodriguez v. OfferUp, Inc.*, 2019 WL 13247290, at *2-4 (M.D. Fla. 2019); *Lee v. OfferUp, Inc.*, 2018 WL 4283371, at *4 (E.D. La. 2018); *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 322-25 (D.N.J. 2015); *M.A. v. Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1047-53 (E.D. Mo. 2011).

DISCORD'S MOTION TO DISMISS - 6
Case No. 3:26-cv-05245-BHS

whether to publish, screen, block, remove, or edit third-party content—Section 230 bars the claim. *See Grindr*, 128 F.4th at 1153 (duty to "monitor third-party content and prevent adult communications to minors" treated Grindr as a publisher). A plaintiff cannot evade Section 230 "by changing the name of the theory." *Barnes*, 570 F.3d at 1102-03; *see Yolo*, 112 F.4th at 1178.

The Ninth Circuit's decision in *Grindr*, 128 F.4th at 1151-55, is dispositive. That case affirmed dismissal of a minor plaintiff's negligence, failure-to-warn, misrepresentation, federal civil trafficking, and product liability claims against the dating app Grindr for injuries the plaintiff allegedly suffered after exchanging messages with adults who assaulted him offline. *Id.* at 1151-52. As here, the plaintiff alleged that Grindr's failure to prevent him from communicating with bad actors breached a "duty not to design or manufacture defective products." *Id*. at 1153. As here, the plaintiff argued that Section 230 did not bar his claims because they arose from Grindr's own "features and functions"—like its age-verification and messaging features. *Id.* And as here, the plaintiff tried to frame Grindr's conduct not as publishing messages and profiles, but as trafficking him through affirmative acts that made him available to predators. *Id.* at 1155. The Ninth Circuit disagreed, holding the claims substantively required Grindr to block profiles and prevent "messages between users that could lead to illegal activity." *Id*. at 1153. "These claims necessarily implicate Grindr's role as a publisher of third-party content," so Section 230 barred them. *Id*.

The Fifth Circuit reached the same conclusion in *MySpace*. There, a minor claimed MySpace failed to implement adequate safety features (including age-verification tools) to prevent her from communicating with another user who later assaulted her. 528 F.3d at 416, 419-22. Holding that Section 230 barred her negligent design claims, the Fifth Circuit explained that "the underlying basis of Plaintiffs' claims is that, through postings on MySpace," the assailant and victim "met and exchanged personal information which eventually led to an in-person meeting and the sexual assault." *Id*. at 419-20 (quotation omitted). Since the claims were "merely another way of claiming that MySpace was liable for publishing the communications," and since the only way

DISCORD'S MOTION TO DISMISS - 7
Case No. 3:26-cv-05245-BHS

MySpace could have avoided liability was by screening for and blocking the minor and her assailant's profiles and messages, Section 230 applied. *Id*. at 420.

The Second Circuit dismissed similar product liability, negligence, and failure-to-warn claims against Grindr in *Herrick*, 765 F. App'x at 588. There, the plaintiff alleged he was harassed offline by someone who created an unverified Grindr profile and sent messages impersonating him, asserting claims for negligence and failure to warn. *Id.* Like Plaintiffs, Herrick purported to base his claims on an app's "design and operation"—including its failure to identify and block profiles—"rather than on its role as a publisher of third-party content." *Id.* at 590. But the Second Circuit rejected this attempt to plead around Section 230, holding these allegations sought to obligate Grindr to verify user identities before allowing an individual to post a profile or publish messages, duties that affected Grindr's "choices about what content can appear on the website." *Id.* at 590-91 (citation omitted).

A court in the Ninth Circuit recently applied these principles to dismiss design-defect, negligence, failure-to-warn, and trafficking claims. *K.B.*, 768 F. Supp. 3d at 1057. There, the plaintiff alleged Meta connected traffickers to victims on Instagram by failing to adopt safeguards—like identity and age verification, better reporting tools, or warnings about trafficking—that could have prevented her exploitation by other users. *Id.* at 1060-61. Section 230 barred the claims because they sought "to hold Meta liable for failing to remove traffickers' grooming messages and posts." *Id.* at 1062, 1062-67. It did not matter that the plaintiff framed her claim in terms of the tools Meta uses to connect users "rather than the consequence" of the communications they facilitate. *Id.* at 1063. When a "theory of liability is based on the 'content of the subsequent interaction,' the claim is barred." *Id.*

Plaintiffs' claims assert duties materially identical to those rejected in *Grindr*, *MySpace*, *Herrick*, and *K.B*. They must be dismissed with prejudice.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Negligence (Claim 4).* The negligence claim faults Discord for creating or increasing the risk of child exploitation and suicide by (i) maintaining "broken moderation infrastructure," (ii) failing to "monitor[] the platform," (iii) insufficiently screening the "ages and identity of all users," (iv) failing to adopt controls to restrict minors' messaging, (v) preventing minors from messaging with adults, and (vi) failing "to monitor for, report, and prevent the use of Discord" by predators. Compl. ¶ 169 (recounting Discord's alleged negligent conduct). These duties—underscored by the Complaint's focus on Discord's supposedly ineffective and "hands-off" content moderation, *id.* ¶¶ 52-53, 60-62, 73, 76, 77, 89-90, 117, 121—seek to hold Discord liable for "failing to moderate content." *Yolo*, 112 F.4th at 1182. Avoiding liability would require Discord to monitor profiles and messages posted to the app; block content posted by predators; and restrict the messages minors can exchange—precisely what Section 230 forbids. *See Grindr*, 128 F.4th at 1152-53 (Section 230 barred negligence claim predicated on exact same alleged duties).

