UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COLBY TAYLOR, individually and as a personal representative of the ESTATE OF JAY TAYLOR, a deceased individual; LESLIE TAYLOR; individually and as a personal representative of the ESTATE OF JAY TAYLOR, a deceased individual,<br><br>    Plaintiffs,<br><br>  vs.<br><br>DISCORD INC., a Delaware company,<br><br>    Defendant(s). | No. 3:26-cv-05245-BHS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>ORAL ARGUMENT REQUESTED |





C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

**Page**

I. INTRODUCTION ...................................................................................................1

II. FACTS .....................................................................................................................2

III. LEGAL STANDARD ..............................................................................................3

IV. ARGUMENT ...........................................................................................................4

    A. No Valid Contract Ever Existed Between Jay and Discord ..........................4

        1. Discord Fails to Show Jay Assented .................................................4

        2. Even if Jay Assented, the Agreement has been Disaffirmed.................9

        3. The Terms of Use Are Unenforceable because Discord Breached Them............11

    B. This Court Decides Arbitrability .................................................................12

        1. Discord Fails to Show Delegation....................................................12

        2. Discord's Alleged Delegation of Arbitrability is Procedurally Unconscionable..13

    C. This Court Retains Jurisdiction and This Case Must Proceed ..................14

        1. Washington and California Forbid Enforcement of Arbitration Clauses for Wrongful Death Claims ...................................................................14

        2. If Any Claims are Forced into Arbitration, the Taylors' Individual Claims Should not be Stayed .................................................................16

        3. The End Forced Arbitration Act Preempts Discord's Contract Terms..................18

            i. The Claims Constitute a Sexual Assault Dispute...........................................18

            ii. The EFAA Applies because the "Dispute Arose" after the Act Passed ........19

V. CONCLUSION.......................................................................................................20



C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

# TABLE OF AUTHORITIES

**Page**

**<u>Federal Cases</u>**

*A.M. v. Omegle*, No. 3:21-cv-01674-MO, 2023 WL 1470269 (D. Or. 2022) ................................1

*Bailey v. United States*, 516 U.S. 137 (1995) ...............................................................................19

*Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ....................... *passim*

*Carbajal v. Nintendo of America Inc.*, No. 2:2020cv01694-TSZ (W.D. Wash. Apr. 29, 2021) ...14

*Chiron Corp. v. Ortho Diagnostics Sys.*, 207 F.3d 1126 (9th Cir. 2000) ......................................12

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962)........................................................................17

*Corley v. United States*, 556 U.S. 303 (2009).............................................................................19

*Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114 (9th Cir. 2008)..................................................12

*Dean Witter v. Byrd*, 470 U.S. 213 (1985)...................................................................................17

*Diaz-Roa v. Hermes Law*, P.C., 757 F. Supp. 3d 498 (S.D.N.Y. 2024) .......................................18

*Doe v. Epic Games, Inc.*, No. 19-CV-03629, 2020 WL 376573 (N.D. Cal. Jan. 23, 2020)............9

*Doe v. Grindr*, 128 F.4th 1148 (9th Cir. 2025) ..............................................................................1

*Doe v. Roblox Corp.*, No. 25-CIV-01193, Cal. Super. Ct. San Mateo Cnty. (Nov. 13, 2025)......18

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995).....................................................13

*Forrest v. Spizzirri*, No. 22-16051 (9th Cir. 2023) .......................................................................16

*G.G. v. Valve Corp.*, 799 F. App'x 557 (9th Cir. 2020).............................................................10, 14

*Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287 (2010).....................................3

*Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667 (9th Cir. 2021).....................................................3

*Hibbs v. Winn*, 542 U.S. 88 (2004) ...............................................................................................19

*I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989 (N.D. Cal. 2012) ......................................9



C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

*In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*,
    702 F. Supp. 3d 809 (N.D. Cal. 2023) ................................................................1

*In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873 (6th Cir. 2021) ......................10, 11

*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014)....................................................3

*Lopez v. Kmart Corporation*, 2015 WL 2062606 (N.D. Cal. May 4, 2015) ..................................9

*Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*,
    652 F. Supp. 3d 1313 (W.D. Wash. Jan. 24, 2023)....................................................18

*McCarthy, et al. v. Amazon.com, Inc.*, No. 23-35584 (9th Cir. 2026)............................................1

*Melendez v. Ethical Culture Fieldston Sch.*, 789 F. Supp. 3d 316 (S.D.N.Y. 2025)...............10, 11

*Morales v. TWA*, 504 U.S. 374 (1992)........................................................................18

*Neville v. Snap*, No. 22STCV333500 (Sup. Ct. Cal., Los Angeles, Jan. 2, 2024)..........................1

*Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014) .........................................4, 5, 8

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................................18

*Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279 (9th Cir. 2017) ....................................3

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)..................................11, 12

*Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172 (W.D. Wash. 2024)..........................................4

*Scott v. Amazon.com, Inc.*, 583 P.3d 1155 (Wash. 2026) ..............................................................1

*Scribner v. Trans Union LLC*, 738 F. Supp. 3d 1301 (E.D. Cal. 2024)..........................................4

*Smiles Servs. LLC v. Frye*, 2023 WL 6066683 (W.D. Wash. Sept. 18, 2023) .............................17

*Sprietsma v. Mercury Marine*, 537 U.S. 51 (2003) ....................................................................19

*T.K. v. Adobe Sys. Inc.*, No. 17-CV-04595, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018)............9

*Tu v. Experience Information Solutions, Inc.*, 2025 WL 1124612 (2025)......................................5

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412 (9th Cir. 2002)........17, 19



C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

**State Cases**

*Adler v. Fred Lind Manor*, 153 Wn.2d 331, 103 P.3d 773 (Wash. 2004) ....................................13

*Ammons v. Sentry Ins. Co.*, 431 F. Supp. 3d 1280 (D.N.M. 2019)..................................................20

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 6 P.3d 669 (2000).............14

*Berg v. Traylor*, 148 Cal. App. 4th 809, 56 Cal. Rptr. 3d 140 (2007)...........................................9

*Canopy Corp. v. Symantec Corp.*, 395 F. Supp. 2d 1103 (D. Utah 2005)....................................20

*Celli v. Sports Car Club of America, Inc.*, 29 Cal. App. 3d 511 (1972).......................................9

*Coughenour v. Del Taco, LLC*, 57 Cal. App. 5th 740, 271 Cal. Rptr. 3d 602 (2020) .....................9

*Daniels v. Sunrise Senior Living, Inc.*, 212 Cal. App. 4th 674,

    151 Cal. Rptr. 3d 273 (Ct. App. 2013)....................................................................................15

*Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC*,

    150 Cal. App. 4th 469, 58 Cal. Rptr. 3d 585 (2007)....................................................................15

*Gandee v. LDL Freedom Enters., Inc.*, 176 Wn.2d 598, 293 P.3d 1197 (Wash. 2013) ...............13

*Heardon v. Windsor Redding Care Center, LLC*, 103 Cal. App. 5th 1010 (2024) ......................15

*J.R. v. Electronic Arts Inc.*, 98 Cal. App. 5th 1107, 317 Cal. Rptr. 3d 367 (2024) .................10, 11

*Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133 (2d Cir. 2000)..................................................20

*Lubin v. Cowell*, 25 Wn.2d 171, 170 P.2d 301 (1946) ..................................................................9

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006)....................................................14

*Nelson v. McGoldrick*, 127 Wn.2d 124, 896 P.2d 1258 (Wash. 1995)........................................13

*Ruiz v. Podolsky*, 50 Cal. 4th 838, 237 P.3d 584 (Cal. 2010).....................................................15

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 289 Cal. Rptr. 3d 1 (2021) ...........................6

*Snodderly v. Brotherton*, 173 Wn. 86, 21 P.2d 1036 (1933) .......................................................9

*Thomas v. Westlake*, 204 Cal. App. 4th 605 (2012) ...................................................................16

*Wise v. Truck Ins. Exch.*, 11 Wn. App. 405, 523 P.2d 431 (1974) ..............................................9

Page v — PLAINTIFF'S
OPPOSITION TO MOTION
TO COMPEL ARBITRATION



*Woodall v. Avalon Care Ctr.-Federal Way, LLC,*

  155 Wn. App. 919, 231 P.3d 1252 (2010) ..........................................................................2, 15

*Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 103 P.3d 753 (Wash. 2004) ...................13, 14

## **Statutes and Rules**

9 U.S.C. § 401 (Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act) ..…..19

9 U.S.C. § 402 (Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act)..18, 19

Cal. Fam. Code § 6700 ...................................................................................................................9

Cal. Fam. Code § 6710 .................................................................................................................10

LCR 7(e)(3) (Local Civil Rule — W.D. Wash.).............................................................................21

RCW 4.20.020 (Survival Statute) ................................................................................................14

RCW 4.20.046 (Survival Statute) ................................................................................................14

RCW 4.20.060 .............................................................................................................................14

RCW 4.24.010 (Wrongful Death Statute)....................................................................................14

RCW 26.28.030 (Minors' Right to Disaffirm Contracts).........................................................9, 10

## **Other Authorities**

Restatement (Second) of Contracts § 19(2) ....................................................................................5



C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

## I. INTRODUCTION

The last three years have seen courts shine a spotlight on tech companies that must publicly wrestle with allegations that their products are harmful to children. For the first time in history, courts are adjudicating cases against companies for creating addictive algorithms that cause eating disorders, dating apps that traffic minors, live-streaming websites that match sex predators with children, messaging apps that facilitate lethal drug deals, and online retailers that sell suicide kits. *See generally In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, 702 F. Supp. 3d 809 (N.D. Cal. 2023); *Doe v. Grindr,* 128 F.4th 1148 (9th Cir. 2025); *A.M. v. Omegle,* No. 3:21-cv-01674-MO, 2023 WL 1470269 (D. Or. 2022); *Neville v. Snap,* No. 22STCV333500 (Sup. Ct. Cal., Los Angeles, Jan 2, 2024); *Scott v. Amazon.com, Inc.*, 583 P.3d 1155 (Wash. 2026); *McCarthy, et al. v. Amazon.com, Inc.*, No. 23-35584 (9th Cir. 2026).

With this motion, Discord tries what no other tech defendant has dared: to shuffle the parents of a dead child out of court and into a secret closed-door arbitration.

Discord's motion rests on a remarkable proposition — that a thirteen-year-old boy, manipulated into hanging himself on a livestream by a child sexual exploitation cult that Discord knowingly housed, can be said to have "agreed" to resolve the legal claims arising from his death in a private forum his grieving parents cannot access.

Discord asks this Court to hold that the fragment of a promotional webpage they supply in their motion, which depicts bold graphics and large fonts instructing visitors to type in their email address, should bar the family of a 13-year old tragically dead child from justice in court simply because that webpage contained a tiny phrase in six-point font saying that "registering" binds a person to the Terms of Service. Discord produces no proof of mutual assent and no evidence of an actual agreement between Jay and Discord. The decision of arbitrability stays with this court because Jay's Estate has disaffirmed any theoretical "agreement" by Jay to arbitrate and it would be procedurally unconscionable to conjure a delegation clause where there is none. Further, the End Forced Arbitration Act preempts whatever contract terms Discord relies upon. Finally, even if this Court were to send the estate's survival claims to arbitration, under settled Washington law no arbitration

C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

clause can apply to the wrongful death claims asserted on behalf of the heirs to an estate, Jay's parents here. *Woodall v. Avalon Care Ctr.-Federal Way, LLC*, 155 Wn. App. 919, 926, 231 P.3d 1252, 1255 (2010).

This Court should deny the motion to compel arbitration in full so the Taylors can proceed with prosecuting this important case in the broad daylight uniquely afforded by our American judicial process.

## II.  FACTS

Discord is a social media product that markets to kids 13+ but knows children much younger than that use the product and do so without parental knowledge or permission. Compl. ¶ 39, 59-60. Discord birthed and housed the online sexual exploitation cult, 764.  Compl. ¶¶ 78-91, 107-30. On January 17, 2022, Jay, age 13, was targeted by a young person on Discord who was in the escalating process of being emotionally and sexually tortured by 764 members. Compl. ¶¶ 96-102, 107-09.  The girl was under constant pressure by her master and 764 leader, Shahriar Javan, to kill herself or find somebody else who would. *Id.*  After targeting Jay on Discord, she entered a suicide pact with Jay and then ceded control of her account to her master, Shahriar Javan, who instructed Jay on how to kill himself in front of the 764 group. *Id.* Jay obeyed and hanged himself for an online audience. Compl. ¶¶ 107-15.

Jay's parents, Colby and Leslie, filed a lawsuit in Pierce County Superior Court on February 19, 2026, Colby as Personal Representative of Jay's estate and Colby and Leslie individually for the loss of the parent-child relationship. Dkt. 1-1.  Discord removed the case to this Court. Dkt. 1.

Now Discord is trying to divide the case and force a secret arbitration on just the estate's survival claims (which in this case consist solely of Jay's pre-death pain and suffering). Discord concedes that although the remaining claims—the net accumulation claim of the Estate and Colby's and Leslie's claims for the loss of their child's love and companionship—are not subject to arbitration, those claims should be tried separately by this Court, but not until after arbitration of the estate's claim for pre-death pain and suffering.

Ⓖ
C.A.GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

No agreement between Discord and Jay exists. In its motion to force arbitration, Discord produces four fragmented screenshots it claims are "identical or nearly identical" to images presented to Jay when he was age ten and thirteen. The screenshots are of flashy promotional pages for Discord that urge a person to "ditch Skype and TeamSpeak" and "Imagine a Place . . . Where just you and a handful of friends can spend time together." The pages prompt a visitor to "Enter a username." In teeny tiny writing below it says, "By registering, you agree to Discord's Terms of Service and Privacy Policy." There is no box to click, no pop-up agreement to scroll through, nothing to help a child understand that entering a username is "registering," and certainly no mention of an arbitration agreement, let alone one that would survive well beyond his short life. Discord's motion contains no actual evidence of a contract between Jay and Discord.

Even if, *arguendo,* Discord and Jay formed an agreement to arbitrate, that agreement is not valid because it was disaffirmed three separate times: 1) at Jay's death, 2) by operation of law with the filing of this lawsuit, and 3) through the Declaration of the Personal Representative of the Estate of Jay Taylor filed alongside this brief.

### III. LEGAL STANDARD

A party seeking to compel arbitration bears the burden of proving the existence of a valid, enforceable arbitration agreement. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). The court applies a standard similar to a motion for summary judgment: the moving party must show that there is no genuine issue of material fact regarding the formation of the arbitration agreement. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Courts resolve any doubts about the scope of arbitrable issues in favor of arbitration only after — and not before — the threshold question of contract formation is answered. *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 303 (2010) ("Courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue."). The presumption in favor of arbitration does not apply to the question of whether a valid

C.A.GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

agreement to arbitrate was ever formed. *Id.*; *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) ("the party seeking to compel arbitration has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence").

## IV. ARGUMENT

Discord's motion fails at every threshold step required to compel arbitration. First, Discord cannot establish the existence of any valid agreement between Jay and Discord because it offers no competent evidence that Jay ever assented to the Terms of Service or arbitration provision, and the interfaces it relies upon fail to provide reasonably conspicuous notice or obtain unambiguous manifestation of assent under controlling Washington, California, and Ninth Circuit authority. Second, even assuming *arguendo* that some agreement once existed, any contract with Jay — a minor — was disaffirmed under Washington law through Jay's death, the filing of this action, and the Estate's express repudiation of any purported agreement. Third, the Court, not an arbitrator, must decide arbitrability because Discord fails to identify any clear and unmistakable delegation provision, and any purported delegation clause is procedurally unconscionable and has been disaffirmed. Fourth, Plaintiffs' wrongful death claims belong independently to Jay's statutory heirs and therefore are not subject to an arbitration agreement to which they are not and never were parties under settled Washington and California law. Finally, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act independently bars enforcement of Discord's arbitration provision because this case relates directly to a sexual assault dispute arising from Discord's facilitation of sexually exploitative abuse. For all of these reasons, Discord's motion to compel arbitration should be denied in its entirety.

### A. No Valid Contract Ever Existed Between Jay and Discord.

#### 1. Discord Fails to Show Jay Assented.

To form a contract under Washington or California law, the parties must manifest their mutual assent to the terms of the agreement. *See Saeedy v. Microsoft Corp.,* 757 F. Supp. 3d 1172 (W.D. Wash. 2024); *Scribner v. Trans Union LLC*, 738 F. Supp. 3d 1301 (E.D. Cal 2024). These elemental principles of contract formation apply with equal force to contracts formed online. The most straightforward application of these principles in the online world involves so-called "clickwrap"

C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

agreements, in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating, "I agree," in order to proceed. *Nguyen v. Barnes & Noble, Inc.,* 763 F.3d 1171 (9th Cir. 2014). In that scenario the consumer has received notice of the terms being offered, and, in the words of the Restatement, "knows or has reason to know that the other party may infer from his conduct that he assents" to those terms. Restatement (Second) of Contracts §19 (2). As a result, courts routinely find clickwrap agreements enforceable.

At the other end of the spectrum are so-called "browsewrap" agreements, in which a website offers terms that are disclosed only through a hyperlink, and the user supposedly manifests assent to those terms by simply using the site. *See Nguyen,* 763 F.3d at 1176. Courts are more reluctant to enforce browsewrap agreements because consumers are frequently left unaware that contractual terms were even offered. *Id.* at 1178 (noting "courts' traditional reluctance to enforce browsewrap against individual consumers"); *Berman v Freedom Financial Network*, LLC, 30 F.4th 849 (9th Cir. 2022) applying *Nguyen.*

To avoid the unfairness of enforcing contractual terms that consumers never intended to accept, as here, courts put the onus on the website operator to show that "meaningful assent has been given." *Berman,* 30 F.4th at 856. "Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id*.

The burden is on the party seeking to compel arbitration to demonstrate the existence of an arbitration agreement, providing a witness with personal knowledge as to what the counterparty "accessed, saw, or clicked" to establish mutual assent. *Tu v. Experience Information Solutions, Inc.* 2025 WL 1124612 (2025) (finding a genuine dispute of material fact as to whether an agreement to arbitrate existed where the defendant's declarant lacked personal knowledge about what the plaintiff saw).

Ⓖ
C.A.GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Discord does not contend in its motion to compel arbitration that Jay or his parents had actual knowledge of an agreement to arbitrate. Neither of Discord's declarants had personal knowledge about precisely what, if any, agreement Jay agreed to. Discord fails to produce any details surrounding Jay's account creation or precisely what he saw ("it is unclear whether Plaintiffs' son used the home page or resignation page to create his accounts," ". . . which brought users to a page identical or nearly identical to the following." Motion at 2. Discord provides no proof of an actual contract between Jay and Discord. In its 75 pages of exhibits, Discord produces no time and date of an agreement, no metadata, no code. It produces no receipt of an agreement that Jay would have received.

Discord's failure of proof is compounded by the age of the putative contracting party. Discord now seeks to enforce a purported agreement against the estate of a child who was, by Discord's own admission, ten or eleven years old when he first created an account. Regardless of which legal rules govern minors' capacity to contract, they presuppose at minimum that the minor actually encountered, and had a meaningful opportunity to understand, the terms being offered. Discord's "identical or nearly identical" formulation concedes it cannot say which of two different registration flows Jay encountered — which means it cannot demonstrate the notice he actually received and cannot demonstrate assent. A contract cannot be found when the proponent cannot identify its own terms of formation.

As demonstrated below, Discord failed to show that either of the conditions necessary for finding an enforceable agreement based on inquiry notice were satisfied.

*Reasonably conspicuous notice.* Website users are entitled to assume that important provisions – such as those that disclose the existence of proposed contractual terms – will be prominently displayed, not buried in fine print. *Berman,* 30 F. 4th at 856 (citing *Sellers v. JustAnswer LLC,* 73 Cal. App.5th 444 (2021)). When terms and conditions are disclosed through a hyperlink, "the fact that a hyperlink is present must be readily apparent." *Id*. Courts have found that merely underlying links is not sufficient. To be conspicuous, a notice "must be displayed in a font size and format" such that a "reasonably prudent" user would have seen it, such as putting it in all caps. *Id.*



C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

The images produced in Discord's Exhibit A, B, C, and D, are the antithesis of conspicuous. The text disclosing the terms is printed in a tiny font considerably smaller than the font used in the surrounding page and in a font so small it requires squinting. The comparatively larger font used in the surrounding text – slogans, graphics, and the instruction to "Enter a username" directs the user's attention everywhere else. The text is further de-emphasized by the overall design of the webpage in which the other visual elements draw the user's attention away from the barely readable and severely important text. In Exhibits A, B, and C the tiny print about the Terms of Service and Privacy Policy are in muted colors—grey on a black background—or are the same color as all the other text on the page. The text is not delineated by caps or the use of a unique color different from the other text on the page. Exhibits A, C, and D, are not even underlined. In all examples the language announcing the actual agreement — "By registering, you agree to Discord's. . ." are particularly muted. While Discord claims that "Terms of Service" and "Privacy Policy" are hyperlinked, this would not be evident to a 10- or 13-year-old unless they were dragging their mouse over it – and the courts agree it is not a user's job to ferret out hidden hyperlinks. *Berman,* 30 F. 4th at 867.

The standard for conspicuousness is not met where the disclosing language is designed, whether intentionally or not, to fade into the background of a visually busy registration page. In *Berman*, the Ninth Circuit found that a notice failed the conspicuousness test in part because it was displayed in a "tiny gray font" beneath more prominent visual elements, concluding that the website's overall design "purposefully direct[ed] the user's attention" away from the disclosure. 30 F.4th at 856–57. Discord's exhibits present the same problem in starker form: the registration pages are visually designed as promotional materials — large, colorful graphics, inviting slogans, and a prominent username prompt — with the legal disclosure tucked beneath in what Discord's own screenshots reveal to be a font dramatically smaller than everything around it. The disclosures were not designed to inform. They were designed to disappear.

This problem is especially acute when the purported assenting party is a child. The "reasonably prudent user" standard does not contemplate a ten-year-old encountering a gaming platform's sign-up page for the first time. Discord actively markets to children — including children



C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

as young as thirteen on the platform's face and knowingly younger in practice. Complaint ¶¶ 56–60. When a company designs its product for child users and then seeks to enforce a buried legal disclaimer against those children's estates, the question of conspicuousness must account for the actual sophistication of the intended user base. A disclosure adequate to put an adult on notice may be wholly inadequate to put a child on notice. Discord cannot simultaneously market to children and hold them to adults' standards of inquiry notice.

*Unambiguous manifestation of assent.* The Ninth Circuit's framework requires not merely that some action occur, but that the action "unambiguously manifest" assent to the specific terms. *Berman*, 30 F.4th at 856. Ambiguity about what action constitutes "registering," and therefore triggers the assent clause, defeats this requirement entirely. Discord points to zero action by Jay that demonstrates he unambiguously manifested his assent to be bound by the TOS. In fact, Discord shows the opposite. Exhibit A and B show Discord's prompts asking users to type in their email. Below this it states that "By registering you agree to Discords Terms of Service." But there is nothing that indicates what registration actually is. Typing in the email address? Using the product? Verifying their email address?

In its motion, Discord self-servingly refers to the next prompt – where a user is instructed to type their email address, username, and password – as its "registration page." However, there is no clear indication that any particular step constitutes the moment of contractual commitment. This is precisely the kind of design that courts have found insufficient. *See Nguyen*, 763 F.3d at 1179 (rejecting sign-in wrap agreement where there was "no clickwrap agreement" and no "prominent" disclosure); *Berman*, 30 F.4th at 857 (rejecting agreement where user did not understand what action purportedly manifested assent). The rare user who actually notices the tiny language about the Terms of Service, could not know at what point they've triggered the contract by "registering."

Discord's own hedged language in its motion underscores the problem. Discord concedes it cannot confirm which registration flow Jay used, which means it cannot confirm which disclosure he encountered, which means it cannot confirm what action was required of him to "register," which means it cannot confirm what action would have constituted his assent. Each of these concessions is



C.A.GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

independently fatal to the formation argument. Together, they demonstrate that Discord has produced evidence not of a contract, but of a possibility of a contract — and a possibility is not enough to send this case, and this family, out of court.

### 2. Even if Jay Assented, the Agreement has been Disaffirmed.

Even if the court were to find mutual assent, the entire agreement has been disaffirmed pursuant to RCW 26.28.030, which renders any alleged contract between Discord and Jay void.[1]

Because of the patent injustice of enforcing contracts allegedly entered into by children, Washington has long recognized the right of the child to disaffirm the agreement "within a reasonable time after he or she attains his or her majority." RCW 26.28.030; Cal. Family Code §6700 (same); *accord Coughenour v. Del Taco, LLC,* 57 Cal.App.5th 740, 271 Cal.Rptr.3d 602 (2020). "No specific language is required to communicate an intent to disaffirm." *Berg v. Traylor,* 148 Cal.App.4th 809, 820, 56 Cal.Rptr.3d 140 (2007). Any "act or declaration disclosing an unequivocal intent to repudiate its binding force and effect" is sufficient to disaffirm the so-called agreement. *Id; accord I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1000 (N.D. Cal. 2012); T.K. v. Adobe Sys. Inc.*, No. 17-CV-04595, 2018 WL 1812200, at *4 (N.D. Cal. Apr. 17, 2018); *Doe v. Epic Games, Inc.*, No. 19-CV-03629, 2020 WL 376573, at *4 (N.D. Cal. Jan. 23, 2020).

Any contracts between Jay and Discord were unequivocally disaffirmed at three separate moments: 1) Jay's death (at age 13), 2) the filing of this lawsuit[2], and 3) in the attached declaration by Colby Taylor expressly disaffirming any contracts between Jay and Discord. **See Colby Taylor Declaration Exhibit A.**

In *G.G. v. Valve Corp,*, the minor Plaintiffs verbally disaffirmed the contract but continued to use the Defendant's content and services on their platform and therefore failed to disaffirm in practice.

---

[1] *See e.g.* "The first consideration of the law, and its policy is to protect the infant against improvidence and folly, because his mind and judgment are immature." *Snodderly v. Brotherton,* 173 Wn. 86, 90, 21 P.2d 1036 (1933); *Lubin v. Cowell,* 25 Wn.2d 171, 185, 170 P.2d 301 (1946) (cited by *Wise v. Truck Ins. Exch.,* 11 Wn. App. 405, 523 P.2d 431 (1974)).

[2] The filing of a lawsuit is sufficient to disaffirm a minor's contract. *Coughenour v. Del Taco, LLC* (2020) 57 Cal. App. 5th 748 (citing *Celli v. Sports Car Club of America, Inc.*, 29 Cal. App. 3d 511 (1972)); see also *Lopez v. Kmart Corporation*, 2015 WL 2062606 (N.D. Cal. May 4, 2015) (holding that a minor who disaffirmed an arbitration clause in his employment contract via the filing of a class action complaint eighteen months after he signed the contract, and one month after his eighteenth birthday, did so within a reasonable time).

Page 9 — PLAINTIFF'S
OPPOSITION TO MOTION
TO COMPEL ARBITRATION



799 F. App'x 557, 558 fn. 2 (9th Cir. 2020). In contrast, following Jay's death, Jay clearly never used the Discord platform again thereby disaffirming in practice.

Discord acknowledges that it is for the *Court* to determine whether an arbitration agreement was disaffirmed. Mot. at 11. But even though the evidence of disaffirmance is unambiguous here, rendering any arbitration agreement void, Discord nonetheless claims the Court still must send the matter to arbitration because the Terms of Use contained a "delegation clause" which renders a minor's disaffirmance an enforceability defense for an arbitrator, not the Court, to decide. In other words, a "delegation clause" sweeps over "all arbitrability disputes." *See* Discord Mot. at 11 (citing *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 883–84 (6th Cir. 2021)). But even if there was a valid delegation clause—and Discord has not and cannot identify one—its argument misses the threshold question here. Disaffirmance does not merely render an arbitration clause unenforceable — it voids the entire contract *ab initio*.

Indeed, a California appeals court recently rejected the very argument Discord is making here in a case, like this one, involving an arbitration "agreement" between a tech company and a minor who disaffirmed the agreement pursuant to Cal. Fam. Code § 6710 , which is California's analog to RCW 26.28.030. *J.R. v. Electronic Arts Inc.*, 98 Cal. App. 5th 1107, 317 Cal. Rptr. 3d 367 (2024). The court agreed with the minor plaintiff that his disaffirmance included disaffirmance of ***any agreement*** he had entered into with the tech company defendant—including any "delegation agreement" and any separate arbitration agreement. 98 Cal. App. 5th at 1115. *Accord Melendez v. Ethical Culture Fieldston Sch.,* 789 F. Supp. 3d 316 (S.D.N.Y. 2025) (citing *StockX*, 19 F.4th at 888 (Moore, J., dissenting)) (stating a minor who has disaffirmed a contract "is not subject to the contract's [arbitration] provision, for there is no valid provision to be severed from the voided contract."). Any other rule, as Justice Moore noted in his dissent in *StockX* (relied on in *Melendez*) "would improperly elevate [agreements to arbitrate] over other forms of contract, permitting minors to enter binding contracts for arbitration but essentially nothing else." *Id.* The FAA does not permit courts to treat arbitration clauses as categorically immune from defenses — including disaffirmance — that go to the existence of the entire contract. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395,

C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

403–04 (1967) (indicating that a challenge to the contract as a whole, not just the arbitration clause, is for the court to decide).

Jay Taylor, through his Estate—which stands in the minor's shoes—has exercised his statutory right to disaffirm "the entirety of any [user agreement], contract or agreement that was accepted through [his] [Discord] account." *J.R. v. Electronic Arts,* at 1116. This Court thus retains jurisdiction over this dispute and Discord's effort to force this dispute into the secrecy of the arbitration system should be denied.

### 3. The Terms of Use Are Unenforceable because Discord Breached Them.

Even if Jay had manifested express assent, that assent was fraudulently induced because Discord failed to disclose critical safety information that only Discord knew. Moreover, Discord materially breached the contract which prevents them from enforcing its terms. Discord's Terms of Service represented to users that the platform maintained a "zero-tolerance policy" for content endangering or sexualizing children, and that Discord is "built on Safety." Complaint ¶¶ 68–70. These representations were false. As set forth throughout the complaint, Discord knowingly birthed and grew a murderous criminal enterprise. Discord knew, no later than mid-2021, that the 764 network was operating on its platform with impunity — coercing children into producing child sexual abuse material, inflicting self-harm, and livestreaming suicide attempts. Complaint ¶¶ 27–29, 116. Between June and August 2021 alone, Discord itself filed 58 Cyber Tipline reports about 764 content on its platform. Complaint ¶ 28. Yet Discord took no meaningful action to dismantle 764, reduce its access to the platform, or warn users of the danger. Complaint ¶¶ 89–91. Discord targeted children and made clear to 764 predators that the platform was a fertile playground to harvest victims. Discord profited from a hands-off moderation business model, that allowed for self-moderation in the Discord channels that were the most abusive.

A party who has materially breached a contract cannot compel the other party to perform — including performance of an arbitration clause. *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121–22 (9th Cir. 2008) (holding that material breach may excuse the non-breaching party from performing contractual obligations). Where the very terms Discord invokes to claim a right to



C.A.GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

arbitration were themselves built on misrepresentations about the safety of the platform, it would be inequitable to enforce those terms against the estate of a child killed through exactly the dangers Discord concealed.

Additionally, the fraudulent inducement argument is proper for this Court, not an arbitrator. Under *Prima Paint*, a claim of fraudulent inducement directed at the contract as a whole — not merely the arbitration clause — is for the court to resolve. 388 U.S. at 403–04. Plaintiffs' fraudulent inducement claim here goes to the entirety of the Terms of Service, including the representations about safety that induced Jay's participation on the platform in the first place. That is a question of formation and enforceability for this Court.

The interests of justice are perverted beyond recognition if Discord can engage in such extreme and pervasive breaches of the standard of care to its consumers and still compel arbitration against a dead child.

### B. This Court Decides Arbitrability.

Discord's effort to strip this Court of jurisdiction over arbitrability fails twice over: it cannot identify a delegation clause, and any purported delegation is procedurally unconscionable.

#### 1. Discord Fails to Show Delegation.

As discussed above, if an agreement ever existed between Discord and Jay, it has been disaffirmed in its entirety, including any "delegation clause." But even if there were no disaffirmance, Discord fails to meet the requirement of demonstrating "clear and unmistakable" evidence that the parties agreed to delegate the issue of arbitrability to an arbitrator. *Chiron Corp. v. Ortho Diagnostics Sys.,* 207 F.3d 1126, 1130 (9th Cir. 2000) (concluding that the FAA mandates "that district court *shall* direct the parties to proceed to arbitration on issues to which an arbitration has been signed). Neither of the two TOS produced by Discord contains a delegation clause. Instead, the TOS states that arbitration "shall be . . . governed by the rules of JAMS that are *in effect at the time the arbitration is initiated*." (emphasis added) Motion at 5. Jay had no way of knowing at the time Discord claims he registered for an account what rules might be in effect at JAMS at some unknown future date, nor

C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

whether those rules would contain a delegation clause. The JAMS rules in effect at some future date could not logically be accessible to Jay when Discord claims he assented.

The "clear and unmistakable" standard for delegation is a demanding one, applied with particular care when the party resisting arbitration could not reasonably have understood that clicking through a sign-up page incorporated a set of arbitral rules that would strip courts of jurisdiction over all threshold questions. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995). A ten-year-old child clicking through a Discord registration page is not a sophisticated commercial party who can be charged with knowledge of the contents of the JAMS Comprehensive Arbitration Rules. To hold otherwise would be to find "clear and unmistakable" evidence of delegation in the most opaque of circumstances — which is precisely the opposite of what the standard requires.

**2. Discord's Alleged Delegation of Arbitrability is Procedurally Unconscionable.**

In Washington either procedural or substantive unconscionability is sufficient to void an arbitration agreement. *Gandee v. LDL Freedom Enters., Inc.,* 176 Wn.2d 598, 293 P.3d 1197, 199 (Wash. 2013). Procedural unconscionability is "the lack of meaningful choice, considering all the circumstances surrounding the transaction including '[t]he manner in which the contract was entered,' whether each party had 'a reasonable opportunity to understand the terms of the contract,' and whether 'the important terms [were] hidden in a maze of fine print.'" *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 103 P.3d 753, 759 (Wash. 2004) (quoting *Nelson v. McGoldrick*, 127 Wn.2d 124, 896 P.2d 1258, 1262 (Wash. 1995)). "A term is substantively unconscionable where it is 'one-sided or overly harsh,' '[s]hocking to the conscience,' 'monstrously harsh,' or 'exceedingly calloused.'" *Gandee*, 293 P.3d at 1199 (quoting *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 103 P.3d 773, 781 (Wash. 2004)). Difficulty in finding relevant arbitration rules within a TOS are grounds for a claim of procedural unconscionability. *See G.G. v. Valve Corp.,* 799 F. App'x 557, 558 fn. 2 (9th Cir. 2020) ("[t]he plaintiffs' argument that it is difficult to find the relevant AAA rules may support a claim of procedural unconscionability [per] *Zuver v. Airtouch Commc'ns, Inc.,* 153 Wash. 2d 293, 103 P.3d 753, 760 (2004).").

C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Discord's efforts to enforce a delegation provision where there is none is procedurally unconscionable. Its evidence of delegation is limited to the single statement in its TOS that "arbitration 'shall be. . .governed by the rules of JAMS that are in effect at the time the arbitration is initiated.'" [ellipses in original]. Motion at 5.  Discord provides no evidence that the JAMS rules were annexed, quoted, or hyperlinked. It provides no URL to the JAMS rules and no email, phone number or contact for JAMS. *See Carbajal v. Nintendo of America Inc.,* No. 2:2020cv01694-TSZ, at *7 (April 29, 2021) (holding that failure to attach AAA rules was not procedurally unconscionable so long as the contract "provided the website for accessing the AAA rules and contact information.").

In short, Discord's effort to have the issue of arbitrability removed from this Court should be rejected.  That matter is properly within the purview of this Court.[3]

**C.  This Court Retains Jurisdiction and This Case Must Proceed.**

**1.  Washington and California Forbid Enforcement of Arbitration Clauses for Wrongful Death Claims.**

Plaintiffs Colby Taylor, individually and as Personal Representative of his son Jay's Estate, and Leslie Taylor, individually, asserted wrongful death and survival claims.  *See* RCW 4.20.020, 4.20.046, 4.20.060, 4.24.010.  Under settled Washington law, even if Jay had been an adult, Discord's arbitration clause could not be enforced against the Taylors' wrongful death claims, which were "asserted on behalf of the heirs [of the Estate], neither of whom signed [Discord's] arbitration agreement." *Woodall v. Avalon Care Ctr.-Federal Way, LLC*, 155 Wn. App. 919, 926, 231 P.3d 1252, 1255 (2010).

As the Washington court of appeals explained in *Woodall*, "Avalon does not identify any contract or agency principles that would bind the heirs to arbitrate based on the agreement between

---

[3] Voidance is still necessary under California law where courts require both procedural and substantive unconscionability to void a term. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114, 99 Cal. Rptr. 2d 745, 6 P.3d 669 (2000); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006). Courts apply a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal.4th at 114.   The terms were imposed on Jay and he had no opportunity to negotiate for the very reasons underpinning the procedural unconscionability argument – he could not know future JAMs rules about which he'd be expected to negotiate.



C.A.GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Avalon and [the decedent]. Likewise, we are unaware of any such principles that would apply to this case." *Id.*, 155 Wn. App. at 927, 231 P.3d at 1256. California law is the same. *Heardon v. Windsor Redding Care Center,* LLC, 103 Cal. App. 5th 1010, 1017 (2024) (holding that decedent's sons were not bound by arbitration agreement because they "did not sign, and are not parties to, the arbitration agreement") (citing *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC*, 150 Cal. App. 4th 469, 474, (2007) (holding that a wrongful death action by patient's husband and sons was not subject to arbitration where the husband did not sign the arbitration agreements in his personal capacity and the sons did not sign them at all)).[4] *Accord Ruiz v. Podolsky*, 50 Cal. 4th 838, 114 Cal. Rptr. 3d 263, 237 P.3d 584, 591 n.2 (Cal. 2010); *Daniels v. Sunrise Senior Living, Inc.*, 212 Cal. App. 4th 674, 151 Cal. Rptr. 3d 273, 277-78 (Ct. App. 2013).

Discord conflates survival claims — brought by the personal representative on behalf of the decedent's estate to recover for harms the decedent suffered before death — with wrongful death claims, which are separate causes of action inuring to the benefit of the surviving family members in their own right. *See* RCW 4.20.046 (survival statute); RCW 4.24.010 (wrongful death statute). This distinction is legally significant. Survival claims are derivative: they belong to the decedent and pass to the estate. Wrongful death claims are independent: they arise directly in the survivors and never belonged to the decedent. *Woodall v. Avalon Care Ctr.-Federal Way, LLC*, 155 Wn. App. 919, 931 (2010) (noting the derivative nature of survival claims and the independent nature of wrongful death claims). Under no theory can Discord bind Colby and Leslie Taylor to arbitrate their independent wrongful death claims, because Colby and Leslie never signed anything.

---

[4] Discord characterizes the *Heardon* decision incorrectly. *Heardon* does **not** hold that an arbitration clause "binds [decedent's] estate and heirs." *See* Def. Mem. at 10. To the contrary. Plaintiffs accurately cite and quote to the *Heardon* decision, above. *Heardon* involved the claims of survivors of four **adults** who died at a nursing home. The court refused to enforce any of the four arbitration agreements against the Plaintiffs—decedents' surviving spouses, siblings and children, even though each of the agreements had been signed by one of the surviving family members/plaintiffs at the time the decedents entered the home. 103 Cal. App.5th at 1021. The court noted the family-member signatories had no "authority to sign the arbitration agreements on behalf of their siblings or children," and the "family signatories"—those who actually signed the agreements—were not bound because "they did not sign the agreements in their personal capacities." *Id.*

C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

*Thomas v. Westlake*, 204 Cal. App. 4th 605, 613 (2012), on which Discord relies, is inapposite. The case involved contract claims of a deceased investor, not wrongful death and survival claims against the tortfeasor alleged to have proximately caused the wrongful death. The California cases cited above are directly on point and hold that the wrongful death claims of the heirs, who did not sign any agreement that the decedent may have signed, are not bound by that agreement.

Moreover, it was undisputed in *Thomas* that valid contracts containing arbitration agreements existed. That is not the case here, where the agreement's validity is in question. Whether Jay — a child who signed nothing, saw no written contract, and encountered at most a promotional signup page whose legal text Discord admits it cannot specifically identify — ever formed a valid agreement is the entire question before this Court. *Thomas* assumes the answer; it does not provide it.

But even accepting that principle for survival claims alone, it has no application to the Taylors' independent wrongful death claims. And the Court should be cautious about accepting the "stepping into the decedent's position" doctrine even for the survival claims, because it was developed in contexts — primarily nursing home and elder care cases — where an adult patient of full legal capacity signed an arbitration agreement with full understanding of its terms. The principle does not translate cleanly to a case where the purported signatory was a child who did not have the legal capacity nor the actual understanding to form a binding contract in the first place. A doctrine that holds heirs bound by their decedent's agreements presupposes that those agreements were valid. As demonstrated throughout this brief, that predicate is not established here.

### 2. If Any Claims are Forced into Arbitration, the Taylors' Individual Claims Should Not Be Stayed.

This Court has the discretion to proceed with the Taylor's individual claims which Discord concedes are not subject to arbitration. *Forrest v. Spizzirri* ("[w]e acknowledge that where some, but not all, parties' claims are subject to arbitration, courts have discretion to stay or proceed with litigation on non-arbitrable claims.") No. 22-16051 (9th Cir. 2023). The 9th Circuit has a "preference for proceeding with non-arbitrable claims when feasible." *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.* 46 F. App'x 412, 415 (9th Cir. 2002). *See also, Smiles Servs. LLC v. Frye,* 2023 WL



C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

6066683, at *2 (W.D. Wash. Sept. 18, 2023) (citing *Dean Witter v. Byrd,* 470 U.S. 213, 2225 (1985) (J. White, concurring, stating that "the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course")).

A stay of non-arbitrable claims is appropriate only when those claims are "inherently inseparable from" the arbitrable claims such that proceeding in parallel would create a risk of inconsistent rulings. *Smiles Servs. LLC v. Frye*, 2023 WL 6066683, at *2 (W.D. Wash. Sept. 18, 2023). The competing interests of the parties must be weighed. *CMAX, Inc. v. Hall*, 300 F.2d 265 (1962).

Colby and Leslie Taylor's wrongful death claims are not merely "intertwined" with the survival claims — they are legally distinct. The Taylors bring their individual claims for the loss of their son's love, companionship, and society, and for the Estate's loss of net accumulation (future earnings minus consumption). Complaint ¶¶ 131–135, 181–184. These claims require proof of facts — the nature of the parent-child relationship, the Taylors' own damages, the economic loss to the Estate of Jay's premature death — that will not be resolved in any arbitration proceeding. Staying those claims (pending a process that could take years, is not public, and over which the Taylors have no control as non-parties) would hold a grieving mother and father in legal limbo indefinitely, unable to pursue justice in the only forum where they have the right to be heard.

Discord argues that the non-arbitrable and arbitrable claims "involve the same questions of fact and law." Motion at 14. This overstates the overlap considerably. Whether Discord was negligent in maintaining its platform — the core liability question — can be litigated in this Court on the Taylors' own claims without waiting for an arbitrator. Allowing parallel proceedings would not create conflicting outcomes; to the contrary, it would allow this Court to address the merits of the Taylors' independent claims in the public forum to which they are entitled. The alternative would grant Discord a windfall it has not earned: the ability to use a contract it signed with a dead child to silence his parents. The cases Discord relies upon are distinct. In *Maguire,* for instance, where some employment claims were subject to arbitration and others were not, the claims were all between the same entities whereas the Taylors in their individual capacity have distinct legal rights and obligations

C.A.GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

from their role being co-Plaintiffs as Personal Representatives from the Estate of Jay Taylor, a distinct legal entity. *Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.* 652 F. Supp. 3d 1313, 1328 (W.D. Wash. Jan. 24, 2023).

The balance of hardships weighs decisively against a stay of the Taylors' individual claims. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (discussing that courts must weigh the harm to the moving party against the harm to the non-moving party in evaluating stay requests). A stay would create a significant and unjustified hardship for The Taylors who have suffered an irreplaceable loss. Compl. ¶¶131-35. Every moment of delay in these proceedings compounds their harms and delays the satisfaction of their rights to relief. Discord, a well-resourced corporation, faces no comparable prejudice from litigating the never-arbitrable claims of the Estate and the Taylors in this Court.

### 3. The End Forced Arbitration Act Preempts Discord's Contract Terms.

#### i. The Claims Constitute a Sexual Assault Dispute.

The End Forced Arbitration Act renders arbitration agreements invalid and enforceable at the election of the plaintiff in cases involving sexual assault or harassment disputes as defined by the statute. 9 U.S.C. §402(a). Section 402(a) expressly applies to "any case. . . which relates to the sexual assault dispute or the sexual harassment dispute." The phrase "relates to" is broad and has been interpreted expansively in federal jurisprudence to mean having "a connection with," "bearing upon," or "referring to." See *Morales v. TWA,* 504 U.S. 374, 383 (1992).

Courts construing the EFAA have recognized this "expansive effect." *Doe v. Roblox Corp.*, No. 25-CIV-01193, Cal. Super. Ct. San Mateo Cnty. (Nov. 13, 2025) (citing to *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp.3d 498, 531 (S.D.N.Y. 2024)). Claims against online products that "'relate to' the alleged sexual assault dispute" are covered by the EFAA when the connection between the dispute and the company's failures are "neither remote nor incidental." *See Doe v. Roblox* (holding that arbitration was denied under the EFAA against direct messaging platform where minor plaintiff was contacted by a predator and directed to produce child sexual abuse material.)

The Complaint properly alleges a sexual assault dispute within the meaning of EFAA. 9 U.S.C. §§401-402. Discord birthed and grew a child sexual exploitation cult, 764, which educated

Ⓖ
C.A.GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

teens about how to lure and coerce kids on Discord to send nude images, livestream sex performances, and mutilate themselves including inserting knives into their genitals. Complaint ¶20. The abuse of one child, L.S. was so horrific her 764 abuser, Javan Shahriar demanded she kill herself for his sexual gratification – or find somebody else who would. Complaint ¶¶ 92-115. That somebody was Jay. Complaint ¶ 112. As Jay was obeying the suicide instructions, Shahriar demanded Jay strip naked. Complaint ¶ 114 "Take your clothes off, it's hotter." *Id.* On the livestream watching Jay die, Shahriar laughs and gets an erection. *Id.*

But for Discord's misconduct, the assaultive conduct would not have occurred. The connection between the sexually assaultive and murderous conduct by 764 and Discord's failures are neither remote nor incidental. The claims arise directly from the same factual nucleus – the use of Discord's platform that facilitated Shahriar's exploitation of L.S. and Jay.

### ii. The EFAA Applies because the "Dispute Arose" after the Act Passed.

The EFAA's enactment date is March 3, 2022. Discord may argue that the Act does not apply because Jay died six weeks before the Act's enactment. However, the Act applies to "any *dispute* or claim that *arises* or accrues" after the Act's enactment. (emphasis added). Here, while some claims accrued earlier, a *dispute* between the parties did not *arise* until after the date of enactment.

Congress would not have included both phrases – "claim accrued" and "dispute arose" – in the same sentence had it intended for both to have the same meaning. "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)); *Sprietsma v. Mercury Marine*, 537 U.S. 51, 63 (2003) (interpreting the word "law" broadly could render the word "regulation" superfluous in preemption clause applicable to a state "law or regulation")); *see also Bailey v. United States*, 516 U.S. 137, 146 (1995) ("We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning."); *Id.* (rejecting interpretation that would have made "uses" and "carries" redundant in statute penalizing using or carrying a firearm in commission of offense).

C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

When a dispute "arises" is different than when a claim "accrues." If an insured driver's car is stolen and they file a claim for theft with their insurance carrier, the insurance *claim* accrues on the day of the theft, but the *dispute* does not arise until the insurance carrier notifies the driver that it is declining to cover the theft. *See e.g., Ammons v. Sentry Ins. Co.*, 431 F. Supp. 3d 1280, 1284-8 (D.N.M. 2019) ("This case arises from the theft of Plaintiffs' vehicle, which was stolen from an auto repair shop on November 22, 2018 . . . The parties dispute whether Plaintiffs are entitled to recover punitive damages under their UM property damage coverage for the actions of the unknown thief."). Similarly, a contract *claim* accrues when the contract is violated; a *dispute* about the violation does not arise until the parties conclude that they disagree about the resolution. *See e.g., Canopy Corp. v. Symantec Corp.,* 395 F. Supp. 2d 1103, 1107 (D. Utah 2005) ("The parties' main dispute with respect to the breach of contract claim involves the proper interpretation of the Agreement's term provision."). *See also Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133, 140 (2d Cir. 2000) ("A circumstance (such as a dispute) "arises" when it "spring[s] up, originate[s], . . . [or] come[s] into being.").

In this matter, even if claims accrued in January 2022, a "dispute. . . filed under Federal law" could not possibly have arisen prior to Plaintiffs' very ability to discover their claims, *i.e.,* after Javan's 2025 arrest which revealed the extent of Discord's culpability. A traditional analysis would date the dispute arose on February 19, 2026, when the Taylors filed their lawsuit in court or even on March 11, 2026, when Discord removed the matter to Federal court. In any event, the "dispute arose" well after the March 3, 2022, enactment of the Act.

## V. CONCLUSION

For these reasons, the Taylors respectfully request that this court deny Discord's motion to compel arbitration against Jay's Estate and instead advance this important litigation forward.

**DATED** this 22nd day of May, 2026



C.A.GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

CORRIE YACKULIC LAW FIRM, PLLC

*/s/ Corrie J. Yackulic*
Corrie J. Yackulic, WSBA #16063
101 Yesler Way, Suite 600
Seattle, WA 98104
Tel. (206) 787-1915
corrie@cjylaw.com


 *Attorneys for Plaintiff*

C.A. GOLDBERG, PLLC

*/s/Carrie Goldberg*
Carrie Goldberg (*pro hac vice*)
*/s/ Naomi Leeds*
Naomi Leeds (*pro hac vice*)
16 Court Street, 33rd Floor
Brooklyn, New York 11241
Tel. (646) 666-8908
carrie@cagoldberglaw.com
naomi@cagoldberglaw.com

*I certify that this memorandum contains 7,412 words in compliance with Local Civil Rule 7(e)(3).*

Page 21 — PLAINTIFF'S
OPPOSITION TO MOTION
TO COMPEL ARBITRATION