UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COLBY TAYLOR, individually and as a personal representative of the ESTATE OF JAY TAYLOR, a deceased individual; LESLIE TAYLOR; individually and as a personal representative of the ESTATE OF JAY TAYLOR, a deceased individual<br><br>Plaintiffs,<br><br>vs.<br><br>DISCORD INC., a Delaware company,<br><br>Defendant(s). | No. 3:26-cv-05245-BHS<br><br><br>**PLAINTIFFS' OPPOSITION TO DISCORD'S MOTION TO DISMISS**<br><br><br>ORAL ARGUMENT REQUESTED |

Page i — PLAINTIFF'S RESPONSE
IN OPPOSITION TO MOTION TO
DISMISS



# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................... 1

II. FACTUAL BACKGROUND ............................................................................................ 2

III. LEGAL STANDARD ..................................................................................................... 5

IV. ARGUMENT .................................................................................................................. 5

A. The Taylors' Claims are Timely. ..................................................................................... 5

    1. The Discovery Rule Tolls the Limitations Period. ..................................................... 5

    2. Timeliness of the Trafficking Claim Is Independently Calculated. .......................... 6

B. Section 230 Does Not Bar Plaintiffs' Claims. ................................................................. 6

    1. The Taylors' Claims Do Not Treat Discord as a Publisher or Speaker. .................... 6

    2. The Claims are Not Content Based. ........................................................................... 10

    3. Section 230 Does Not Bar the Trafficking Claim. ..................................................... 11

C. The First Amendment Does Not Bar the Taylors' Claims. .............................................. 12

D. The Taylors Properly Pleaded All State Law Claims. ..................................................... 12

    1. Discord Had Actual, Specific Notice of 764 for Which It Should Have Warned. ..... 12

    2. Discord Proximately Caused Jay's Death. ................................................................. 13

    3. The Taylors Properly Pleaded Outrage. ..................................................................... 15

    4. Discord Is a Product Subject to Washington Product Liability Law. ......................... 17

    5. Discord Owed and Breached Its Duty of Care. .......................................................... 19

    6. The Taylors Properly Pleaded Trafficking. ................................................................ 21

V. CONCLUSION ................................................................................................................. 22



C.A.GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.B. v. Salesforce, Inc.*, 123 F.4th 788 (5th Cir. 2024) ........................................................... 11

*A.M. v. Omegle,* No. 3:21-cv-01674-MO, 2023 WL 1470269 (D. Or. 2022) ........................... 8, 9, 11

*Anderson v. TikTok, Inc.*, No. 22-3061 (3d Cir. 2024) ................................................................ 12

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ....................................................................................... 5

*Barnes v. Yahoo! Inc.,* 570 F.3d 1096 (9th Cir. 2009) ................................................................ 6, 7

*Beckman v. Match.com, LLC,* 668 F. App'x 759 (9th Cir. 2016) ................................................. 9

*Beltran-Serrano v. City of Tacoma,* 193 Wn.2d 537 (2019) ...................................................... 19

*Bernethy v. Walt Failor's, Inc.,* 97 Wn.2d 929 (1982) ............................................................... 19

*Calise v. Meta Platforms, Inc.,* 103 F.4th 732 (9th Cir. 2024) ................................................... 7

*Campbell v. ITE Imperial Corp.,* 107 Wn.2d 807, 733 P.2d 969 (1987) ................................... 14

*Centurion Props. III v. Chi. Title Ins.,* 186 Wn.2d 58 (2016) ................................................... 19

*Clark v. Amica Mut. Ins. Co.,* 2013 WL 3148262 (E.D. Wash. 2013) ...................................... 17

*Commonwealth v. Meta Platforms, Inc.,* 497 Mass. 384 (2026) ................................................ 10

*Dean v. Uber,* No. 3:23-cv-06708 (D. Ariz.  2026) ................................................................... 10

*Doe 1 v. Twitter, Inc.,* 148 F.4th 635 (9th Cir. 2025) ................................................................. 6, 9

*Doe v. Discord, Inc.,* 2026 WL 1067574 (N.D. Ohio 2026) ...................................................... 9, 12

*Doe v. Facebook, Inc.,* 142 S. Ct. 1087 (2022) .......................................................................... 9

*Doe v. Grindr Inc.,* 128 F.4th 1148 (9th Cir. 2025) ................................................................... 9, 12, 17

*Doe v. Internet Brands, Inc.,* 824 F.3d 846 (9th Cir. 2016) ................................................ *passim*

*Doe v. Mindgeek USA Inc.,* 558 F. Supp. 3d 828 (C.D. Cal. 2021) ........................................... 9

*Doe v. SexSearch.com*, 551 F.3d 412 (6th Cir. 2008) ................................................................ 18, 19

*Est. of Bride by & through Bride v. Yolo Techs., Inc.,* 112 F.4th 1168 (9th Cir. 2024) ............... 7, 17



C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008). ........................................................................................................................... 7

*Gonzalez v. Google, LLC*, 2 F.4th 871 (9th Cir. 2021) .......................................................... 7

*Gonzalez v. Moran,* 724 F. Supp. 3d 1203 (E.D. Wash. 2024) ............................................ 6

*Grigsby v. Valve Corp.,* 2013 WL 12310666 (W.D. Wash. 2013) ...................................... 17

*HomeAway.com, Inc. v. City of Santa Monica,* 918 F.3d 676 (9th Cir. 2018) ................. 7, 9

*In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation,* 702 F. Supp. 3d 809 (N.D. Cal. 2023)......................................................................... 1, 8, 10, 11, 18

*In re: Uber Tech., Inc., Passenger Sexual Assault Litig.,* No. 3:23-md-03084 (N.D. Cal.) ........ 10, 11

*Lemmon v. Snap, Inc.,* 995 F.3d 1085 (9th Cir. 2021) ..................................................... 1, 8, 9

*M.L. v. Craigslist Inc.,* 2020 WL 6434845 (W.D. Wash. 2020)......................................... 20

*Mancini v. City of Tacoma,* 196 Wn.2d 864, 479 P.3d 656 (2021) .................................... 20

*Maltman v. Sauer,* 84 Wn.2d 975, 530 P.2d 254 (1975) .................................................... 14

*Malware Bytes, Inc. v. Enigma Software Group USA,* 141 S. Ct. 13 (2020) (Thomas, J., statement respecting denial of certiorari) ............................................................................ 10

*Mensing v. Uber,* No. 3:23-cv-06708 (W.D.N.C. 2026) .................................................... 10

*New Mexico ex rel. Torrez v. Meta Platforms, Inc.,* No. 23-cv-01115, 2024 WL 413609 (D.N.M. Feb. 5, 2024) .......................................................................................................... 10

*Quinteros v. InnoGames*, 2022 WL 898560 (W.D. Wash. 2022), aff'd, 2024 WL 132241 (9th Cir. 2024) .............................................................................................................. 17, 18

*Zeran v. America Online, Inc.,* 129 F.3d 327 (4th Cir. 1997)............................................. 6

**State Cases**

*Adgar v. Dinsmore,* 26 Wn. App. 2d 866 (2023)............................................................ 14, 15

*Albertson v. State,* 191 Wn. App. 284 (2015)..................................................................... 14

*Baughn v. Honda Motor Co.,* 107 Wn.2d 127 (1986) .................................................... 18, 19

*Grimsby v. Samson,* 85 Wn.2d 52 (1975) ........................................................................... 16

*K.G.M. v. Meta, et al.,* No. 23SMCV03371 (Cal. Super. Ct.) ...................................... 11, 12



C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

*Lund v. Caple,* 100 Wn.2d 739 (1984)..................................................................... 17

*Neville v. Snap,* No. 22STCV333500 (Super. Ct. Cal., L.A., Jan. 2, 2024) ........................ 8, 9, 11, 18

*Nunley v. Chelan-Douglas Health Dist.,* 32 Wn. App. 2d 700 (Wash. Ct. App. 2024) .................... 20

*Robb v. City of Seattle,* 176 Wn.2d 427 (2013) ........................................................... 21

*Schuck v. Beck,* 19 Wn. App. 2d 465, 497 P.3d 395 (2021) ................................................ 18

*Scott v. Amazon.com, Inc.,* 583 P.3d 1155 (Wash. 2026) .................................................. 14

*Smith v. TikTok Inc.,* No. 22STCV21355, slip op. (Cal. Super. Ct. Nov. 5, 2025) ......................... 10

*Social Media Cases,* JCCP No. 5255 (Cal. Super. Ct., Dec. 30, 2022) ..................................... 10

*State v. McGee,* 26 Wn. App. 2d 849 (2023) .............................................................. 14

*Taylor v. Stevens Cnty.* 111 Wn.2d 159 (1988) .......................................................... 19

*Trujillo v. Nw. Tr. Servs., Inc.,* 183 Wn.2d 820 (2015) .................................................. 15

*Turner v. Washington State DSHS,* 198 Wn.2d 273, 493 P.3d 117 (2021) ................................... 20

*Washburn v. City of Fed. Way,* 178 Wn.2d 732 (2013) ................................................ 13,15, 19

**Statutes and Rules**

47 U.S.C. § 230(c)(1)...................................................................................... 6

47 U.S.C. § 230(e)(5) ................................................................................... 1, 12

RCW 4.16.080 ............................................................................................ 5

RCW 7.72.010(3) ........................................................................................ 17

RCW 7.72.030 ........................................................................................... 17

RCW 7.72.060(3)......................................................................................... 5

RCW 9A.40.100.......................................................................................... 21

RCW 9A.40.100(3)(b) ................................................................................... 22

RCW 9A.40.100(5)....................................................................................... 21

RCW 9A.82.100(7)(b) .................................................................................... 6

**Other Authority**

*Restatement (Second) of Torts § 442* ..................................................................... 14

Page v — PLAINTIFF'S RESPONSE
IN OPPOSITION TO MOTION TO
DISMISS



# I. INTRODUCTION

When 764 took root on Discord's servers and began torturing children at scale, Discord stayed committed to its woefully inadequate approach to safety. While a global child exploitation conspiracy grew on Discord, and only on Discord, Discord elected to keep these servers ungoverned. In January 2022, Jay Taylor, a thirteen-year-old trans boy was on Discord looking for a pen pal who shared his love of crocheting. Within hours, he was targeted by 764 members who determined he should die. His last moments were spent hanged from a chain-link fence outside a grocery store—his body writhing in the middle of the night while the Discord cult of pedophiles watched it on livestream and boasted about their erections. Jay Taylor's death was not a random event, but a consequence of Discord's corporate priorities.

Discord expects this Court to dump the Taylors' case before discovery and to do so with prejudice. Its motion rests on four arguments: the statute of limitations bars all claims; Section 230 of the Communications Decency Act immunizes everything; the First Amendment bars whatever Section 230 does not; and improperly pleaded state law claims. Discord's arguments all fail.

The Taylors' claims are timely because critical facts were only discovered in 2025 with Shahriar Javan's arrest. Discord is not entitled to immunity because none of the Taylors' claims treat it as the publisher of information. Section 230 does not immunize product manufacturers for their own defective products and where claims do not treat the defendant as a publisher—a distinction the Ninth Circuit drew precisely in *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), and that the Social Media MDL court confirmed applies to failure-to-warn claims grounded in internally acquired knowledge. *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, 702 F. Supp. 3d 809 (N.D. Cal. 2023). Section 230 also does not protect a platform with regard to known conspiracies like 764. *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016). Nor can Section 230 be interpreted to "impair or limit" trafficking claims. 47 U.S.C. §230(e)(5). The First Amendment does not shield Discord because, again, the claims are unrelated speech. And each state law claim is properly pleaded.

C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Jay's death was the foreseeable result of a series of deliberate design choices and inactions by a company that knew exactly what hell was happening on its platform. This Court should deny the motion to dismiss in its entirety so Jay's heartbroken parents can proceed with this case.

## II. FACTUAL BACKGROUND

Discord is a $15 billion social platform with approximately 150 million monthly active users. Compl. ¶¶ 10, 43. One of the most popular online forums on the planet, it markets itself as the place "where the world talks, hangs out and builds relationships." Compl. ¶¶ 45-46. More than 60% of its users are between the ages of thirteen and twenty-four, and the average user is approximately sixteen years old. Compl. ¶¶ 56–57. Discord exploded in popularity among young users during the pandemic, inviting anyone above the age of 12 to use its platform. Compl. ¶¶ 8, 55. Discord markets directly to children—advertising to school clubs, offering "Student Hubs" for classmates to connect, and promoting itself as a "fun and safe space for teens." Compl. ¶¶ 47, 58. It has no age or identity verification system. Compl. ¶ 9. At all relevant times, adults could send direct messages to minors without restriction. Compl. ¶¶ 52–53.

Discord is structured around "servers"—user-created spaces organized by topic in which users communicate through text, voice, video, livestreaming, and private messaging. Compl. ¶¶ 39–41. The platform is built on interest-based communities rather than verified identity, enabling easy contact between strangers. Compl. ¶¶ 50–52.

Despite its young user base, Discord's trust and safety staffing is a fraction the size of comparable platforms with only 79 employees in 2022 supervising the safety of its 150 million monthly users across the globe. (Contrast with 2,226 at Snap, 2300 at X, 40,000 at Meta and TikTok. Compl.) Compl. ¶ 74. For each trust and safety employee there are 1,898,734 monthly users on Discord.

Discord takes a hands-off approach to oversight of its smaller servers, opting for them to self-regulate; a safety crisis that caused U.S. Congress to subpoena Discord's founder in January 2024 when they became aware that predators lurked in small Discord servers to "groom children

C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

before abducting them, trade child sexual exploitation material. . . and extort minors whom they trick into sending nude images." Compl ¶ 74

In mid-2021, The 764 Network ("764")—a pedophilic, satanic, neo-Nazi child exploitation network later designated by the FBI as a "tier one" terrorist threat—established itself on Discord. Compl. ¶¶ 13, 84. 764 was created on Discord as a coordinated enterprise to exchange child sexual abuse material ("CSAM"), coerce minors into performing heinous acts on camera, and incite violence. Compl. ¶¶ 13, 14. The founder of 764 chose Discord because it is a one-stop shop that concentrates vulnerable communities of children, grants predators unfettered access to their targets, gives predators free range to exploit children with no risk of moderation, detection, or removal, and provides a forum for the mass dissemination of CSAM and livestream acts coerced of violence all on one platform. Compl. ¶¶ 15, 16. Discord did not merely host this activity—it cultivated it by directly facilitating introductions between perpetrators and victims drawn from its large population of vulnerable youth users, including LGBTQ+ youth, like Jay, and those struggling with mental health. Compl. ¶¶ 15–16.

Over time, Discord's 764 servers became more extreme and abusive, a correlation with 764's leadership passing to Shahriar Javan, known as "White Tiger" and the general knowledge by 764 members that they could thrive on Discord without interference or consequence. Compl. ¶¶ 18, 19. Under Javan's rule, the 764 servers developed a playbook for child torture – an efficient process to lure and groom kids, forcing kinds to send nude and sexual photos, engage in heinous acts of pet abuse, mutilate themselves, insert knives and sharp objects into their genitals, recruit other victims, and pressure suicide for the sexual gratification of the members. Compl. ¶¶ 19, 20. The abuse would occur using Discord's streaming function so other Discord members could view and record it; using the recordings as collateral, to extract more horrific injuries. Compl. ¶ 20. 764 members would gain clout within 764 from the acts of torture they coerced. Compl. ¶ 20.

Discord's own Trust and Safety team knew from law enforcement about the 764 conspiracy thriving on its platform and made 58 CyberTipline reports regarding 764 between June and August

C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

2021. Compl. ¶¶ 27–28. Discord thus had direct, contemporaneous notice that a coordinated child exploitation enterprise was operating across its platform.

Despite that knowledge, Discord did not dismantle or contain the network, warn users, require parental consent, increase age requirements, create a protocol with law enforcement to rid itself of 764, or increase its safety team. *See generally* Compl. Instead, 764 expanded across Discord's infrastructure, using its chat, voice, video, and livestreaming tools to coerce children into self-mutilation, sexual exploitation, and acts of cruelty. Compl. ¶¶ 19–20.

One twelve-year-old girl, L.S, was a victim of self-harm and mutilation on the Discord servers by the leader, Javan. Compl. ¶¶ 96–101. Over time, he homed in on his desire for her to kill herself for his sexual gratification. Compl. ¶ 102. When she resisted, he threatened her into finding somebody else who would die for him instead. Compl. ¶ 102.

Jay Taylor, age 13, lived in Gig Harbor, Washington with his family. Compl. ¶ 103. On January 16, 2022, Jay posted on Discord seeking a pen pal, writing: "I had a sudden urge to get a pen pal so here I am!" Compl. ¶ 108. Jay was immediately identified as vulnerable and susceptible to suicide by 764. Compl. ¶¶ 109–110. L.S., acting under Javan's direction and control, drew Jay into communication about suicide and seduced him into entering a suicide pact with her. Compl. ¶¶ 109–110. Under continued manipulation on Discord, he was summoned into a video call titled "live laugh rip jay LMAO" organized by L.S. and members of 764. Compl. ¶ 113.

In the early hours of January 17, 2022, Jay went to a Safeway store in Gig Harbor. Compl. ¶ 114. Javan, who had taken over for L.S., ensured he had the means: "You got a rope?" *Id.* Javan then demanded: "Take your clothes off, it's hotter." *Id.* Jay did not undress. *Id.* But Javan proceeded to instruct Jay to go through with hanging himself. *Id.* Jay obliged while livestreaming for the group. Compl. ¶ 114. Javan got an erection watching the boy's body as it struggled to stay alive. *Id.* Jay's death was recorded and circulated within Discord as recruitment material for 764. Compl. ¶ 107.



C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

### III. LEGAL STANDARD

A complaint survives a motion to dismiss if it alleges facts that, accepted as true and construed in the light most favorable to the plaintiff, state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Moran*, 724 F. Supp. 3d 1203, 1208 n.16 (E.D. Wash. 2024). Plausibility does not require probability—it requires enough factual content to allow the court to draw the reasonable inference that the defendant is liable. *Id.* The standard is met here.

### IV. ARGUMENT

#### A. The Taylors' Claims are Timely.

Discord argues that all claims are barred because the limitations periods began to run in January 2022 when Jay died and law enforcement discovered the abusers used Discord. This argument fails for three independent reasons set forth below.

##### 1. The Discovery Rule Tolls the Limitations Period.

Under Washington law, a cause of action does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence, should discover both the injury and its cause. RCW 7.72.060(3) (product liability); RCW 4.16.080. The discovery rule does not merely toll the period from the date of injury—it tolls it until the plaintiff knew or reasonably should have known the facts necessary to state the claim.

The Taylors' facts underlying this case connecting Jay's death to 764 and 764 to Discord's product emerged from Javan's arrest in June 2025. *See generally* Declaration of Colby Taylor ("Taylor Decl."). Key details about the case were published by the Associated Press investigative journalists on June 18, 2025, and discussed at a press conference in Germany upon Javan's arrest on June 19, 2025. *See* Taylor Decl., Exs. A, B; (for translated version of Taylor Decl., Ex. B, *see* Declaration of Naomi Leeds, Ex. A). Law enforcement's challenges in identifying the culprits responsible for Jay's death are set forth by the Washington Post. *See* Taylor Decl., Ex. C. The Taylors did not even have access to Jay's online accounts until the FBI returned his phone and laptop in 2025. Taylor Decl. ¶ 17.

C.A.GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

**2. Timeliness of the Trafficking Claim Is Independently Calculated.**

Under RCW 9A.82.100(7)(b), a civil action for trafficking may be brought within three years of the act alleged to have caused injury, three years from the time the victim discovered the injury, or—critically—three years after the final disposition of any criminal charges relating to the offense. Javan was arrested on June 18, 2025. Compl. ¶ 128. Should the state trafficking claim be untimely, it should be without prejudice so the Taylors can re-file it upon the imminent final disposition of Javan's criminal trial.

**B. Section 230 Does Not Bar the Taylors' Claims.**

The purpose of Section 230 is to "encourage service providers to self-regulate the dissemination of offensive material over their services" by immunizing them from liability when offensive material slips through their voluntary regulation mechanisms. *Zeran v. America Online, Inc.,* 129 F.3d 327, 331 (4th Cir. 1997). Section 230 does not immunize a platform's decision to dispense with self-regulation altogether and instead to willfully allow extreme violence and child abuse syndicates to stampede. *Doe 1 v. Twitter, Inc.,* 148 F.4th 635 (9th Cir. 2025).

**1. The Taylors's Claims Do Not Treat Discord as a Publisher or Speaker**

Section 230 provides that no provider of an interactive computer service "shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). As applied to state law claims, Section 230 is a three-pronged approach that "only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo! Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009).

To determine whether Section 230 will protect a defendant from liability, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker'" of third-party content. *Barnes,* 570 F.3d at 1102. "Publishing encompasses 'any activity that can be boiled down to deciding whether to exclude material that third

C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

parties seek to post online.'" *Gonzalez v. Google, LLC,* 2 F.4th 871, 892 (9th Cir. 2021) (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157, 1170-71 (9th Cir. 2008)). A defendant is a publisher if it "reviews material submitted for publication, perhaps edits it for style or technical fluency, and then decides whether to publish it." *Barnes,* 570 F.3d at 1102. A recent case clarifies *Barnes* duty-analysis into 2 steps duty analysis: 1) Examine the right from which the duty springs; and 2) Does the duty require the platform to moderate content? If so, Section 230 immunity attaches. If not, it does not. *Calise v. Meta Platforms, Inc.,* 103 F.4th 732, 743 (9th Cir. 2024). Immunity applies only if moderating content is the **only** option available to the platform to prevent the harm. *Est. of Bride by & through Bride v. Yolo Techs., Inc.,* 112 F.4th 1168, 1177 n.3 (9th Cir. 2024).

None of Plaintiffs' claims treat Discord as a publisher or speaker. Instead, the claims arise from Discord's defective design and operation and its own tortious conduct unrelated to publishing third-party content. Discord expects this court to minimize the Taylor's carefully pleaded complaint about how Discord's product defects cultivated and perpetuated a child abuse cult is instead one about Discord doing an imperfect job at "restrict[ing] messages" between he and a one-off bad guy. Mot. at 3.

Discord thus urges this Court to extend Section 230 beyond its text effectively immunizing platforms from any harm that "flows from" user content (*i.e.,* messages exchanged by Javan). Their "based on" / "flows from" test, *i.e.,* a "but for" analysis, collapses Section 230 into a boundless shield. In other words, Discord argues -- "but for" Jay seeing content, he would not have been injured.[1] Discord has cited no binding authority so holding and the federal authority upon which Discord relies says otherwise: The CDA does not declare a general immunity from liability deriving from third-party content. *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1100 (9th Cir. 2009). The Ninth Circuit firmly "reject[s] use of a 'but for' test what would provide immunity under the CDA solely because a cause of action would not otherwise have accrued for the third-party content." *HomeAway.com, Inc. v. City of*

---

[1] Notably, none of the duties Jay alleges Discord breached relate to editorial decisions that if different would have prevented L.S. from contacting Jay.

C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

*Santa Monica,* 918 F.3d 676, 682 (9th Cir. 2018) (citing *Internet Brands,* 824 F.3d at 853). "We look instead to what the duty at issue actually requires[.]" *Id.* (citing *Internet Brands,* 824 F.3d at 851, 853); *see also, Neville v. Snap,* No. 22STCV333500 at 13 ("If Congress had intended to immunize all interactive computer services from liabilities "based on" third-party content, there are straightforward elocutions to express that intention. But that is neither what Congress did nor what Congress could have done consistent with the policy statements in subdivision (b) of Section 230.")

Section 230 protects platforms from liability for decisions about whether to publish, edit, or remove third-party content. It does not—and was never intended to—immunize a manufacturer from liability for its own defective product design that foreseeably heightens the risk of sexual exploitation to children.

The Taylors' claims do not spring from duties of a publisher, nor any duty that requires the platform to moderate content. Claim One and Four (outrage and negligence) stem from Discord negligently or intentionally increasing the risk of harm to Jay through its own affirmative conduct in marketing to children, having the internet's most shoddy and broken reporting structure so that a child sex mutilation trafficking cult could grow and thrive, maintaining terrible safety standards and inadequate parental controls, and developing a business model off of a recklessly skeletal trust and safety team designed to be too small to ever function safely. Compl. ¶¶ 136-45, 166-70. *See generally, In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation,* 702 F. Supp. 3d 809 (N.D. Cal. 2023). Claim Two (product liability) stems from Discord's duty to not market and release defective and not reasonably safe products into the stream of commerce. Compl. ¶¶ 146-60. *See generally, A.M. v. Omegle,* No. 3:21-cv-01674-MO, 2023 WL 1470269 (D. Or. 2022), *Lemmon,* 995 F.3d 1085, *Neville v. Snap,* No. 22STCV333500 (Sup. Ct. Cal.., Los Angeles, Jan 2, 2024), *In re Social Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.,* 702 F.Supp.3d 809 (9th Cir. 2023). Claim Three (failure to warn) stems from obligations to warn customers of known risks – particularly "when the provider is aware of a "known conspiracy operating independent of the site's publishing function.[2]"

---

[2] Like in *Internet Brands,* the inadequate warnings claim is not based on Discord's failure to remove user content or the publishing or monitoring of third-party content. "Rather, the plaintiff fault[s] the defendant for 'failing to warn her



C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Compl. ¶¶ 160-65; *See generally Internet Brands,* 824 F.3d 846 (9th Cir. 2016); *Beckman v. Match.com, LLC,* 668 F. App'x. 759 (9th Cir. 2016). Claim Five (trafficking) stems from Discord's trafficking activity and financial culpability. *See generally, Doe v. Mindgeek USA Inc.,* 558 F.Supp.3d 828 (2021); *Doe v. Facebook, Inc.,* 142 S. Ct. 1087 (2022); Compl. ¶¶ 171-80.

Even claims that are related to content moderation and "might lead a company to respond with monitoring or other publication activities" are not *de facto* dismissed by courts. *HomeAway.com,* 918 F.3d at 682. In *Doe 1 v. Twitter, Inc*., the plaintiffs, victims of sex trafficking, could proceed with their negligence claims related to the deficiencies in the social media's reporting functions (product designs) that resulted in Twitter "slow-walk[ing]" the plaintiffs' reporting of problematic content that resulted in illegal images remaining on its platform. 148 F.4th 635, 639 (9th Cir. 2025). In *Lemmon v. Snap, Inc.*, product liability claims proceeded against Snap when a young driver used the app to publish his high-speed driving, resulting in a fatal crash. 995 F.3d 1085, 1092 (9th Cir. 2021). The *Lemmon* court found the claim, like here, turned on Snap's product design rather than the published content. *Id.* Other claims against Snap have proceeded for more than 90 plaintiffs where children messaged with drug dealers on the app to purchase lethal fentanyl-laced pills. *Neville v. Snap,* No. 22STCV333500 (Super. Ct. Cal., L.A., Jan. 2, 2024). Claims against Omegle, a website that randomly paired strangers for live streaming, survived on theories of product liability, failure to warn, and trafficking when a child livestreamed on the app with a predator who abused her. *A.M. v. Omegle,* 2023 WL 1470269.[3]

---

about information it obtained from an outside source." 824 F. 3d at 851. Here, Discord had a duty to warn about 764 and law enforcement had made Discord aware of the enormity of the threat ("Tier 1"), danger, and conspiracy. Compl. ¶¶ 78-91.

[3] Discord's favored cases are not to the contrary. *Doe v. Discord,* a recent Ohio trial court decision is not authoritative, and involves a platform's failure to moderate communications between a registered sex offender unknown to the platform and a girl he groomed. 2026 WL 1067574, at *13–14. In *Doe v. Grindr,* the court fixated on the victim lying about his age to use an 18+ dating app which algorithmically matched him with adult men who assaulted him. Ultimately the Ninth Circuit found the claims boiled down to "a duty to suppress matches and communications between adults and children." 128 F.4th 1148 (9th Cir. 2025).

The Taylor's claims, in contrast, are about a platform's intentional decisions to offer a product to children that it knew was diseased with the 764 cult, refused to warn about it, and made the decision to continue a hands-off safety infrastructure with zero oversight over its small servers.

All other cases relied upon by Discord are out-of-circuit and/or ancient cases in circuits with slim Section 230 jurisprudence and involve fact patterns where the minor plaintiff expected the platform to affirmatively prevent communications with an adult predator. *Doe v. Myspace,* 528 F.3d 413 (5th Cir. 2008); *Doe ex rel Roe v. Snap, Inc.* 2023 WL 4174061, at *1 (5th Cir. 2023); *Jane Doe No. 1 v. Backpage.com, LLC* 817 F.3d 12, 21 (1st Cir. 2016); *Doe II v. Myspace Inc.,* 175 Cal. App. 4th 561, 572-75 (2009).



C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Thousands of lawsuits centralized in 2025 by the 9th Circuit are proceeding against Uber and Lyft on theories of negligence by passengers who matched with drivers through ride-hailing apps and were sexually harassed or assaulted.  Like in this case, the apps tried to claim they are just neutral platforms hosting third party content. *See In re: Uber Tech., Inc., Passenger Sexual Assault Litig.,* 3:23-md-03084 (N.D. Cal.).[4]

Thousands more are proceeding against Meta, Google, Snap, and TikTok for a host of product liability and negligence claims in multi-district litigations centralized in California state and federal courts related to these product designs (manipulative algorithms and addictive promotion of content) and the platforms' willful disregard for reported risks about content consumption; where teens consumed so much violent and harmful content that they argued it was addictively causing eating disorders and depression. *See Social Media Cases,* JCCP No. 5255 (Cal. Super. Ct., Dec. 30, 2022)[5]; *In re Social Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.,* 702 F.Supp.3d 809 (9th Cir. 2023). On similar grounds, a host of state attorney generals and schools have also sued social media products—overcoming platforms' motions to dismiss and winning major trial verdicts—for misleading the public about the platforms' safety, and for failing to prevent users from accessing content on the platform. *See generally, New Mexico ex rel. Torrez v. Meta Platforms, Inc.,* No. 23-cv-01115, 2024 WL 413609 (D.N.M. Feb. 5, 2024); *Commonwealth v. Meta Platforms, Inc.,* 497 Mass. 384 (2026).

### 2. The Claims are Not Content Based

For the reasons discussed above, the Taylor's claims are not based on third party content. When in dispute, it is for a jury to decide whether harm is caused from third-party content versus a design feature. *Smith v. TikTok Inc.*, No. 22STCV21355, slip op. at 2 (Cal. Super. Ct. Nov. 5, 2025) ("Meta

---

*Herrick v. Grindr,* an inapposite, out-of-circuit, unpublished decision that applies the "based on" / "flows from" "but for" test rejected in the Ninth Circuit is cited just to antagonize Plaintiff's counsel who also represented Mr. Herrick. The *Herrick* outcome is a case dismissing product liability claims relating to geo-location defects was condemned in the US Supreme Court. *Malware Bytes, Inc. v. Enigma Software Group USA*. 141 S.Ct. 13, 208 L. Ed. 2d 197 (2020 (statement of Thomas, J. respecting denial of certiorari).

[4] The first two bellwethers reached plaintiff verdicts in February and April 2026. *Dean v. Uber,* No. 3:23-cv-06708 (D. Ariz.  2026) in District of Arizona Court, *Mensing v. Uber,* No. 3:23-cv-06708 (W.D.N.C. 2026) in the Western District of North Carolina.

[5] The first bellwether proceeded to a plaintiff's verdict and punitive damages in March 2026 in the matter of *K.G.M v. Meta, et al.,* 23SMCV03371.

C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

argues that K.G.M. cannot assert liability based on the "infinite scroll design feature because this feature merely led Plaintiff to watch content. However, the fact that a design feature like "infinite scroll" impelled a user to continue to consume content that proved harmful does not mean that there can be no liability for harm arising from the design feature itself . . . [P]laintiff's evidence is sufficient to preclude a conclusion that there is no disputed question of fact as to whether K.G.M.'s claims are based on harm stemming from third-party content."). *K.G.M. v. Meta, et al.,* No. 23SMCV03371 (Cal. Super. Ct.).

Discord repeatedly insists that the Taylors' claims would require Discord to "perfectly screen and monitor third-party content." This argument is a strawman. Discord's claims arise from its own corporate-level decision-making, infrastructure, and systems, not from third-party content moderation decisions. Section 230 does not bar them. The Taylors' claims arise after Discord was armed with actual knowledge of a specific, child abuse cult running rampant on its platform. Discord's own affirmative conduct in marketing to children, creating policies for small channels to self-regulate, fostering 764 after it knew it was hurting kids, failing to warn families about the extreme abuse Discord could not control on its platform, creating a profit model based on having a recklessly skeletal trust and safety team enabled all combined to increase the risk of harm to Jay.

Discord's claim that platforms cannot be liable for a user's misconduct that manifests in real life is baseless and supported. See Mot. at fn. 2. This concept is undercut by basically all cases where courts denied immunity. *See, e.g., A.M. v. Omegle,* No. 3:21-cv-01674-MO, 2023 WL 1470269 (D. Or. 2022) (matched with predator on Omegle but abuse occurred for three years off the app); *Neville v. Snap,* No. 22STCV333500 (Sup. Ct. Cal., Los Angeles, Jan 2, 2024) (90 + cases where kids matched with drug dealers on the app and purchased lethal drugs off the app); *Doe v. Internet Brands,* 824 F.3d 846 (9th Cir. 2016) (matched on modeling app and drugged and raped offline); *In re: Uber Tech., Inc., Passenger Sexual Assault Litig.,* 3:23-md-03084, (N.D. Cal.); *In re Social Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.,* 702 F.Supp.3d 809 (9th Cir. 2023).



C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

### 3. Section 230 Does Not Bar the Trafficking Claim

In 2019, Congress amended Section 230 to expressly clarify that sex trafficking claims are not entitled to Section 230 immunity. 47 U.S.C. § 230(e)(5). *A.B. v. Salesforce, Inc.*, 123 F.4th 788, 798–99 (5th Cir. 2024).

### C. The First Amendment Does Not Bar the Taylors' Claims.

As with its Section 230 argument, Discord claims without support that the First Amendment bars the Taylor's claims because it is the third-party content that caused Jay's harms. For the reasons cited above, the Taylor's claims do not relate to Discord's speech. If this is in dispute, a factfinder can decide. *See K.G.M. v. Meta, supra*.

Discord is not an unknowing distributor. It is a manufacturer that designed a product and made corporate decisions on how it would operate. To the extent that Discord's bewildering argument claims its decision to germinate and grow 764 is its own intentional expressive speech, then it would *de facto* not be entitled to Section 230 because it would not be "information provided by another information content provider." *See Anderson v. TikTok, Inc.,* No. 22-3061 (3d Cir. 2024). In such case, Plaintiff would be within its right to seek leave to amend and add RICO claims.

### D. The Taylors Properly Pleaded All State Law Claims.

### 1. Discord Had Actual, Specific Notice of 764 for which it should have warned.

Discord argues that it lacked specific knowledge of the criminal scheme targeting Jay Taylor and therefore could not warn the public. In support, Discord relies primarily on *Doe v. Grindr Inc.*, 128 F.4th 1148 (9th Cir. 2025) and *Doe v. Discord, Inc.*, 2026 WL 1067574 (N.D. Ohio 2026). Neither case controls here. Plus, both involved platforms with general awareness of predatory misuse but no documented, specific knowledge of a named criminal organization operating on their servers. This case is categorically different.

Discord's own Trust and Safety team filed 58 CyberTipline reports about 764's content between June and August 2021—six months before Jay's death. Compl. ¶ 28. The Dallas Police Department filed six separate reports about 764 on Discord during that same period. Compl. ¶ 27. Discord knew 764 existed. Discord knew 764 was using its platform to produce and distribute child

C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

sexual abuse material. Discord knew 764 was coercing children into self-mutilation and pushing them toward suicide. A fifteen-year-old girl livestreamed a suicide attempt after 764 tormented her on Discord in July 2021, her body covered in carvings of usernames and swastikas. Compl. ¶ 116(a). A man was goaded to suicide by 764 members in a Discord "suicide chat" in November 2021. Compl. ¶ 116(d). Graphic images of children being tortured were distributed on Discord in November 2021. Compl. ¶ 116(c). Discord knew all of this—not from monitoring user content, but from its own internal reporting—and did nothing.

This is precisely the fact pattern that the Ninth Circuit held in *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016), which survived a motion to dismiss on section 230 grounds. The court held that a failure-to-warn claim is not barred by Section 230 where a platform had independent, outside-source knowledge of a specific dangerous scheme—because such a claim does not treat the platform as a publisher of third-party content. The duty to warn of a known specific danger arises independently of any publishing function. *Id.* at 851. The Ninth Circuit in *Grindr* expressly preserved *Internet Brands*, holding that Section 230 barred claims there specifically because "Doe does not allege that Grindr had independent knowledge of a conspiracy." *Grindr*, 128 F.4th at 1154. That absence of specific knowledge was the dispositive distinction. *Id.* Plaintiffs here allege the opposite—documented, self-generated, specific knowledge of a named criminal organization that Discord had been reporting to federal authorities for months before Jay died.

### 2. Discord Proximately Caused Jay's Death.

Discord argues that Javan's criminal conduct was a superseding cause that breaks the causal chain as a matter of law. Besides the glaring circuitousness of this argument coming from the platform that gestated and birthed 764, this argument fails because foreseeability is the touchstone of proximate causation under Washington law. The precise criminal conduct that killed Jay was not only foreseeable in the abstract, it was specifically known to Discord before it happened.

Washington law is clear that an intervening criminal act does not break the chain of causation when that act was foreseeable. *Washburn v. City of Fed. Way*, 178 Wn.2d 732, 761 (2013). Washington courts have further held that "criminal conduct is, however, not unforeseeable

C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

per se," *Adgar v. Dinsmore*, 26 Wn. App. 2d 866, 875 (2023), and that "a subsequent act is not a superseding cause based merely on its being criminal, but, rather, will be a superseding cause only if it is not foreseeable, as that term is used in tort law." *State v. McGee*, 26 Wn. App. 2d 849, 859 (2023). An intervening act constitutes a superseding cause that breaks the causal chain if: "1) the intervening act created a *different type of harm* than otherwise would have resulted from the actor's negligence; (2) the intervening act was *extraordinary* or resulted in extraordinary consequences; (3) the intervening act *operated independently* of any situation created by the actor's negligence." *Campbell v. ITE Imperial Corp.*, 107 Wn.2d 807, 812, 733 P.2d 969 (1987) (applying *Restatement (Second) of Torts* § 442). *See also*, *Albertson v. State*, 191 Wn. App. 284, 297 (2015).[6] Foreseeability here is measured not in the abstract but what the defendant actually knew.

Here, Discord knew that 764 was using its platform to push children to suicide. It knew this months before Jay died. A fifteen-year-old girl had already attempted suicide after 764 tormented her on Discord in July 2021. Compl. ¶ 116(a). A man had already been coerced to suicide by 764 in a Discord chatroom in November 2021. Compl. ¶ 116(d). The very harm that befell Jay—a child driven to suicide through Discord by 764 members—was not an unforeseeable criminal aberration. It was not extraordinary. It was a documented, recurring pattern that Discord had catalogued in its own reports and done nothing to stop.

The Washington Supreme Court's recent decision in *Scott v. Amazon.com, Inc.*, 583 P.3d 1155 (Wash. 2026), forecloses dismissal on causation grounds here. There, the Court held that the question of whether suicide risk fell within the scope of a defendant's duty "could not be resolved at motion-to-dismiss stage in light of factual dispute as to whether act of suicide was foreseeable consequence" of the defendant's conduct. *Id.* The same principle applies here with even greater force: unlike *Scott*, where foreseeability was disputed, Discord had actual, documented, self-generated knowledge that 764 was driving children to self-harm and suicide on its platform. Dismissal is unwarranted.

---

[6] Intervening causation, including the element of foreseeability, is a question of fact. *Maltman v. Sauer*, 84 Wn.2d 975, 982, 530 P.2d 254 (1975).

C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Washington courts have consistently held that where a defendant has actual knowledge of a specific risk, intervening criminal conduct that materializes that precise risk does not break the chain of causation as a matter of law. See *Washburn*, 178 Wn.2d at 761; *Adgar v. Dinsmore*, 26 Wn. App. 2d 866 (2023). The rule that criminal conduct can be a superseding cause exists to protect defendants from liability for foreseeable harms that they could not have anticipated. It was never designed to insulate a defendant from liability for the precise harm it knew was coming and chose to ignore.

Discord's causation argument also ignores its own affirmative role in producing the harm. Discord did not merely fail to prevent Javan from reaching Jay. Discord provided the specific infrastructure for 764 and its child abuse scheme that resulted in the luring of Jay and the direction of his suicide in real time. These are not omissions. They are affirmative design choices that directly enabled the harm, and each one flows directly and proximately to Jay's death. The criminal conduct Discord alludes to is therefore not a superseding cause which broke the chain of Discord's causation.

Discord's string of analogies—iMessage, FaceTime, a car sale gone wrong, a fast-food restaurant robbery—share nothing with this case. None of those defendants marketed their product specifically to children. None had documented, self-generated knowledge that a specific criminal organization was systematically using their product to murder children. None designed proprietary features that were the specific mechanism of the harm. The causal attenuation that justified dismissal in those cases does not exist here.

### 3. The Taylors Properly Pleaded Outrage.

Washington's outrage tort requires: (i) severe emotional distress (ii) inflicted intentionally or recklessly through (iii) conduct that was extreme and outrageous that (iv) is directed at the plaintiff or committed in the plaintiff's presence. *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 840 (2015). Discord challenges each element except the first. Each challenge fails.

*Outrageousness*. Discord knew a pedophilic cult designated as a tier-one terrorist threat by the FBI was using its platform to torture children, film their suicides, and distribute the footage to

C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

recruit more victims. Discord documented this knowledge in 58 federal reports. And then Discord did nothing—not because it couldn't, but because moderation was incompatible with its growth model and its deliberate approach of attracting users through minimal oversight. Compl. ¶¶ 75, 91. A company that deliberately builds a product designed to attract both children and predators, promises safety to parents, generates federal reports about child torture and murder on its servers, and then chooses inaction to preserve growth metrics has engaged in conduct that goes beyond all possible bounds of decency. *Trujillo*, 183 Wn.2d at 840. The outrageousness standard requires conduct that a reasonable person would regard as atrocious and utterly intolerable in a civilized community. *Id.* Knowingly maintaining the operating environment for this cult while marketing to kids satisfies that standard.

*Intentional or reckless inflictio*n. Discord's inaction was not inadvertent. Discord's CEO was subpoenaed by U.S. Marshals to appear before Congress. Compl. ¶ 74. Discord admitted in its own filings that its proactive safety approach applied only to servers with 200 or more members—leaving smaller servers, including those used by 764, deliberately unmoderated. Compl. ¶ 76. Discord's trust and safety team was staffed at a tiny fraction of what comparable platforms employed. Compl. ¶ 74. These are deliberate choices, made with knowledge of their consequences, that constitute at minimum reckless disregard for the safety of children on its platform. That is sufficient. *Trujillo*, 183 Wn.2d at 840.

*Directedness*. Discord argues it did not specifically know Jay was a user. But the directedness element does not require that the defendant know the plaintiff's name. It requires that the conduct be directed toward the plaintiff. See *Grimsby v. Samson*, 85 Wn.2d 52 (1975). Discord marketed directly to young teenagers like Jay. Discord's promotional materials specifically targeted LGBTQ+ youth seeking community—Jay's precise demographic and the precise community that 764 hunted. Compl. ¶¶ 7, 16, 47. Discord's product was the mechanism through which Jay was found, recruited, and killed to the amusement of Discord's 764 members. Discord was keenly aware of the purveyor of the danger to kids like Jay: 764. The conduct was directed at Jay's class of user, which is why 764 found him there within hours of his first post.

C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

*Physical presence with respect to Plaintiffs' individual claims.* Discord claims that the Taylor's personal claims for outrage fail because the Taylors were not physically present when the conduct was directed to Jay. *See Lund v. Caple*, 100 Wn.2d 739, 742 (1984). Discord relies on *Clark v. Amica Mut. Ins. Co.*, a case where the Eastern District of Washington dismissed an outrage claim brought by a woman whose neighbors were intimidated by private investigators. 2013 WL 3148262 (E.D. Wash. 2013). Discord created a veritable portal for children to be privately and secretly abused without the detection of parents. The insidiousness of Discord's design is *to* evade parental protection, enabling children to be harmed literally in the next room. The deception to the Taylors, the introduction of a dangerous product that did not require or offer parental controls – that is conduct directed *at* them.

### 4. Discord Is a Product Subject to Washington Product Liability Law.

RCW 7.72.010(3) defines "product" as "any object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce." Discord meets this definition clearly and completely. It is mass-produced software, delivered via the App Store and Google Play, sold to consumers in exchange for subscription fees, installed on and run from physical devices, and capable of being opened, closed, deleted, and reinstalled. Compl. ¶ 148. It accepts payment for premium features. It is distributed through commercial retail channels to consumers worldwide. It takes up memory and physical space on electronic devices. It is, by every meaningful measure, a product.

Even if Discord is found not to be a product, it is still responsible for its actions under common law negligence and has an independent duty to warn outside of RCW 7.72.030 because the Ninth Circuit has held that "an interactive service provider has a duty to warn a user when the provider is aware of a 'known conspiracy operating independent of the site's publishing function.'" *Doe v. Grindr,* 128 F.4th 1148 (9th Cir. 2025) (citing *Est. of Bride,* 112 F. 4th at 1181); *Internet Brands,* 824 F.3d at 851.

Discord argues it is a service rather than a product, relying on *Quinteros v. InnoGames*, 2022 WL 898560 (W.D. Wash. 2022), aff'd in relevant part, 2024 WL 132241 (9th Cir. 2024), and

C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

*Grigsby v. Valve Corp.*, 2013 WL 12310666 (W.D. Wash. 2013). But neither case involved software with the characteristics at issue here. *Quinteros* involved an online game; *Grigsby* involved a game distribution platform. Discord is qualitatively different—it is patented software with proprietary features specifically designed to enable strangers to find and interact with each other in real time, monetized through subscriptions and premium services, and distributed through commercial app marketplaces to a user base that is majority minors. No Washington appellate court has held that software is excluded from product liability law. In *In re Soc. Media Adolescent Addiction/Personal Injury Products Liability Litigation,* the court rejected the argument that platforms fall outside the definition of a product, emphasizing that the claims were predicated on the platforms' design choices and functionality—not on the user-generated content. 702 F.Supp.3d at 849-54.

Courts generally have frowned upon online platforms' efforts to shirk liability based on categorization as a product or not; and at best punt the issue to the factfinder. *See, e.g. Neville v. Snap, Herrick v. Grindr* fn. 9 ("The Court does not address Grindr's argument that it is not a 'product' for purposes of products liability. It appears to be common ground between the parties that strict products liability may apply to standardized and mass-downloaded software but does not apply to information or 'expressive' content.")

Discord also argues its dangers are open and obvious, relying on *Baughn v. Honda Motor Co.*, 107 Wn.2d 127 (1986), and *Doe v. SexSearch.com*, 551 F.3d 412 (6th Cir. 2008). Whether a risk is open and obvious is a fact question. *Schuck v. Beck*, 19 Wn. App. 2d 465, 485-86, 497 P.3d 395 (2021). Nonetheless, the open and obvious doctrine is an issue for the factfinder and also does not apply here for two more reasons.

First, the specific dangers were not obvious to Jay—a thirteen-year-old child who joined Discord to discuss crocheting with new friends. Children do not have the same capacity as adults to assess the risks of online platforms. Their brains are not fully developed, they have diminished capacity to distinguish genuine friendship from manipulation, and they are neurologically more vulnerable to grooming than adults. A platform that markets itself as a "fun and safe space for teens" and promises parents that safety is built "by design and default" actively undermines

Page 18 — PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

C.A. GOLDBERG

PLLC, NEW YORK

WWW.CAGOLDBERGLAW.COM

whatever residual risk awareness a child might have. Compl. ¶¶ 58, 70. The open and obvious doctrine exists to protect manufacturers from liability for dangers that users are fully equipped to perceive and avoid. A thirteen-year-old child on a platform that promised him safety is not that user.

Second, Discord's reliance on *SexSearch* is as revealing as it is inappropriate. *SexSearch* is a website explicitly designed to facilitate adult sexual encounters with strangers. Its risks—that adults seeking casual sex might misrepresent their age or identity—are inherent in and inseparable from its purpose. Discord is a platform that markets itself to school clubs, offers Student Hubs for classmates, and promises parents it is a safe space for teens. The risks inherent in an adult sex website are categorically different from the risks a child or parent should expect when joining a platform that advertises itself to school children. Discord's decision to analogize itself to a sex website in defense of its child safety record is, at minimum, inadvertently candid about its actual priorities.

### 5. Discord Owed and Breached Its Duty of Care.

Actors have a duty to exercise reasonable care to avoid the foreseeable consequences of their acts." *Washburn v. City of Fed. Way,* 178 Wn.2d 732, 757 (2013) (citing § 281 cmts. c, d). This duty requires a defendant to use reasonable care to avoid creating or increasing the risk of harm to another. In considering a duty's existence, "the court considers 'logic, common sense, justice, policy, and precedent, as applied to the facts of the case.'" (quoting *Centurion Props. III v. Chi. Title Ins.,* 186 Wn.2d 58, 65 (2016)). Recognition of a tort duty "is a reflection of all those considerations of public policy which lead the law to conclude a plaintiff's interests are entitled to legal protection against the defendant's conduct." *Taylor v. Stevens Cnty*., 111 Wn.2d 159, 168 (1988). Courts may also look to a legislature's criminal pronouncements for public policy and determine whether a common law or statutory duty of care exists. *Bernethy v. Walt Failor's, Inc.,* 97 Wn.2d 929, 932 (1982) (looking to criminal statutes that prohibited similar conduct and basing a tort duty on that public policy). Under a negligence theory, a defendant owes a duty to exercise reasonable care and to make known risks known. *Baughn v. Honda Motor Co*., Ltd., 107 Wn.2d 127, 137 (1986).

C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Under Washington law, everyone has a duty to refrain from enhancing the foreseeable risk of harm to others. *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 550 (2019) ("[E]very individual owes a duty of reasonable care to refrain from causing foreseeable harm in interactions with others."); *Mancini v. City of Tacoma*, 196 Wn.2d 864, 885–86, 479 P.3d 656 (2021); *Nunley v. Chelan-Douglas Health Dist.*, 32 Wn. App. 2d 700 (2024). Discord owed a duty to Jay on multiple independent grounds, each of which is established by the complaint's allegations.

First, Discord specifically marketed to children in Jay's demographic—LGBTQ+ teens seeking community and belonging. Compl. ¶¶ 7, 47. A business that actively recruits a specific vulnerable population to its platform assumes a duty of reasonable care to that population.

Second, Discord made express, specific safety promises to parents and users. Compl. ¶¶ 67–70. Discord promised it would "step in" when users faced threats of physical harm. It promised safety "by design and default." It promised to act "[w]hen alerted." A party that undertakes to provide safety assurances assumes a duty to fulfill them with reasonable care. See *Turner v. Washington State DSHS*, 198 Wn.2d 273, 493 P.3d 117 (2021).

Third, Discord had actual, documented knowledge that a specific child terrorism conspiracy was using its platform to mutilate and murder children in the precise manner that killed Jay. Compl. ¶¶ 27–29, 116. The foreseeability of Jay's death was not abstract—it was specific. Discord had given 764 a home to push children to suicide on its platform for months.

Discord argues no Washington court has recognized a duty by an online service to protect users from third-party criminal conduct, citing *M.L. v. Craigslist Inc.*, 2020 WL 6434845 (W.D. Wash. 2020). But *M.L.* involved a general advertising service with no comparable knowledge of a specific criminal organization operating on its platform. Furthermore, Craigslist did not invite children to its platform. The court in *M.L.* declined to impose a duty precisely because there was no specific knowledge of the particular risk. *Id.* at *13. Here, Discord had exactly that specific knowledge. The duty question is not whether online platforms generally owe users protection from unknown criminal conduct—it is whether a platform owes a duty when it has documented, self-generated knowledge that a specific terrorist organization is systematically using its product to

C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

murder children, and then does nothing. Under Washington's foreseeability of harm framework, the answer is plainly yes.

Discord also argues it can only be held liable for misfeasance, not nonfeasance. But Discord did not merely fail to eliminate a risk—it affirmatively created one. Discord designed a product with features that enabled predators to find and contact children with no restrictions, marketed it to precisely the demographic those predators hunted, and made safety promises that induced parents and children to lower their guard. "Creation and operation" of a product with these characteristics is misfeasance, not nonfeasance. See *Robb v. City of Seattle*, 176 Wn.2d 427, 435–38 (2013) (misfeasance "necessarily entails the creation of a new risk of harm to the plaintiff," whereas nonfeasance is "passive inaction or failure to take steps to protect others from harm").

### 6. The Taylors Properly Pleaded Trafficking.

RCW 9A.40.100 prohibits knowingly recruiting, enticing, harboring, transporting, providing, obtaining, or benefiting from the exploitation of a person through force, fraud, coercion, or abuse of vulnerability, and provides civil remedies against any person who knowingly benefits from participation in such conduct. Where the victim is a minor, force, fraud, and coercion are not required elements and consent is not a defense. RCW 9A.40.100(5).

Discord argues the statute requires physical custody of a victim because the verbs it lists are transitive and imply physical control. The statute's text does not support this reading. The prohibited acts include "recruits," "entices," "solicits," and "provides"—none of which require physical custody. Discord recruited children to its platform. Discord provided the infrastructure through which they were isolated, manipulated, and exploited. Discord maintained the platform through which 764 operated with actual knowledge of what 764 was doing. Each of these acts falls within the statute's plain language.

Discord argues Plaintiffs cannot plead the required mental state—that Discord knew or recklessly disregarded that its conduct would cause coercion of a minor into a sexually explicit act. But Discord filed 58 federal reports about 764 producing child sexual abuse material on its servers. Compl. ¶ 28. Discord knew 764 was coercing minors into producing sexually explicit content. It

C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

knew this for months. It continued to provide 764 with access to its platform, continued to profit from the subscriptions and engagement 764's activity generated, and continued to market to the children 764 was hunting. Under RCW 9A.40.100(3)(b), knowingly causing a person under 18 to engage in a sexually explicit act—or benefiting financially from participation in a venture that does so—is trafficking. Discord's knowing, financially motivated maintenance of the platform through which 764 operated satisfies this standard.

Discord argues it could not have been financially motivated to enable 764's crimes because no company would profit from its users being murdered. But it did. Discord's business model depended on growth, and growth depended on maintaining a hands-off approach that attracted users of all kinds—including, as Discord knew, predators and the vulnerable children they hunted.

<b>CONCLUSION</b>

This Court should deny the motion to dismiss in its entirety.

**DATED** this 22nd day of May, 2026

CORRIE YACKULIC LAW FIRM, PLLC     C.A. GOLDBERG, PLLC

/s/ Corrie J. Yackulic
Corrie J. Yackulic, WSBA #16063
101 Yesler Way, Suite 600
Seattle, WA 98104
Tel. (206) 787-1915
corrie@cjylaw.com

/s/ Carrie Goldberg
Carrie Goldberg (*pro hac vice*)
/s/ Naomi Leeds
Naomi Leeds (*pro hac vice*)
16 Court Street, 33rd Floor
Brooklyn, New York 11241
Tel. (646) 666-8908
carrie@cagoldberglaw.com
naomi@cagoldberglaw.com

   *Attorneys for Plaintiff*

*I certify that this memorandum contains 8,317 words in compliance with Local Civil Rules.*



C.A.GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM