The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COLBY TAYLOR, individually and as a personal representative of the ESTATE OF JAY TAYLOR, a deceased individual; LESLIE TAYLOR, individually and as a personal representative of the ESTATE OF JAY TAYLOR, a deceased individual,<br><br>Plaintiffs,<br><br>v.<br><br>DISCORD INC., a Delaware company,<br><br>Defendant. | No. 3:26-cv-05245-BHS<br><br>**DEFENDANT DISCORD INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>**NOTE ON MOTION CALENDAR: June 9, 2026** |

# TABLE OF CONTENTS


Page

INTRODUCTION ..... 1

I. PLAINTIFFS' CLAIMS ARE TIME-BARRED ..... 2

II. SECTION 230 BARS PLAINTIFFS' CLAIMS ..... 3

III. THE FIRST AMENDMENT BARS PLAINTIFFS' CLAIMS ..... 8

IV. PLAINTIFFS CANNOT STATE ANY CLAIM ..... 9

A. No Proximate Causation. ..... 9

B. The Outrage Claim Fails. ..... 10

C. The Product Liability Claims Fail. ..... 10

D. The Negligence Claim Fails. ..... 11

E. The Trafficking Claim Fails. ..... 11

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.M. v. Omegle.com, LLC*,
614 F. Supp. 3d 814 (D. Or. 2022) ... 6

*Anderson v. TikTok, Inc.*,
116 F.4th 180 (3d Cir. 2024) ... 8, 9

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ... 4, 5

*Bride v. Yolo Techs., Inc.*,
112 F.4th 1168 (9th Cir. 2024) ... *passim*

*Caraccioli v. Facebook, Inc.*,
700 F. App'x 588 (9th Cir. 2017) ... 7

*Clark v. Evergreen Money Mortg. Co.*,
2025 WL 1635206 (W.D. Wash. 2025) ... 2

*Crosby v. Twitter, Inc.*,
921 F.3d 617 (6th Cir. 2019) ... 9

*Doe 1 v. Twitter, Inc.*,
148 F.4th 635 (9th Cir. 2025) ... 6

*Doe v. Grindr Inc.*,
128 F.4th 1148 (9th Cir. 2025) ... *passim*

*Doe v. Grindr Inc.*,
709 F. Supp. 3d 1047 (C.D. Cal. 2023), *aff'd*, 128 F.4th 1148 (9th Cir. 2025) ... 6

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) ... 1, 7, 11

*Doe v. MindGeek USA Inc.*,
558 F. Supp. 3d 828 (C.D. Cal. 2021) ... 8

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) ... 3, 4, 5

*Doe v. Reddit, Inc.*,
2021 WL 4348731 (C.D. Cal. 2021) ... 7

*Does 1-6 v. Reddit, Inc.*,
51 F.4th 1137 (9th Cir. 2022) ... 8, 12

*Dyroff v. Ultimate Software Group, Inc.*,
934 F.3d 1093 (9th Cir. 2019) ........ 6, 8

*Fields v. Twitter, Inc.*,
881 F.3d 739 (9th Cir. 2018) ........ 9

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019) ........ 7

*Gonzalez v. Google LLC*,
2 F.4th 871 (9th Cir. 2021) ........ 7

*Green v. Miss USA, LLC*,
52 F.4th 773 (9th Cir. 2022) ........ 8

*Herrick v. Grindr LLC*,
765 F. App'x 586 (2d Cir. 2019) ........ 3, 4, 7

*In re Social Media Addiction*,
702 F. Supp. 3d 809 (N.D. Cal. 2023) ........ 5, 11

*J.B. v. G6 Hosp., LLC*,
2020 WL 4901196 (N.D. Cal. 2020) ........ 7

*Jane Doe v. Discord Inc.*,
2026 WL 1067574 (N.D. Ohio 2026) ........ 3

*K.B. v. Backpage.com LLC*,
768 F. Supp. 3d 1057 (N.D. Cal. 2025) ........ 3, 5, 6, 8

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014) ........ 7

*L.W. v. Snap, Inc.*,
675 F. Supp. 3d 1087 (S.D. Cal. 2023) ........ 6

*Lemmon v. Snap, Inc.*,
995 F.3d 1085 (9th Cir. 2021) ........ 6

*M.H. v. Omegle.com, LLC*,
2022 WL 93575 (M.D. Fla. 2022), *aff'd*, 122 F.4th 1266 (11th Cir. 2024) ........ 6

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) ........ 8

*Nw. Env't Advocs. v. EPA*,
2015 WL 13938171 (W.D. Wash. 2015) ........ 2

*Quinteros v. InnoGames*,
2022 WL 898560 (W.D. Wash. 2022), *aff'd*, 2024 WL 132241 (9th Cir. 2024) ........ 11

*Smith v. California*,
361 U.S. 147 (1959) .... 8

*Snyder v. Phelps*,
562 U.S. 443 (2011) .... 8

*Zeran v. AOL, Inc.*,
129 F.3d 327 (4th Cir. 1997) .... 3, 6

**State Cases**

*Adgar v. Dinsmore*,
26 Wn. App. 2d 866 (2023) .... 9

*Azpitarte v. Sauve*,
172 Wash. App. 1050, 2013 WL 223042 (2013) .... 2

*Commonwealth v. Meta Platforms, Inc.*,
277 N.E. 3d 166 (Mass. 2026) .... 5

*Grimsby v. Samson*,
85 Wn.2d 52 (1975) .... 10

*In re Facebook*,
625 S.W.3d 80 (Tex. 2021) .... 7

*K.G.M. v. Meta*,
No. 23SMCV03371 (Cal. Super. Ct.) .... 5

*Lund v. Caple*,
100 Wn.2d 739 (1984) .... 10

*Neville v. Snap*,
No. 22STCV333500 (Cal. Super. Ct. Jan. 2, 2024) .... 6

*R.M. v. King County*,
31 Wn. App. 2d 1057, 2024 WL 3327025 (2024) .... 10

*Rikstad v. Holmberg*,
76 Wn.2d 265 (1969) .... 9

*Robb v. City of Seattle*,
176 Wn.2d 427 (2013) .... 11

*Scott v. Amazon.com, Inc.*,
6 Wn.3d 1 (2026) .... 9

*Smith v. TikTok*,
No. 22STCV21355 (Cal. Super. Ct. Nov. 5, 2025) .... 5

*Washburn v. City of Fed. Way*,
178 Wn.2d 732 (2013) .......... 9, 10

**Federal Statutes**

47 U.S.C. 230 .......... 7

**State Statutes**

RCW 9.68A.100 .......... 2

RCW 9.68A.101 .......... 2

RCW 9.68A.102 .......... 2

RCW 9.68A.103 .......... 2

RCW 9A.40.100 .......... 2, 11, 12

RCW 9A.82.100 .......... 2

**Other Authorities**

16 Wash. Prac., Tort Law & Practice § 14:11 (5th ed.) .......... 10

## INTRODUCTION

Plaintiffs' claims are analytically identical to the product liability, defective design, failure to warn, negligence, and sex trafficking claims the Ninth Circuit dismissed in *Doe v. Grindr Inc.*, 128 F.4th 1148 (9th Cir. 2025). The Opposition all but ignores that case, relying almost exclusively on *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016), which held that Section 230 did not bar a failure-to-warn claim against a website operator that knew two men had been criminally charged with browsing the site—but not posting on it—to identify and physically track down victims. *Grindr* refused to apply *Internet Brands*. It requires dismissal here.

Plaintiffs suggest *Internet Brands* controls because Discord knew that 764, a network of violent extremists, had used its platform to message victims. But the *Grindr* plaintiff, relying on *Internet Brands*, also alleged that Grindr knew predators had used its platform to message victims,[1] and that Grindr failed to act on this knowledge to warn users or remedy its "defective design."[2] The Ninth Circuit disagreed, finding the claims materially differed. 128 F.4th at 1154. Unlike in *Internet Brands*—where the defendant could have avoided liability *only* by warning users about an *offline* threat, and *not* by moderating content, since the perpetrators published *nothing* to the site—Grindr could have avoided liability *only* by monitoring for and blocking profiles and messages published on the app. *Id.* This case is like *Grindr*, not *Internet Brands.*

Plaintiffs' claims fail on other grounds. They cannot toll the statutes of limitations because they admit facts showing they knew or should have known the basis for their claims. The First Amendment protects the unknowing publication of others' harmful content, not just the publisher's own content. And the cases Discord cited in its Motion—which Plaintiffs largely ignore—require dismissal under the common law.

---

[1] First Am. Compl., *Doe v. Grindr, Inc.*, No. 2:23-cv-02093-ODW-PD, ECF No. 36 at ¶¶ 4, 42-43, 75-88, 157-66 (C.D. Cal. filed Apr. 27, 2023).

[2] Appellant's Reply Br., *Doe v. Grindr, Inc.*, No. 24-475, Doc 42.1 at 11-13 (9th Cir. filed July 31, 2024).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

The circumstances of Jay Taylor's death are deeply tragic. The legal question before this Court, however, is whether a communication platform can be held responsible for the criminal acts of its users. It cannot.

## I. PLAINTIFFS' CLAIMS ARE TIME-BARRED

The Opposition claims the discovery rule tolled the statutes of limitations because Plaintiffs did not learn the facts underlying their claims until 2025. Opp. 5. But the discovery rule does not apply where a plaintiff knows of facts "that could reasonably be discovered through investigation of sources open to her." *Nw. Env't Advocs. v. EPA*, 2015 WL 13938171, at *7 (W.D. Wash. 2015) (failure to request documents that would have provided basis for claims precluded discovery rule). Here, Plaintiffs' own submissions confirm they were aware, *before* their sons' death, that he had encountered "chatrooms devoted to cutting on Discord," and, within six days after his death, that his death had been streamed online. Taylor Decl. Ex. C at 5. These facts were sufficient to put Plaintiffs on notice and trigger a duty to investigate. *See Azpitarte v. Sauve*, 172 Wash. App. 1050, 2013 WL 223042, at *3 (2013) (unpublished) (no tolling; waiting for police report immaterial when facts could have been requested years earlier); *Clark v. Evergreen Money Mortg. Co.*, 2025 WL 1635206, at *8 (W.D. Wash. 2025) (no investigation).

Plaintiffs' reliance on criminal charges against Javan in Germany to toll the statute for trafficking claims is misplaced for three independent reasons. First, RCW 9A.82.100(7)(b)(iv) tolls the statute only until "the final disposition of any criminal charges relating to the offense." No criminal charges have been brought against Discord. Second, the tolling provision applies only to offenses "defined in RCW 9A.40.100, 9.68A.100, 9.68A.101, 9.68A.102, and 9.68A.103." RCW 9A.82.100(7)(b). Third, the tolling provision was designed to protect plaintiffs who must wait for domestic criminal proceedings to conclude before filing civil claims against the same defendant, *not* to indefinitely extend the limitations period against a different party.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## II. SECTION 230 BARS PLAINTIFFS' CLAIMS

Plaintiffs agree Section 230 protects services like Discord from liability "when offensive material slips through their voluntary" content moderation and bars claims that would require such a service to more perfectly monitor for, screen, block, remove, or edit third-party content to avoid liability. Opp. 6-8 (citing *Zeran v. AOL, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997) and *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009)). Plaintiffs' argument that their claims do not fault Discord for failing to moderate content is belied by the Complaint, which repeatedly alleges Discord should be liable for its insufficient "content moderation infrastructure." Compl. ¶¶ 12, 91; *see id.* ¶¶ 44, 52-53, 60-62, 73, 76-77, 85 n.28, 89-91, 117, 121, 139-44, 155, 161-62, 169, 173-76, 178. The Opposition, too, blames Discord for allegedly taking a "woefully inadequate," "hands-off approach" to content moderation that leaves "user-created" chat forums "ungoverned." Opp. 1, 2, 6. Every appellate court to decide the issue, including the Ninth Circuit in *Grindr*, 128 F.4th at 1151-55, has held that Section 230 bars identical product liability, defective design, emotional distress, negligence, failure to warn, and trafficking claims. *See* Mot. 5-6 & 6 n.2.

Unable to distinguish this unbroken line of authority, Plaintiffs recycle attempts to plead around Section 230 that the Ninth Circuit and other courts have rejected. *See, e.g., Grindr*, 128 F.4th at 1151-55; *Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1178, 1180 (9th Cir. 2024); *Herrick v. Grindr LLC*, 765 F. App'x 586, 588-91 (2d Cir. 2019); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418-22 (5th Cir. 2008); *K.B. v. Backpage.com LLC*, 768 F. Supp. 3d 1057, 1062-67 (N.D. Cal. 2025); *Jane Doe v. Discord Inc.*, 2026 WL 1067574 (N.D. Ohio 2026). Although the Opposition summarily dismisses these authorities in a footnote, Opp. 9 n.3, they are indistinguishable.

| **Complaint** | ***Grindr* (9th Cir.)** | ***MySpace* (5th Cir.)** | ***Herrick* (2d Cir.)** |
|---|---|---|---|
| Discord "has no age or identity verification systems," ¶ 9, refuses "to invest in commonsense safety measures. " ¶ | Grindr lacks "effective age verification tools," other safety measures. | MySpace lacked "basic safety measures," like age-verification. *MySpace*, 528 F.3d at 419, 421-22. | Grindr "lack[ed] safety features" to deter impersonating profiles. *Herrick*, 765 F. App'x at 590. |



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

| | | | |
|---|---|---|---|
| 91. | *Grindr* FAC ¶ 107.[3] | | |
| Discord "designed a platform structurally rife with obvious, risk-amplifying features" exposing children to exploitation. ¶¶ 3, 155. | Danger "inherent" in Grindr's "design" because it enabled adults to message minors. *Grindr* FAC ¶¶ 102-04. | MySpace "constructed a website" that endangered children by "allow[ing] people of any age to … indiscriminately communicate." *MySpace* Compl. ¶ 38.[4] | Grindr's "defective product" "lacks the basic software capabilities" to "detect abusive accounts," "exercise control of its product" or "protect its users." *Herrick* FAC ¶¶ 9, 79-80, 88-89, 109.[5] |
| Discord "prioritized profit above all else, refusing to invest in commonsense safety measures." ¶¶ 91, 177. | Grindr markets to minors because it "knowingly benefits financially ... by ... collecting ad revenue" from sex trafficking. *Grindr* FAC ¶¶ 35-44, 146. | MySpace recruits minors for revenue, does not limit their use of the service even knowing it means exposing them to predators. *MySpace* Compl. ¶¶ 11-13, 38-40. | Grindr eschews safety features and privacy protections for more revenue. *Herrick* FAC ¶¶ 35-37, 44. |
| Discord failed to warn of risks of dangers of online communities despite "notice and knowledge" of their actions. ¶ 162. | Grindr failed to warn users of the risks of sexual assault, despite prior public reports. *Grindr* FAC ¶¶ 78-86, 116-120. | MySpace knew of risks from prior criminal incidents and attorney-general letters. *MySpace* Compl. ¶¶ 14, 15-23, 38-42, 47-49. | Despite notice, Grindr failed to "warn users of the possibility [of] becoming a victim of violence and harassment." *Herrick* FAC ¶¶ 37, 66. |

It thus makes no difference what Plaintiffs call their claims or how they characterize them. *Barnes*, 570 F.3d at 1101-03. Because each would obligate Discord to more perfectly monitor for, block, or remove user content—the test Plaintiffs advocate (Opp. 6-8)—Section 230 bars them.

***Negligence.*** This claim faults Discord for its allegedly "terrible safety standards" that allowed 764 to "grow and thrive" on the platform. Opp. 8. Plaintiffs argue this duty arises from Discord's "affirmative conduct," *id.*, but that conduct is *publication* and Discord's alleged "fail[ure] to moderate content." *Yolo*, 112 F.4th at 1182. Plaintiffs do not dispute that avoiding

[3] First Am. Compl., *Doe v. Grindr Inc.*, 2:23-cv-02093-ODW-PDx, ECF No. 36 (C.D. Cal. filed Apr. 27, 2023).
[4] Compl., *Doe v. MySpace, Inc.*, No. 1:06-cv-00983-SS, ECF No. 35-1 (W.D. Tex. filed Dec. 13, 2006).
[5] First Am. Compl., *Herrick v. Grindr LLC*, No. 1:17-CV-00932 (VEC), ECF No. 34 (S.D.N.Y. filed Apr. 12, 2017).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

liability would require Discord to monitor for and block 764 members' content, they just frame that content moderation as "corporate-level decision[s]" not to hire more moderators or adopt better safeguards. Opp. 1, 11-12. But Section 230 bars *any* claim imposing publication duties, and a publisher is anyone "whose business is publication." *Barnes*, 570 F.3d at 1102.

*In re Social Media Addiction*, 702 F. Supp. 3d 809, 830-31 (N.D. Cal. 2023) (Opp. 8) applied Section 230 *to dismiss* claims that apps enabled minors to connect with strangers, allowed "private content," and failed to block content. It also *confirmed* Section 230 bars claims alleging an online service "should have used age-verification to … limit platform access to children." *Addiction*, 702 F. Supp. 3d at 829-30 (approving *MySpace*, 528 F.3d at 422); *see also Grindr*, 128 F.4th at 1153 (barring same duty). The court refused to apply Section 230 to claims alleging social media was addictive because of supposedly content-independent features not at issue here. *Addiction*, 702 F. Supp. 3d at 829; *see also Commonwealth v. Meta Platforms, Inc.*, 277 N.E. 3d 166, 189 (Mass. 2026) (Opp. 10) (approving *Grindr*, 128 F.4th at 1153, agreeing Section 230 bars claims for enabling predatory communications).[6]

***Strict Liability: Not Reasonably Safe Design.*** The Opposition contends this claim treats Discord as a manufacturer, not a publisher, because it faults Discord's "defective design." Opp. 7, 8. These are just labels. The "designs" are *content moderation practices* that supposedly "facilitate[d] introductions between perpetrators and victims." Opp. 3, 7. But just as the *Grindr* plaintiff could not use jargon to disguise his content-moderation claims, Plaintiffs cannot evade Section 230 by purporting to challenge Discord's "content moderation infrastructure" and design, Compl. ¶¶ 12, 91, 155, 169b. *Grindr*, 128 F.4th at 1153-54; *see also Yolo*, 112 F.4th at 1180; *K.B.*, 768 F. Supp. 3d at 1064-66 (rejecting claims Meta lacked safeguards to prevent sex trafficking).

---

[6] The trial court orders denying demurrers and motions for summary adjudication in the California social media addiction cases, *Smith v. TikTok*, No. 22STCV21355 (Cal. Super. Ct. Nov. 5, 2025) (Opp. 10), *Social Media Cases*, JCCP No. 5255 (Cal. Super. Ct. Dec. 30, 2022) (Opp. 10), *K.G.M. v. Meta*, No. 23SMCV03371 (Cal. Super. Ct.) (Opp. 11, 12), are equally inapposite.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Ignoring these decisions, Plaintiffs cite *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021) (Opp. 1, 8-9). But *Lemmon* concerned claims that a feature allowing app users to create a filtered image showing their car's speed was defective because it encouraged reckless driving. 995 F.3d at 1088-89. Because that risk existed even if users never published the image, the plaintiff's claims did not fault the app for failing to block or remove user content. *Grindr* and other courts rejected *Lemmon* on this basis. *See Grindr*, 128 F.4th at 1153; *Yolo*, 112 F.4th 1180; *K.B.*, 768 F. Supp. 3d at 1065-66; *L.W. v. Snap, Inc.*, 675 F. Supp. 3d 1087, 1097 (S.D. Cal. 2023).

*Doe 1 v. Twitter, Inc.*, 148 F.4th 635 (9th Cir. 2025) (Opp. 9) *dismissed* design-defect claims alleging Twitter amplified and failed to promptly remove harmful user content. 148 F.4th at 645-47. The surviving claim alleged Twitter's reporting tool was difficult to access, only available to Twitter users, and required identifying details. *Id*. Far from alleging such defects, the Complaint *admits* Discord received, acted on, and even reported 764 members to authorities. Compl. ¶¶ 116-20. The Complaint alleges Discord's "average response time to general reports" is too long. Compl. ¶¶ 89, 139, 169b. But that is precisely the type of liability dismissed in *Twitter*. 148 F.4th at 645-46 (Section 230 barred duty to block reported CSAM more promptly); *see also Zeran*, 129 F.3d at 332-33 (Opp. 6) (Section 230 bars "[l]iability upon notice").

Plaintiffs' remaining authorities warrant no significant attention. *A.M. v. Omegle.com, LLC*, 614 F. Supp. 3d 814 (D. Or. 2022) (Opp. 10) is an outlier that now conflicts with *Grindr*, 128 F.4th 1153-55, and every district court to consider similar claims—including against the same defendant. *See M.H. v. Omegle.com, LLC*, 2022 WL 93575, at *1 (M.D. Fla. 2022), *aff'd*, 122 F.4th 1266 (11th Cir. 2024); *Doe v. Grindr Inc.*, 709 F. Supp. 3d 1047, 1057 n.4 (C.D. Cal. 2023), *aff'd*, 128 F.4th 1148. And even if *Neville v. Snap*, No. 22STCV333500 (Cal. Super. Ct. Jan. 2, 2024) were citable, it is foreclosed by the opposite decision in *Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

***Strict Liability: Failure to Warn.*** Plaintiffs claim Discord was obligated to warn users about 764 because Discord had actual notice that its members conspired through messages on the app. Opp. 8-9, 12-13. Plaintiffs rely on *Internet Brands*, which again differs because there was no allegation that the defendant website "transmitted any potentially harmful messages between Jane Doe" and her assailants. 824 F.3d at 852. The case only preserves claims predicated on *off-platform* conspiracies where a duty to warn does *not* (and could not) require mitigating the harmful effects of user content since, in such cases, there is no user content to edit. *See Yolo*, 112 F.4th at 1180-81 (distinguishing *Internet Brands*); *Herrick*, 765 F. App'x at 591 (same); Mot. 10-11. The Complaint alleges the opposite: 764 members *communicated on Discord* to plot crimes. Compl. ¶¶ 27-28, 78-81, 161-62; Opp. 3-4, 8-9. The asserted duty is thus to monitor for and warn of *user content*. *Grindr*, 128 F.4th at 1154; *In re Facebook*, 625 S.W.3d at 93 (same).

It makes no difference that 764 is not a "one-off bad guy." Opp. 7, 12. The Ninth Circuit rejected allegations in *Gonzalez v. Google LLC*, 2 F.4th 871, 881-82, 891-92 (9th Cir. 2021) (Opp. 6-7) that YouTube harbored and failed to address ISIS-related communities despite knowing the organization used YouTube for material support. And the Second and D.C. Circuits reached the same conclusion with respect to Hamas and other groups. *Force v. Facebook, Inc.*, 934 F.3d 53, 59-61, 65 (2d Cir. 2019); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1356, 1359 (D.C. Cir. 2014).

***Outrage.*** Plaintiffs concede the duties underlying their outrage claim overlap with their negligence claim (Opp. 8), so the claim fails for the same reasons. *Supra* pp. 5-6; *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (Mot. 11); *Herrick*, 765 F. App'x at 590-91 (Section 230 barred intentional infliction of emotion distress claim).

***Trafficking.*** The Opposition asserts "sex trafficking claims are not entitled to Section 230 immunity." Opp. 12. But as Discord noted (Mot. 12 n. 3), the Fight Online Sex Trafficking Act, 47 U.S.C. 230(e)(5)(a), does not exempt *state* civil sex trafficking claims. *See J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *4-7 (N.D. Cal. 2020); *Doe v. Reddit, Inc.*, 2021 WL 4348731, at *5



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(C.D. Cal. 2021). It exempts only certain *federal* sex trafficking claims based on conduct that constitutes a federal crime—a crime Plaintiffs do not even purport to allege. *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022). The "trafficking activity" from which Discord must allegedly refrain is providing the platform "through which" 764 members could communicate. Opp. 9, 21; Compl. ¶¶ 173-76, 178. Section 230 bars trafficking claims holding a service liable for providing tools that facilitate communication among users for illegal activity. *Grindr*, 128 F.4th at 1152-53; *e.g.*, *K.B.*, 768 F. Supp. 3d at 1063 (Mot. 12).

*Doe v. MindGeek USA Inc.*, 558 F. Supp. 3d 828 (C.D. Cal. 2021) (Opp. 9) supports dismissal. State sex-trafficking claims survived Section 230 there because a website's operators *helped create* the CSAM at issue. *Id.* at 840-41. The decision affirmed that Section 230 would have applied if, as here, the site "merely provide[d] a neutral platform for third parties to post whatever they like." *Id.* at 842; *see also id.* at 835 (FOSTA did not apply to state trafficking claim).

## III. THE FIRST AMENDMENT BARS PLAINTIFFS' CLAIMS

Plaintiffs argue their "claims do not relate to Discord's speech." Opp. 12. But the First Amendment not only forecloses claims targeting a speaker's own speech, *e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 451, 460-61 (2011), it also shields intermediaries from liability for unprotected third-party speech they unknowingly publish. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 277-80 (1964). This rule comes from *Smith v. California*, 361 U.S. 147, 153-54 (1959) (Mot. 13), which held a bookstore could not be liable for distributing obscene books without knowledge of what made those books obscene. Because Plaintiffs do not allege Discord *knowingly* disseminated any 764 communications with anyone, much less Taylor, the First Amendment bars their claims.

This is not a fact question. *Cf.* Opp. 12. Like Section 230, the First Amendment must be applied "at the earliest possible junction" to prevent the costs and "harassment of lawsuits." *Green v. Miss USA, LLC*, 52 F.4th 773, 800 (9th Cir. 2022) (quotation omitted). And *Anderson v. TikTok, Inc.*, 116 F.4th 180 (3d Cir. 2024) (Opp. 12) did not address *any* First Amendment defense.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Splitting with the Ninth Circuit's decision in *Dyroff*, 934 F.3d at 1098, as well as the Second, Fourth, Sixth, Eleventh, and D.C. Circuits plus two state appellate courts, *Anderson* held only that Section 230 did not bar claims targeting TikTok's recommendation algorithm. 116 F.4th at 184. That conclusion, though flawed, is irrelevant since Plaintiffs allege *nothing like that* here.

## IV. PLAINTIFFS CANNOT STATE ANY CLAIM

### A. No Proximate Causation.

Plaintiffs do not dispute their claims require plausible proximate causation, nor that their causation theory rests on Discord's alleged knowledge of and failure to stop 764. Compl. ¶ 117. They argue the injuries were foreseeable, but foreseeability is not an element. *Rikstad v. Holmberg*, 76 Wn.2d 265, 268 (1969). Even if it were, the general knowledge Plaintiffs allege is insufficient to show foreseeability. *See Fields v. Twitter, Inc.*, 881 F.3d 739, 747-48, 750 (9th Cir. 2018) (plaintiffs failed to plausibly allege Twitter proximately caused deaths based on knowing provision of accounts to ISIS members absent connection between perpetrator of the attack and Twitter) (Mot. 16); *Crosby v. Twitter, Inc.*, 921 F.3d 617, 622-25 (6th Cir. 2019) (Mot. 16).

In the cases on which the Opposition relies, Opp. 13-14, the defendant knew about a risk posed by a specific individual. *See, e.g.*, *Washburn v. City of Fed. Way*, 178 Wn.2d 732, 739, 741 (2013) (death foreseeable where police knew decedent reported boyfriend for violence); *Adgar v. Dinsmore*, 26 Wn. App. 2d 866, 888 (2023) (collision foreseeable where owner left truck idling in presence of visibly intoxicated individual). Plaintiffs fail to allege Discord knew Taylor's abusers were 764 members, that chats with Taylor occurred in a server Discord knew was associated with 764, or that individuals who abused him had engaged in similar conduct before.

*Scott v. Amazon.com, Inc.*, 6 Wn.3d 1 (2026) (Opp. 14), does not help. Under Washington's pleading standard—under which even "hypothetical facts" may be considered—the Court held that a suicide *standing alone* did not *categorically* break the causal chain when Amazon allegedly promoted and sold substances used to commit suicide. *Id.* at 8, 13 The question here is not whether



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

suicide categorically breaks the causal chain, but whether the deliberate criminal conduct of Javan and L.S. constitutes a superseding cause. It does. *Washburn*, 178 Wn.2d at 739, 741. *See* Mot. 15.

### B. The Outrage Claim Fails.

The Complaint does not plausibly allege intentional or reckless conduct directed at them or Taylor or the physical presence necessary to support their personal claims. Mot. 17-18.

***No direction.*** Plaintiffs argues the directedness element requires only that the defendant have aimed its conduct at a particular audience, not a specific person. Opp. 16. The only case they cite—*Grimsby v. Samson*, 85 Wn.2d 52, 57 (1975)—does not discuss directedness. And the cases Discord cited show the opposite. *See R.M. v. King County*, 31 Wn. App. 2d 1057, 2024 WL 3327025, at *5 (2024) (directedness unmet where victim alleging county knew about trafficking operation only speculated that detective knew victim was involved).

***Not outrageous.*** Plaintiffs fail to establish Discord's alleged wrongdoing—failing to monitor for and block content used to contact victims—is actionably "outrageous." Mot. 17. Tortious or even criminal intent—even if "characterized by malice"—is not enough. 16 Wash. Prac., Tort Law & Practice § 14:11 (5th ed.)

***No physical presence.*** Plaintiffs' individual claims fail because they undisputedly were not physically present and "presence is a crucial element … when the conduct is directed at a third person." *Lund v. Caple*, 100 Wn.2d 739, 742 (1984).

### C. The Product Liability Claims Fail.

***Discord is not a product.*** Plaintiffs do not dispute that product liability does not apply to publishing, nor address the majority of cases Discord cited *refusing* to treat online services as products. Plaintiffs argue Discord provides "patented software with proprietary features specifically designed to enable strangers to find and interact with each other in real time, monetized through subscriptions and premium services, and distributed through commercial app marketplaces to a user base that is majority minors." Opp. 18. But the same could be said of the



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

services in Discord's cases. One court applying Washington law, for example, dismissed claims that an online game was responsible for third parties harassing the plaintiff. *Quinteros v. InnoGames*, 2022 WL 898560, at *2 (W.D. Wash. 2022), *aff'd*, 2024 WL 132241 (9th Cir. 2024). The sole case Plaintiffs cite, *Addiction*, 702 F. Supp. 3d at 849-54, found only that certain app features could be products under California law. Plaintiffs identify no such features here and ignore that another California court disagreed. *Social Media Cases*, 2023 WL 6847378, at *15-21 (Cal. Super. 2023).

***Obvious alleged risks.*** Plaintiffs dispute that dangers of online interactions are obvious, arguing Taylor was a child who lacked the capacity to understand. Opp. 18. But they have no answer to *Yolo*, which rejected claims made *by minors*. *Yolo*, 112 F.4th at 1181. Plaintiffs also *concede* that they and Taylor were aware of dangers *on Discord*. Taylor Decl. Ex. C at 5.

**D. The Negligence Claim Fails.**

The Opposition claims that "everyone has a duty to refrain from enhancing the foreseeable risk of harm to others." Opp. 20. But the authority it cites explains a special relationship is required where, as here, the allegations sound in nonfeasance. *Robb v. City of Seattle*, 176 Wn.2d 427, 436 (2013). Nor can Discord's operation of a communications platform be characterized as misfeasance. That is what Discord's cases hold, Mot. 21-22, and what the district court held in the *very case* Plaintiffs rely on: *Internet Brands* on remand *dismissed* the plaintiff's claims because the defendant *owed no duty*. 2016 WL 11824793, at *4 (C.D. Cal. 2016). The court rejected the same misfeasance argument because "allowing members to continue using the … website without warning them of the rape scheme does not, by itself, constitute the creation of the risk or peril."

**E. The Trafficking Claim Fails.**

***No labor, servitude, or sex acts.*** Plaintiffs do not dispute failing to allege that Taylor participated in any qualifying act—labor, servitude, or sex—required to state a trafficking claim. RCW 9A.40.100(1), (3). This omission is dispositive. Mot. 23.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

***No trafficking conduct.*** The Opposition claims Discord trafficked Taylor when it "provided" and "maintained" a communications service and "recruited" Taylor to use it. Opp. 21. That interpretation ignores that the object of the statute's operative verbs is "another person." RCW 9A.40.100(1), (3); Mot. 22. Read in context, these verbs contemplate custody or control over a human being, not the provision of a communication service. There are no plausible allegations that Discord "provided" or "maintained" Taylor's person or "recruited" Taylor to do anything. At most, Plaintiffs allege Discord marketed its service to young people everywhere. Compl. ¶¶ 3, 32, 47, 54. *Grindr* rejected this interpretation of 18 U.S.C. § 1591's similar definitions. 128 F.4th at 1155.

***No knowing trafficking.*** Plaintiffs argue Discord *generally knew* 764 exploited *other* children. Opp. 21-22. But those allegations do not establish Discord knowingly participated in *trafficking Taylor* or recklessly disregarded that *he specifically* would be engaged in prohibited conduct. Compl. ¶¶ 77-82, 89-90, 116-122, 175-176; *see Grindr*, 128 F.4th at 1155 (Mot. 23).

***No knowing benefit.*** The Opposition argues Discord "knows" its user growth depends on harboring sex criminals through lax content moderation. Opp. 22. But that theory is no different from claiming that ad revenue is a knowing benefit. *See Grindr*, 128 F.4th at 1155-56; *Reddit*, 51 F.4th at 1145-46 (both rejecting this theory). Plaintiffs do not allege Discord knowingly engaged in any conduct to cause Taylor to be trafficked *because* it expected benefits.

**CONCLUSION**

Discord respectfully seeks an order dismissing Plaintiffs' claims with prejudice.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Dated: June 9, 2026

By: /s/ *Ambika Kumar*
Ambika Kumar

Adam S. Sieff (WSBA #59792)
Marcy Blattner Micale (*pro hac vice*)
Sam F. Cate-Gumpert (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Tel: (213) 633-6800
Email: adamsieff@dwt.com
marcyblattnermicale@dwt.com
samcategumpert@dwt.com

Ambika Kumar (WSBA #38237)
Xiang Li (WSBA #52306)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Tel: (206) 622-3150
Email: ambikakumar@dwt.com
xiangli@dwt.com

*Attorneys for Defendant Discord Inc.*

*I certify that this memorandum contains 4,199 words, in compliance with the Local Civil Rules.*