*Strict Liability: Not Reasonably Safe Design (Claim 2).* Plaintiffs' defective-design claim would impose identical duties. The claim faults Discord for providing a service that "furnished adult to minor direct message pathways," "lacked identity assurance[,]" "enable[d] children to discover harmful worlds and people," and lacked operational safeguards to prevent Taylor from communicating with predators. Compl. ¶ 155 (listing alleged defects). Like the negligence claim, this claim would require Discord to more perfectly screen for and block harmful profiles and messages and alter the operation of the neutral tools it provides users to communicate.

The Ninth Circuit rejected analogous claims in *Grindr*, 128 F.4th at 1153-54 (affirming dismissal of claim "that Grindr breached its duty not to design or manufacture defective products by failing to prevent a minor from being matched with predators") and *Yolo*, 112 F.4th at 1180 (affirming dismissal of design-defect claims that anonymous messaging features exposed users to harmful user posts), as did the Texas Supreme Court in *In re Facebook*, 625 S.W.3d at 93-94 (Section 230 bars "claims alleging that defectively designed internet products allowed for

DISCORD'S MOTION TO DISMISS - 9
Case No. 3:26-cv-05245-BHS

transmission of harmful third-party communications") and the Second Circuit in *Herrick*, 765 F. App'x at 590-91 (barring design defect claim predicated on design and operation of app that allegedly failed to verify profiles and block content). Section 230 bars the claim here, too. *See also MySpace II*, 175 Cal. App. 4th at 572-74 (barring design-defect claim for "failure to adopt reasonable safety measures" to stop predators from contacting minors).

*Strict Liability: Failure to Warn (Claim 3).* Plaintiffs cannot overcome Section 230 by reframing the duties they seek to impose as requiring Discord to warn users about the risks of exploitation on the platform. *Cf.* Compl. ¶¶ 161-162. This theory still faults Discord "for not mitigating … the harmful effects" of other users' messages, which, in substance, faults Discord "for not moderating content in some way, whether through deletion, change, or suppression." *Yolo*, 112 F.4th at 1180 (failure to warn minors about risks of bullying or harassment by other users' messages barred by Section 230). *Yolo* is directly on point and what the Ninth Circuit cited to hold that Section 230 prohibited requiring Grindr to warn users "about the risks of child sexual exploitation on the App." *Grindr*, 128 F.4th at 1154; *see also K.B.*, 768 F. Supp. 3d at 1066-67 (applying *Yolo* to bar duty to warn Instagram users that "trafficking is rampant").

That is exactly the warning Plaintiffs claim Discord was obligated to give. *See* Compl. ¶¶ 161-162 (asserting duty to warn of "atrocities committed on and enabled by its site"). But requiring online services to post such warnings "about third-party content is a form of editing" that Section 230 prohibits. *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 592 & 592 n.8 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x at 591 (Section 230 barred failure to warn claim). The Ninth Circuit's decisions in *Yolo*, 112 F.4th at 1800, and *Grindr*, 128 F.4th at 1154, require barring Plaintiffs' failure-to-warn claim here; *see also In re Facebook*, 625 S.W.3d at 93 (rejecting nearly identical duty to warn minors of trafficking risk because warning addressed "decisions relating to the monitoring, screening, and deletion of third-party content"). Any other holding "would allow

DISCORD'S MOTION TO DISMISS - 10
Case No. 3:26-cv-05245-BHS

essentially every state cause of action otherwise immunized by section 230 to be pleaded as a failure to warn." *Wozniak v. YouTube, LLC*, 100 Cal. App. 5th 893, 914-15 (2024) (dismissing).

***Outrage (Claim 1).*** Plaintiffs' outrage claim is barred for the same reason. The claim incorporates the same alleged duties underlying the negligence, design-defect, and failure-to-warn claims—to monitor user profiles and messages; screen and block predator profiles and messages; filter messages exchanged with minors; and publish warnings about the risk of exploitation—and relabels Discord's alleged failure to discharge them "extreme and outrageous conduct." Compl. ¶¶ 139-144. Because the asserted liability remains grounded in Discord's alleged failure to moderate user speech, *Yolo*, 112 F.4th at 1178, 1180, the claim treats Discord as a publisher of third-party content and is barred. *See also, e.g.*, *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (Section 230 barred emotional distress claims premised on failure to block offensive profile); *Snap*, 2025 WL 2926161, at *6 (Section 230 barred emotional distress claims premised on services' failures to prevent rapist's communications with minors).

***Trafficking (Claim 5).*** Plaintiffs claim Discord is liable for trafficking Taylor under RCW 9A.82.100 because it allegedly "enabled the exploitation of minors" by allowing "anonymous and private communications," "persistent access to minors," and "unsupervised interactions between adults and children" through messaging tools "that facilitated coercive exploitation." Compl. ¶¶ 173-174, 178. They also allege Discord provided predators "access to its platform" and failed to prevent their exploitation of Taylor despite generally knowing that bad actors have used the platform to abuse children. *Id.* ¶¶ 175-176.

But imposing liability for facilitating and failing to monitor and block the publication of third-party profiles and messages is precisely what Section 230 forbids, even when that conduct is labeled trafficking. *See Grindr*, 128 F.4th at 1153, 1155 (Section 230 barred analogous federal trafficking claim under 18 U.S.C. § 1595). *Grindr* applied the rule from *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1139, 1141 (9th Cir. 2022), where the Ninth Circuit dismissed another federal sex

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

trafficking claim because allegations that Reddit did "little to remove" child pornography "treat[ed] Reddit 'as the publisher or speaker' of 'information provided by another information content provider.'" So did the district court in *K.B.*, 768 F. Supp. 3d at 1063, holding a claim that Meta provided a "breeding ground" for traffickers was barred by Section 230 since it "seeks to hold Meta liable for failing to remove traffickers' grooming messages."

Like Plaintiffs here, the plaintiffs in these cases also alleged the platforms generally knew that bad actors used their services to commit similar crimes. But the analysis was the same. *See Grindr*, 128 F.4th at 1155 (alleged "constructive knowledge of child sexual abuse on its platform" did not save trafficking claim from Section 230); *see also Marshall's Locksmith Serv., Inc. v. Google, LLC*, 925 F.3d 1263, 1269 (D.C. Cir. 2019) (even actual notice of harmful content makes no difference because Section 230 "applies regardless of whether the defendant acquired knowledge"). These principles apply to state law trafficking claims, *Doe v. Reddit, Inc.*, 2021 WL 4348731, at *7 (C.D. Cal. 2021), *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *6-7 (N.D. Cal. 2020), and require dismissal here. *See also Jane Doe No. 1*, 817 F.3d at 21-22 & 22 n.7 (Section 230 barred Massachusetts trafficking claim). [3]

### 3. The content was provided entirely by third parties.

The third prong of Section 230 is readily satisfied because the Complaint admits Discord did not create the messages Taylor exchanged with his abusers or those abusers' profiles. Compl. ¶¶ 23-25, 108-114. Providing tools used to communicate and "carry out what may be unlawful or illicit" does not transform Discord into a content provider. *Roommates.com*, 521 F.3d at 1169; *see Grindr*, 128 F.4th at 1152-53 (offering "features and functions" that enable communication is not creating content). Plaintiffs' claims seek to hold Discord liable for *facilitating*—and failing to

---

[3] Although the Fight Online Sex Trafficking Act (FOSTA) exempts from Section 230 certain *federal* civil sex trafficking claims, 47 U.S.C. 230(e)(5)(a), that exemption does not apply to *state* civil sex trafficking claims like Plaintiffs', *J.B.*, 2020 WL 4901196, at *5-7, or to claims that do not amount to violations of the federal criminal statute 18 U.S.C. § 1591. *See Reddit*, 51 F.4th at 1145; *Grindr*, 128 F.4th at 1155-56.

DISCORD'S MOTION TO DISMISS - 12
Case No. 3:26-cv-05245-BHS

moderate—the content Taylor exchanged with his abusers. Compl. ¶¶ 120-121. Section 230 bars such claims.

## III.     THE FIRST AMENDMENT BARS PLAINTIFFS' CLAIMS

The First Amendment prohibits holding a forum for third-party speech liable for the content it distributes without proof the forum had "knowledge … of [its] contents." *Smith*, 361 U.S. at 149 (bookseller could not be liable for distributing obscene books without knowledge the books were obscene).  Because Plaintiffs' claims seek to impose liability based on what Discord *should have known* about the content conveyed through its platform—regardless of what it *actually* knew—the First Amendment bars the claims.

Under *Smith*, a distributor may "not be punished if he did not have some 'knowledge of the contents' of the allegedly" unlawful material. *United States v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 858 F.2d 534, 539 (9th Cir. 1988) (citation omitted); *see also Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 611 (6th Cir. 2005) (any claim that "chills the exercise of First Amendment rights must contain a knowledge element") (quoting *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992)). Thus in *Lewis v. Time Inc.*, 83 F.R.D. 455, 464-65 (E.D. Cal. 1979), the plaintiff failed to state a claim because he alleged no "specific facts" "to show that the distributor defendants … had knowledge of the [unlawful] nature" of the speech published.  "[T]here can be no liability" against a distributor of third-party speech consistent with "[t]he high standards required by the First Amendment" absent scienter and "specific factual allegations concerning actual knowledge." *Id.* at 463-65; *see also, e.g., Jackson v. Whitepages, Inc.*, 798 F. Supp. 3d 583, 611 (N.D. W.Va. 2025) (First Amendment barred privacy tort against platform for disseminating third-party content because claim "lacks any mechanism, such as a notice requirement or a knowledge element" to establish scienter).

The First Amendment bars Plaintiffs' claims here. The Complaint does not allege that Discord knew about a specific criminal scheme targeting Taylor or the contents of Taylor's

DISCORD'S MOTION TO DISMISS - 13
Case No. 3:26-cv-05245-BHS

communications with his abusers. What the Complaint alleges is that Discord was generally aware about the existence of the 764 network, and that Discord took affirmative steps to address reports of prior incidents involving identified 764 members, including making 58 reports to the National Center for Missing & Exploited Children. Compl. ¶¶ 116-120. But that is not enough to hold an online service liable for disseminating unlawful content when, as here, that service "was in the dark about the contents" of the communications targeting Taylor. *Boladian v. UMG Recordings, Inc.*, 123 F. App'x 165, 168, 169 (6th Cir. 2005) (First Amendment barred liability where music platform lacked knowledge that third-party titles were unlawful). Holding a platform liable in these circumstances would "have a chilling effect upon protected speech" because platforms, exercising caution, would self-censor and host less third-party speech to avoid liability. *Id.* at 169; *accord U.S. Dist. Ct.*, 858 F.2d at 539 (same). Traditional First Amendment principles—not just Section 230's enhanced protections—thus bar Plaintiffs' claims.

## IV. PLAINTIFFS CANNOT STATE ANY CLAIM AS A MATTER OF LAW

Plaintiffs also fail to adequately allege essential elements of each claim.

### A. Discord Is Not the Proximate Cause Of The Alleged Injuries (All Claims).

Each of Plaintiffs' claims requires plausible allegations of proximate cause. *See Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 840 (2015) (outrage); *Payne v. Weyerhaeuser Co.*, 30 Wn. App. 2d 696, 723 (2024) (product liability); *Zorchenko v. City of Fed. Way*, 31 Wn. App. 2d 390, 396 (2024) (negligence); *State v. Braun*, 20 Wn. App. 2d 756, 780 (2022) (trafficking). Only conduct that "in a natural and continuous sequence, unbroken by any new, independent cause, produces the event, and without which that event would not have occurred" constitutes a proximate cause. *Stoneman v. Wick Constr. Co.*, 55 Wn.2d 639, 643 (1960) (affirming dismissal on pleadings). The requirement reflects the principle that liability must be limited as a matter of public policy. *See Holmes v. Sec. Inv. Protection Corp.*, 503 U.S. 258, 268 (1992). Thus, while proximate causation *sometimes* presents a jury question, when a plaintiff's allegations "clearly fail" to

DISCORD'S MOTION TO DISMISS - 14
Case No. 3:26-cv-05245-BHS

establish "a sufficiently close, actual, causal connection between defendant's conduct" and the plaintiff's injuries, proximate cause is an issue of law for the court. *Maltman v. Sauer*, 84 Wn.2d 975, 980 (1975) (en banc) (judgment as a matter of law for lack of proximate cause).

Federal courts applying Washington law accordingly dismiss tort claims that fail to plausibly allege proximate cause, including when they allege intervening intentional acts of third parties that break the causal chain. *See, e.g.*, *Langfitt v. Pierce County*, 2022 WL 782574, at *5 (W.D. Wash. Mar. 15, 2022) (Settle, J.), *aff'd*, 2024 WL 3617318 (9th Cir. 2024) (dismissing negligence claim for lack of proximate cause where plaintiff's own intentional act—running into a police cruiser—superseded any alleged negligence by the officer who shot him). Thus, in *Ziegler v. EAPM Co.*, 2022 WL 2440111, at *2 & 2 n.1 (W.D. Wash. 2022), Judge Martinez dismissed a tenant's negligence claims against his landlord for hosting a party that resulted in a shooting. The court held that the shooting could not "possibly be considered within the 'ambit of the hazards'" of the party and was thus a superseding cause that broke "the chain of proximate causation" as a matter of law. *Id.* at *2 n.1.[4]

The abusers' alleged criminal conduct does exactly that. Plaintiffs claim Discord caused Taylor to kill himself by failing to screen and block the abusers' communications. *See* Compl. ¶¶ 117, 120, 121, 125. But it was the *abusers* who manipulated Taylor into entering a suicide pact, and who—on a telephone call, *not* using Discord—instructed him to take his own life. Compl. ¶¶ 110-114. These appalling premeditated criminal acts break the chain of causation as a matter of law. *See Washburn v. City of Fed. Way*, 178 Wn.2d 732, 761 (2013) (criminal conduct is often a superseding cause). No Washington court has held an online messaging service to be the proximate

---

[4] Other Washington federal courts do the same. *See, e.g.*, *Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1029 (W.D. Wash. 2005) (defense contractor was not proximate cause of injuries caused by military's use of its bulldozers), *aff'd*, 503 F.3d 974 (9th Cir. 2007); *Riley v. City of Spokane Valley*, 2022 WL 2195744, at *4 (E.D. Wash. 2022) (non-parties' actions were "intervening events" that made it "too attenuated" to conclude that defendant caused injuries); *Voss-Curry v. Crown Equip. Corp.*, 2022 WL 4368047, at *3 (W.D. Wash. 2022) (similar); *Armstrong v. Atrium Med. Corp.*, 2022 WL 17258345, at *3 (E.D. Wash. 2022) (similar).

DISCORD'S MOTION TO DISMISS - 15
Case No. 3:26-cv-05245-BHS

cause of a suicide allegedly resulting from the failure to monitor or restrict the messages of criminal conspirators. In fact, Washington courts *dismiss* complaints predicated on far less attenuation. *See, e.g.*, *Cook v. Seidenverg*, 36 Wn.2d 256, 258 (1950) (landlord's failure to provide heating was not proximate cause of tenant's burns from malfunctioning floor heater tenant purchased instead); *Thompson v. Devlin*, 51 Wn. App. 462, 471 (1988) (crossing guard not proximate cause of death of girl killed by criminally negligent motorist).

And for good reason. Plaintiffs' theory would make online services liable for "seemingly boundless litigation risks" for any criminal conduct allegedly facilitated through their app. *Fields v. Twitter, Inc.*, 881 F.3d 739, 749-50 (9th Cir. 2018) (providing accounts and direct messaging services did not make Twitter the proximate cause of crimes committed using them). *Fields* involved a federal tort, but its refusal to extend platforms' liability resonates with Washington law holding that unforeseeable criminal acts supersede a defendant's liability. *See Washburn*, 178 Wn.2d at 761; *Johnson v. State*, 77 Wn. App. 934, 942 (1995); *Ziegler*, 2022 WL 2440111, at *2 & 2 n.1. Any other rule would make every messaging service "liable for seemingly endless" instances of independent criminal acts that just happen to be carried out through their services. *Crosby v. Twitter, Inc.*, 921 F.3d 617, 625 & n.4 (6th Cir. 2019) (dismissing same allegations as *Fields*). Courts dismiss allegations that online services proximately cause third-party crimes merely because they provide the tools used to commit them. *See, e.g.*, *Roland v. Letgo, Inc.*, 2024 WL 372218, at *5 (10th Cir. 2024) (marketplace platform); *Meador v. Apple, Inc.*, 911 F.3d 260, 267 (5th Cir. 2018) (iMessage); *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 154-55 (2018) (FaceTime); *A.B. v. Salesforce.com, Inc.*, 2021 WL 3616097, at *5 (S.D. Tex. 2021) (software that facilitates messaging). The claims must be dismissed here as well.

**B.      Plaintiffs Cannot Plead a Viable Outrage Claim (Claim 1).**

A claim for outrage requires plausible allegations that (1) a plaintiff suffered severe emotional distress, (2) the emotional distress was inflicted intentionally or recklessly, (3) the

DISCORD'S MOTION TO DISMISS - 16
Case No. 3:26-cv-05245-BHS

conduct was outrageous and extreme, and (4) the plaintiff was either personally the object of the outrageous conduct or physically present when the conduct was directed to a family member. *See Clark v. Amica Mut. Ins. Co.*, 2013 WL 3148262, at \*3 (E.D. Wash. 2013) (citing *Reid v. Pierce County*, 136 Wn.2d 195, 202 (1998)). Plaintiffs cannot plead the second through fourth elements.

*No intentional or reckless outrageous conduct.* Outrage claims fail where a complaint fails to plausibly allege that a defendant's intentional or reckless conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Trujillo*, 183 Wn.2d at 840 (citation omitted) (affirming dismissal). "The requirement of outrageousness is not an easy one to meet." *Repin v. State*, 198 Wn. App. 243, 267 (2017) (affirming dismissal). Plaintiffs undoubtedly suffered grave distress from losing their son, and while the abusers' cruelty is utterly intolerable, none of Discord's alleged conduct satisfies this standard. *See, e.g.*, *Lewis v. Bell*, 45 Wn. App. 192, 195 (1986) (dismissing as a matter of law where conduct not outrageous).

Stripped of legal conclusions and labels too vague to state an outrage claim, *Doe v. U.S. Ctr. for SafeSport, Inc.*, 2024 WL 3924663, at \*14 (W.D. Wash. 2024) (Settle, J.), the Complaint at most claims that Discord failed to prevent minors from messaging with predators. *See* Compl. ¶¶ 138-139. It does not allege Discord intended, knew, or even recklessly ignored that Taylor's abusers were messaging Taylor to harm him, and instead faults Discord for offering a communications service that failed to detect or prevent the abusers' communications despite general constructive knowledge that bad actors used the app. *Id.* ¶¶ 139-140. But operating a general-purpose messaging service, even with alleged general "awareness of past harm" between users, is neither "utterly intolerable in a civilized community" nor reckless—it is legal, common, and not even negligent. *Towner v. A Place for Rover Inc.*, 2026 WL 555642, at \*3 (W.D. Wash. 2026) (dismissing outrage claim based on platform's lack of safety features). Complaints about content moderation are simply too ubiquitous to support an outrage cause of action. *See also, e.g.*,

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 786 (N.D. Cal. 2021) (harm from content moderation practices insufficient to state emotional distress claim under California law).

***No outrageous conduct directed to Plaintiffs.*** The outrage claim also fails on the fourth element because the Complaint fails to allege Discord knowingly directed any conduct toward Taylor or his parents. *See R.M. v. King County*, 31 Wn. App. 2d 1057, 2024 WL 3327025, at \*5 (2024) (failure to allege defendants knew plaintiff was one of the targets of their conduct meant no actionable direction); *see also Jacobsen v. Marin Gen. Hosp.*, 192 F.3d 881, 887-88 (9th Cir. 1999) (dismissing emotional distress claim for lack of direction where defendant did not know plaintiffs' identity). Discord could not have directed any conduct toward Plaintiffs because it did not know who they were, let alone that Taylor was a user.

***No physical presence.*** Plaintiffs' individual outrage claims also fail under the fourth element because they were not present for their sons' abuse. "[P]resence is a crucial element of a claim for outrage when the conduct is directed at a third person." *Lund v. Caple*, 100 Wn.2d 739, 742 (1984) (dismissing outrage claim arising from defendant's affair with plaintiff's wife). In *Clark*, a court in the Eastern District of Washington dismissed an outrage claim brought by a woman whose neighbors were allegedly intimidated by private investigators. 2013 WL 3148262, at \*3. The defendants argued, and the court agreed, that the claim failed because plaintiff did not allege she was present at the time of the alleged activities. *Id.* at \*4 (citation omitted). So too here. The Complaint does not allege that Taylor's parents were physically present for the conduct that allegedly caused their distress. Their individual outrage claims fail for this additional reason.

### C. Plaintiffs Cannot Plead Viable Product Liability Claims (Claims 2 and 3).

The product liability claims fail for lack of proximate causation, *supra*, and should also be dismissed because Discord is not a product; the claims target the dissemination of information; and the dangers of online communication with strangers are open and obvious.

DISCORD'S MOTION TO DISMISS - 18
Case No. 3:26-cv-05245-BHS

***Discord is not a product.*** Washington product liability law only applies to "object[s] possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce," not an intangible service like Discord. RCW 7.72.010(3). No Washington court has held an online service to constitute a product. To the contrary, courts in Washington and beyond have recognized that messaging apps and other platforms that connect users are not products and cannot support recovery under any species of product liability. *See, e.g.*, *Quinteros v. InnoGames*, 2022 WL 898560, at \*7 (W.D. Wash. 2022) (online game was service, not "object," under RCW 7.72.010), *aff'd in relevant part on other grounds*, 2024 WL 132241, at \*3 (9th Cir. 2024); *Grigsby v. Valve Corp.*, 2013 WL 12310666, at \*6 (W.D. Wash. 2013) (Steam gaming platform was service not product). These conclusions align with the weight of authority from other jurisdictions. *See, e.g.*, *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1010 (C.D. Cal. 2022) (Airbnb platform not a product); *Macek v. DraftKings, Inc.*, 2026 WL 802286, at \*13-15 (E.D. Pa. 2026) (DraftKings App not a product); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at \*4 (C.D. Cal. 2023) (Snapchat); *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 399 (S.D.N.Y. 2018) (Amazon); *Deditch v. Uber Techs., Inc.*, 2025 WL 1928937, at \*2 (N.D. Ohio 2025) ("digital app"); *Jacobs v. Meta Platforms, Inc.*, 2023 WL 2655586, at \*4 (Cal. Super. Ct. 2023) (Instagram).

***Claims target publishing information.*** Product liability also does not apply to a "publisher's role in bringing ideas and information to the public." *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1037, 1075 n.8 (9th Cir. 1991); *see* Restatement (Third) of Torts: Prod. Liab. § 19 cmt. d (1998) (no product liability for the transmission of information). This is because "[t]he purposes served by products liability" are not suited to the dissemination of expression—even if unlawful—as doing so would "seriously inhibit" protected speech. *Winter*, 938 F.3d at 1033-35; *see James v. Meow Media, Inc.*, 300 F.3d 683, 695 (6th Cir. 2002) (limitation avoids "significant constitutional problems under the First Amendment"). There is thus no strict liability for media

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

like Discord that distribute expression. *See Est. of B.H. v. Netflix, Inc.*, 2022 WL 551701, at \*3 (N.D. Cal. 2022) (Netflix), *aff'd*, 2024 WL 808797 (9th Cir. 2024); *see also, e.g.*, *McCollum v. CBS, Inc.*, 202 Cal. App. 3d 989, 1002 (1988) (First Amendment precluded product liability for dissemination of music that allegedly caused decedent to commit suicide).

*Obvious alleged risks.* The failure-to-warn claim (Claim 3) also fails because a "warning need not be given at all in instances where a danger is obvious or known." *Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 139 (1986) (no duty to warn of all dangers of riding mini-trial bikes).[5] The risks Plaintiffs allege—exposure to exploitation by strangers met online—are well-known and "exist[] anywhere on the internet." *Yolo*, 112 F.4th at 1181. In *Yolo*, the Ninth Circuit affirmed dismissal of a similar failure-to-warn product liability claim that alleged that previous high-profile suicides and the history of cyberbullying should have put the defendant on notice that its service was unduly dangerous to teenagers. *Id.* at 1179. The court explained plaintiffs' failure to warn theory was based on the receipt of harassing and bullying messages, the circulation of which are "unfortunate realities" of the internet and free expression itself. *Id.* at 1181. The Complaint here admits these risks are well-known. Compl. ¶¶ 27-28, 116 nn.35, 36, 125-126. That concession is dispositive. *See also Doe v. SexSearch.com*, 551 F.3d 412, 420 (6th Cir. 2008) (dismissing comparable claims, holding that the risk of dangerous "personal representations are well known" online and too obvious to support relief).

### D. Plaintiffs Cannot Plead a Viable Negligence Claim (Claim 4).

The negligence claim also fails because Plaintiffs cannot allege Discord owed any actionable duty. *See Hopovac v. State Dep't of Corrs.*, 197 Wn. App. 817, 822-23 (2017) (summarily dismissing for lack of actionable legal duty).

---

[5] The claim also fails because the Complaint acknowledges that Discord provides ample warnings about the limitations of its moderation and the resulting risks. *See* Compl. ¶ 73 (Discord posts warnings stating it cannot monitor "every conversation").

DISCORD'S MOTION TO DISMISS - 20
Case No. 3:26-cv-05245-BHS

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Legal duties under Washington law can sound in nonfeasance (i.e., a duty to take some affirmative action) or misfeasance (i.e., a duty to refrain from misconduct that creates foreseeable danger). *Pitoitua v. Gaube*, 28 Wn. App. 2d 141, 153-54 (2023) (dismissing on pleadings for lack of duty). The duties asserted here sound in nonfeasance, as they would require messaging apps like Discord to detect and stop users from using their services to harm other users. *See* Compl. ¶¶ 168-169 (alleging Discord owed a duty to protect Taylor from third-party tortfeasors).

No Washington appellate court has recognized such a duty. And the Ninth Circuit squarely rejected it under analogous California common law in *Dyroff*, 934 F.3d 1093, affirming dismissal of a mother's negligence claims that sought to hold a platform liable for failing to protect her son from another user whom he messaged and met offline to purchase lethal heroin. Recognizing there is no duty to prevent third-party misconduct outside a limited class of "special relationship[s]" where a defendant can control the tortfeasor, *Dyroff* held there was no special relationship between the website and its users, explaining that "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content." *Id.* at 1101. The decision followed *Beckman v. Match.com, LLC*, 743 F. App'x 142, 143 (9th Cir. 2018), where the court also dismissed because there was no special relationship between a dating app and a user requiring the app to prevent other users' misconduct. *See also, e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359-60 (D.C. Cir. 2014) (no duty to Facebook users); *Godwin v. Facebook, Inc.*, 160 N.E.3d 372, 382-83 (Ohio App. 2020) (same); *Hall v. YouTube, LLC*, 2025 WL 3265494, at *4 (N.D. Cal. 2025) (YouTube); *Bogard*, 2025 WL 604972, at *9 (TikTok).

Washington courts apply the same rule. *Pitoitua*, 28 Wn. App. 2d at 152-53 (dismissing on pleadings for absence of special relationship obligating defendants to protect plaintiff from third-party criminal acts). They thus refuse to impose duties to prevent third-party misconduct outside special relationships not present here. *See also, e.g.*, *Hopovac*, 197 Wn. App. at 823-26 (dismissing absent special relationship because "there is no affirmative duty to protect others from

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

the criminal acts of third parties" otherwise). In fact, this Court dismissed the duty Plaintiffs allege in *M.L. v. Craigslist Inc.*, 2020 WL 6434845, at *13 (W.D. Wash. 2020), *R. & R. adopted*, 2020 WL 5494903, at *7 (W.D. Wash. 2020) (Settle, J.), holding online services have no duty to protect users "from the criminal conduct of third parties." Although businesses may owe such duties to invitees on their premises, that principle only applies to businesses "on real property, not virtual website activity." *Id*. (no "duty to ensure that their website does not endanger minors"); *see also Doe v. MySpace, Inc*., 474 F. Supp. 2d 843, 850-51 (W.D. Tex. 2007), *aff'd*, 528 F.3d 413 (5th Cir. 2008) (rejecting same analogy to premises liability).

Plaintiffs cannot avoid dismissal by recasting these duties in terms of misfeasance. Misfeasance lies where affirmative misconduct creates a risk of harm. *See Robb v. City of Seattle*, 176 Wn.2d 427, 437, 439 (2013). The Complaint does not allege facts that Discord "create[d] a new risk of harm but instead" that it "failed to eliminate a risk" when it did not find and remove abusers' profiles and block their messages. *Id.* (such allegations sound in nonfeasance); Compl. ¶¶ 167-169. Discord's only affirmative conduct is offering a messaging service, but the "creation and operation of a communication platform" is not misfeasance. *Ziencik*, 2023 WL 2638314, at *5 (dismissing). The negligence claim fails for this reason, too. *See Dyroff*, 934 F.3d at 1100-01 (no duty from offering messaging tools).

### E. Plaintiffs Cannot Plead a Viable Trafficking Claim (Claim 5).

The Washington trafficking claim requires plausible allegations that a defendant (1) with a sexual or financial motivation (2) recruited, enticed, harbored, transported, isolated, solicited, obtained, bought, maintained, provided, or received a person (3) knowing or recklessly ignoring that force, fraud, or coercion would be used (4) to cause that person to engage in forced labor, involuntary servitude, a sexual act, or a commercial sex act. *See* RCW 9A.40.100(1), (3). The claim fails for lack of proximate cause, *supra*, and because Plaintiffs do not and cannot possibly

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

allege that Discord undertook any action toward Taylor knowing or in reckless disregard that abusers would coerce him into taking his own life.

Although no Washington appellate court has interpreted what these elements require in the context of a civil action, the text of the statute is plain. *See Rozner v. City of Bellevue*, 116 Wn.2d 342, 347 (1991) (courts must start with the text and apply ordinary tools of construction to interpret Washington laws). Starting with the conduct element, the statute lists transitive verbs that require physical custody of another person. *See State v. Valdiglesias LaValle*, 2 Wn.3d 310, 321 n.7 (2023) (recognizing canon that "*a string* of statutory terms raises the implication that the words *grouped in a list* should be given related meaning"). But Taylor is not alleged to have been in Discord's physical custody, Compl. ¶¶ 171-180, and Discord never made him available to anyone else. All Discord made available was a communication service carrying messages and profile information that others posted—but that is publishing activity, not trafficking. *See Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) (making information available is speech not conduct).

Nor do Plaintiffs plausibly allege facts that Taylor was engaged in forced labor, involuntary servitude, or any sex act. In addition, they do not (and cannot) allege that Discord acted with knowledge or with reckless disregard that its conduct would cause the coercion of Taylor's suicide. RCW 9A.40.100(1)(a)(i), (3)(a). The Complaint at most avers Discord's constructive knowledge that—like most any online service—bad actors misuse its platform to exploit other users. Compl. ¶¶ 77, 78-82, 89-90, 116-122, 167-169, 175-176. But that suggests what Discord *should have* known about its platform *generally*, not what it actually knew or recklessly ignored. *See Grindr*, 128 F.4th at 1155-56 (similar allegations of constructive knowledge insufficient). The accusation that Discord would be financially *motivated* to have its users killed, moreover, is implausible. *Id.* at 1155 (implausible that app knowingly profited from rapes).

The only case interpreting RCW 9A.40.100's application to online services in a civil action supports Discord and came before this Court in *M.L. v. craigslist Inc.*, 2022 WL 1210830 (W.D.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Wash. 2022) (Settle, J.). The Court there adopted an uncontested portion of a report from Judge Fricke recommending dismissal where a plaintiff failed to allege either the conduct or mental state elements. *See M.L. v. craigslist Inc.*, 2021 WL 5217115, at \*8 (W.D. Wash. 2021). There as here, the plaintiff alleged no facts indicating that craigslist physically conveyed any victim to any perpetrator. *Id.* And there, as here, the plaintiff alleged no facts showing that craigslist had any kind of knowledge that *the plaintiff* "was being trafficked," "or that craigslist was knowingly profiting from such trafficking." *Id.* Plaintiffs' barebones conclusory assertions (Compl. ¶ 173) are equally invalid here.

## CONCLUSION

Discord respectfully seeks an order dismissing Plaintiffs' claims with prejudice.

Dated: April 24, 2026

By: /s/ *Ambika Kumar*
Ambika Kumar

Adam S. Sieff (WSBA #59792)
Marcy Blattner Micale (*pro hac vice*)
Sam F. Cate-Gumpert (*p* forthcoming)
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Tel: (213) 633-6800
Email: adamsieff@dwt.com
    marcyblattnermicale@dwt.com
    samcategumpert@dwt.com

Ambika Kumar (WSBA #38237)
Xiang Li (WSBA #52306)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Tel: (206) 622-3150
Email: ambikakumar@dwt.com
    xiangli@dwt.com

*Attorneys for Defendant Discord Inc.*

*I certify that this memorandum contains 8,310 words, in compliance with the Local Civil Rules.*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax