THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COLBY TAYLOR, individually and as a personal representative of the ESTATE OF JAY TAYLOR, a deceased individual; LESLIE TAYLOR; individually and as a personal representative of the ESTATE OF JAY TAYLOR, a deceased individual<br><br>Plaintiffs,<br><br>vs.<br><br>DISCORD INC., a Delaware company,<br><br>Defendant(s). | No. 3:26-cv-05245-BHS<br><br>**PLAINTIFFS' OPPOSITION TO DISCORD'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>ORAL ARGUMENT REQUESTED |



C.A. GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

**TABLE OF CONTENTS**


**Page**

INTRODUCTION ... 1

FACTUAL BACKGROUND ... 3

LEGAL STANDARD ... 5

ARGUMENT ... 5

A. The Taylors' Claims Are Timely. ... 5

1. The Discovery Rule Tolls the Limitations Period. ... 6
2. The Washington State Trafficking Claim Has Its Own Statutory Limitations Rule. ... 7
3. The Federal Trafficking Claim Also Has Its Own Statutory Limitations Rule. ... 8

B. Section 230 Does Not Bar Plaintiffs' Claims. ... 8

1. Plaintiffs Do Not Treat Discord as a Publisher or Speaker. ... 9
2. *Grindr* Reinforces the Distinction Between This Case and an Ordinary Failure to Moderate. ... 10
3. *Yolo* Does Not Change the Analysis. ... 12
4. Section 230 Does Not Protect Discord from Liability for its Own Bad Conduct. ... 12
5. The Federal Trafficking Claim Falls Within FOSTA's Express Carveout. ... 13

C. The First Amendment Does Not Bar Plaintiffs' Claims. ... 14

D. The Taylors Properly Pleaded All State-Law Claims. ... 15

1. Discord Had Actual, Specific Notice of 764 and the Danger It Posed. ... 15
2. Discord Proximately Caused Jay's Death. ... 16
3. The Taylors Properly Pleaded Outrage. ... 17
   a. Discord's Conduct Was Extreme and Outrageous. ... 18
   b. The SAC Pleads Intentional or Reckless Conduct. ... 18
   c. The Conduct Was Directed at Jay and His Family. ... 19
   d. The Taylors' Physical Presence Does Not Resolve the Claims on the Pleadings. ... 19
4. Discord Is a Product Subject to Washington Product Liability Law. ... 19
5. Discord Owed and Breached Its Duty of Care. ... 21
6. The Taylors Properly Pleaded a Claim Under Wash. Rev. Code § 9A.40.100. ... 23
7. The Taylors Plausibly Pleaded a Civil TVPRA Claim Based on a Violation of § 1591. ... 25

CONCLUSION ... 27




C.A. GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.B. v. Salesforce*,
123 F.4th 788, 793–94 (5th Cir. 2024) ..... 2, 9

*Adgar v. Dinsmore*,
26 Wash. App. 2d 866, 875, 530 P.3d 236 (2023) ..... 16

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) ..... 5, 26

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096, 1100–02 (9th Cir. 2009) ..... 2, 9, 12

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732, 740–44 (9th Cir. 2024) ..... 2, 9

*Campbell v. ITE Imperial Corp.*,
107 Wash. 2d 807, 733 P.2d 969 (1987) ..... 16

*Centurion Props. III v. Chi. Title Ins.*,
186 Wash. 2d 58, 65 (2016) ..... 22

*Clare v. Saberhagen Holdings, Inc.*,
129 Wash. App. 599, 602 (2005) ..... 6

*Doe v. Grindr Inc.*,
128 F.4th 1148 (9th Cir. 2025) ..... passim

*Doe v. SexSearch.com*,
551 F.3d 412 (6th Cir. 2008) ..... 21

*Doe v. Webgroup Czech Republic*,
AS, No. 25-2424, 2026 WL 2334146 (9th Cir. Aug. 12, 2026) ..... 25, 26

*Does 1-6 v. Reddit, Inc.*,
51 F.4th 1137, 1141–42 (9th Cir. 2022) ..... 13, 25, 26, 27

*Estate of Bride v. Yolo Techs., Inc.*,
112 F.4th 1168, 1175–82 (9th Cir. 2024), *cert. denied, 145 S.Ct. 1435, 221 L.Ed.2d 558 (2025)* ..... 2, 9, 11, 12

*Ewer v. Goodyear Tire & Rubber Co.*,
4 Wash. App. 152, 162, 480 P.2d 260 (Wash. Ct. App. 1971) ..... 20



C.A. GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

*Gonzalez v. Moran*,
724 F. Supp. 3d 1203, 1208 n.16 (E.D. Wash. 2024) ........................................................ 5

*Grigsby v. Valve Corp.*,
No. C12-0553JLR, 2013 WL 12310666, at *6 (W.D. Wash. Mar. 18, 2013)............................. 20

*HomeAway.com, Inc. v. City of Santa Monica*,
918 F.3d 676, 682 (9th Cir. 2019) ........................................................................................ 9

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
702 F. Supp. 3d 809 (N.D. Cal. 2023) .................................................................................. 20

*Jane Doe No. 14 v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) ......................................................................................... passim

*Kloepfel v. Bokor*,
149 Wash. 2d 192, 195, 66 P.3d 630 (2003)......................................................................... 18

*Lemmon v. Snap, Inc.*,
995 F.3d 1085, 1092–94 (9th Cir. 2021) ................................................................... 2, 10, 12

*Lund v. Caple*,
100 Wash. 2d 739, 675 P.2d 226 (1984)......................................................................... 18, 19

*M.L. v. Craigslist, Inc.*,
No. C19-6153 BHS-TLF, 2022 WL 1210830, at *10 (W.D. Wash. Apr. 25, 2022)............ passim

*McCarthy v. Amazon.com, Inc.*,
No. 23-35584, 2026 WL 700531 (9th Cir. Mar. 12, 2026)...................................................... 3

*Quinteros v. InnoGames*,
No. C19-1402RSM, 2022 WL 898560, at *7 (W.D. Wash. Mar. 28, 2022), aff'd in part, rev'd in part, and remanded, No. 22-35333, 2024 WL 132241 (9th Cir. Jan. 8, 2024) ............................. 20

*Robb v. City of Seattle*,
176 Wash.2d 427, 435–38 (2013).................................................................................... 22, 23

*Schuck v. Beck*,
19 Wash. App. 2d 465, 485–86, 497 P.3d 395 (Wash. Ct. App. 2021)....................................... 20

*Scott v. Amazon.com, Inc.*,
6 Wash. 3d 1, 583 P.3d 1155 (2026)................................................................................... 3, 17

*Smith v. California*,
361 U.S. 147 (1959)............................................................................................................... 14



C.A.GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

*Trujillo v. Northwest Trustee Services, Inc.*,
183 Wash. 2d 820, 840 (2015) .......... 18

*United States v. Clark*,
435 F.3d 1100, 1114 (9th Cir. 2006) .......... 25

*United States v. Raniere*,
55 F.4th 354, 363–64 (2d Cir. 2022) .......... 25

*United States v. Todd*,
627 F.3d 329, 334 (9th Cir. 2010) .......... 26

*United States v. Wearing*,
865 F.3d 553, 556 (7th Cir. 2017) .......... 26

*Washburn v. City of Fed. Way*,
178 Wash.2d 732, 757, 310 P.3d 1275 (2013) .......... 16, 22

**Statutes and Rules**

18 U.S.C. § 1595(c) .......... 8

18 U.S.C. § 1595(c)(1) .......... 8

18 U.S.C. § 1595(c)(2) .......... 8

18 U.S.C. § 1591(e)(3) .......... 25

18 U.S.C. 2258A .......... 11

47 U.S.C. § 230(c)(1) .......... 9

47 U.S.C. § 230(e)(5)(A) .......... 13

RCW § 7.72.010(3) .......... 20

RCW § 7.72.060(3) .......... 6

RCW § 9A.40.100 .......... 7, 23, 24

RCW § 9A.40.100(1) .......... 23

RCW § 9A.40.100(3) .......... 23

RCW § 9A.82.100(7) .......... 7, 8

**Other Authorities**

Restatement (Second) of Torts § 302B .......... 22, 23

Restatement (Second) of Torts § 46(2)(a) .......... 18



C.A. GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

## INTRODUCTION

By the time thirteen-year-old Jay Taylor joined Discord, the company had spent months documenting the activities of 764—a criminal network using its platform to sexually exploit, torture, and drive children toward suicide—and Shahriar Javan, 764's leader and eventually Jay's murderer. Discord's own Trust and Safety team had submitted 58 CyberTipline reports concerning 764 in the summer of 2021. This was not an emerging threat Discord could not have anticipated or an isolated incident involving an unknown bad actor. Discord knew the organization, its leader, its mission, and that its platform was being used to find, target, and abuse children. Yet Discord continued operating the same product without safeguards against the danger it had documented.

Jay joined Discord in January 2022 looking for a pen pal who shared his love of crocheting. Within hours, members of 764 targeted him. Jay's last moments were spent hanged from a chain-link fence outside a grocery store while members of the network watched his suicide on livestream. His death was not an unforeseeable misuse of a neutral communications service. It was the precise type of harm Discord already knew 764 was inflicting on children.

Discord now asks this Court to dismiss the case before discovery, recasting Plaintiffs' claims as a demand that Discord perfectly moderate third-party messages. That is not what the Second Amended Complaint ("SAC") alleges.

The SAC alleges that Discord designed, marketed, and operated a product that invited children onto its platform while allowing adult strangers to contact them privately, without age or identity verification. Discord maintained inadequate safety and reporting infrastructure, made safety representations to users and parents, and continued operating the product after acquiring specific, independent knowledge that a named criminal organization led by Javan was using Discord to systematically exploit children and drive them toward suicide. The SAC alleges that six months



C.A. GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

before Javan commanded a young girl, L.S., to orchestrate Jay's suicide with him, Discord had actual knowledge that Javan was compelling children, including L.S., to perform extreme acts of self-harm on Discord. Discord's staff knew specifically about the critical actors and locations – the perpetrators, victims, and Discord channels – where this conspiracy was escalating. And Discord sat back as it snowballed until Jay became the target. Plaintiffs' claims arise from Discord's own conduct and corporate decisions. They do not treat Discord as the publisher or speaker of Jay's abusers' messages.

Discord now argues that *Doe v. Grindr Inc.*, 128 F.4th 1148 (9th Cir. 2025), requires dismissal because Discord knew about 764, Javan, and other child victims, but not Jay specifically. That argument is wrong.[1] *Grindr* expressly preserved *Jane Doe No. 14 v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016), where the platform had independent knowledge of a specific criminal conspiracy. *Grindr* distinguished *Internet Brands* because the plaintiff there had alleged independent knowledge that *Grindr* did not possess. *Grindr,* 128 F.4th at 1154. Here, Plaintiffs allege precisely that kind of independent knowledge. Discord's own internal reports identified 764, its leader, its activities, its victims, (including L.S.), the platform's instrumentality in that scheme, and the risk of sexual exploitation and death it posed to children—months before Jay died.

Discord's Section 230 argument therefore depends on converting claims based on its own conduct into claims about its users' speech. The Ninth Circuit and other circuit courts have repeatedly rejected that approach. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–02 (9th Cir. 2009); *Internet Brands*, 824 F.3d at 851–53; *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092–94 (9th Cir. 2021); *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 740–44 (9th Cir. 2024); *Estate of Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1175–82 (9th Cir. 2024), *cert. denied, 145 S.Ct. 1435, 221 L.Ed.2d 558 (2025)*; *A.B. v. Salesforce*, 123 F.4th 788, 793–94 (5th Cir. 2024).

---

[1] And Discord's counsel knows that. Both parties in this case are represented respectively by the same attorneys in *Doe v. Grindr.*



C.A. GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

The First Amendment supplies no separate immunity for Discord's own tortious conduct. Plaintiffs do not seek to hold Discord liable for distributing content of which it was unaware. The SAC alleges that Discord knew what 764 was doing on its platform and continued operating without reasonable safeguards or warnings. The First Amendment does not immunize a company from liability for its own conduct merely because third-party speech forms part of the factual background.

Nor can Discord resolve causation on the pleadings. Washington's Supreme Court recently held in *Scott v. Amazon.com, Inc.*, 6 Wash. 3d 1, 583 P.3d 1155 (2026), that whether suicide was a foreseeable consequence of a defendant's conduct could not be resolved at the motion-to-dismiss stage where foreseeability was factually disputed. The Ninth Circuit reached the same conclusion in *McCarthy v. Amazon.com, Inc.*, No. 23-35584, 2026 WL 700531 (9th Cir. Mar. 12, 2026) holding that duty to warn, breach, and proximate causation presented factual questions and that suicide was not a superseding cause as a matter of law. Here, Plaintiffs allege that Discord had actual, documented knowledge that 764 was driving children toward self-harm and suicide, and knew the identity of the man leading that effort, before Jay died.

Finally, Discord's attempt to avoid product liability by labeling its product a "service" does not resolve Plaintiffs' claims. The SAC alleges defects in Discord's design and operation—not defects in the messages its users posted. Discord's chosen label does not foreclose that inquiry.

The Court should deny the motion in its entirety.

## FACTUAL BACKGROUND

Discord is a $15 billion social platform with approximately 150 million monthly active users. SAC ¶¶ 10, 43. It markets itself as the place "where the world talks, hangs out and builds relationships." Id. ¶¶ 45–46. More than 60% of its users are between thirteen and twenty-four years old, and its average user is approximately sixteen. Id. ¶¶ 56–57. Discord markets directly to children



C.A. GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

through school clubs and Student Hubs and promotes itself as a "fun and safe space for teens." Id. ¶¶ 47, 58. Yet Discord has no meaningful age or identity verification system. Id. ¶ 9. At the relevant time, adults could send direct messages to minors without restriction. Id. ¶¶ 52–53. Its servers facilitate text, voice, video, livestreaming, and private messaging. Id. ¶¶ 39–41. The product allows users to communicate with strangers based on shared interests, without verifying who those strangers are.

In 2021, the 764 network established itself on Discord and used the platform to produce and distribute child sexual abuse material, coerce children into self-harm, and push victims toward suicide. SAC ¶¶ 13–20. Discord's own Trust and Safety team filed 58 CyberTipline reports concerning 764's activity between June and August 2021.[2] Id. ¶ 28. Dallas Police separately reported 764's activity on Discord six times during the same period. Id. ¶ 27.

Discord knew 764 existed, knew it was operating on Discord, and knew what it was doing to children. Its own reporting documented that conduct. In July 2021, a fifteen-year-old girl livestreamed a suicide attempt after 764 members tormented her on Discord. SAC ¶ 132(a). In November 2021, a man was goaded toward suicide in a Discord "suicide chat." Id. ¶ 132(d). Graphic images of children being tortured were distributed on Discord that same month. Id. ¶ 132(c). Discord also possessed information about Javan's prior communications and activities. Id. ¶¶ 117–22, 132–36. Still, Discord continued operating the same product, with the same architecture and the same ability for adults to communicate privately with children. Then came Jay.

In January 2022, thirteen-year-old Jay Taylor joined Discord looking for a pen pal who shared his interest in crocheting. SAC ¶¶ 107–14. Within hours, members of 764 targeted him. A teenage 764 member, L.S., drew Jay into a suicide pact. *Id.* ¶¶ 109, 113–14. Javan participated in the scheme

[2] Discord's reporting was not an act of Good Samaritan-ism. 18 U.S.C. 2258A(e) mandates fines or 1 year imprisonment of online platforms that fail to report "facts that give reason to suspect that a child has suffered an incident of child abuse."



C.A. GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

and communicated with Jay by telephone. Id. Jay was ultimately instructed to kill himself and did so on January 17, 2022. *Id*.

The SAC alleges that Discord's role extended beyond the messages exchanged with Jay. Discord created and operated the environment in which 764 found and targeted children. It marketed the platform to children, permitted adults to communicate privately with minors, lacked meaningful identity assurance, maintained inadequate reporting and moderation infrastructure, continued providing access to 764 despite its own knowledge of the organization's activities, and failed to warn children and families about the known danger.

This is a case about Discord's product, it's knowledge of a devastating risk to the children invited to use it, and its own conduct of converting that risk into reality—not about what Jay's abusers said.

**LEGAL STANDARD**

A complaint survives a motion to dismiss if it alleges facts that, accepted as true and construed in the light most favorable to the plaintiff, state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Moran*, 724 F. Supp. 3d 1203, 1208 n.16 (E.D. Wash. 2024). Plausibility does not require probability. It requires enough factual content to allow the court to draw the reasonable inference that the defendant is liable. *Id*. The SAC meets that standard.

**ARGUMENT**

**A. The Taylors' Claims Are Timely.**

Discord's limitations argument assumes that the Taylors knew, when Jay died in January 2022, the facts necessary to bring this case. They did not. The argument also fails independently as to the state and federal trafficking claims, each of which has its own statutory limitations rule.



C.A.GOLDBERG PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

**1. The Discovery Rule Tolls the Limitations Period.**

Under Washington's common law discovery rule: "[A] cause of action does not accrue until a party knows or reasonably should have known the essential elements of the possible cause of action." *Clare v. Saberhagen Holdings, Inc.*, 129 Wash. App. 599, 602 (2005). See also *M.L. v. craigslist, Inc.*, No. C19-6153 BHS-TLF, 2022 WL 1210830, at *10 (W.D. Wash. Apr. 25, 2022) (Settle, J.) (applying that rule). For the Taylors' product liability claims, Washington's Product Liability Act separately provides a discovery-based limitations period. Wash. Rev. Code § 7.72.060(3).

The question is not whether the Taylors knew in January 2022 that Jay had died or used Discord. It is when they knew, or reasonably should have known, the facts connecting his death to 764 and connecting 764's conduct to Discord's own knowledge, design, and corporate decisions. Those facts only began to emerge in 2025, following the German criminal prosecution of Javan. The Taylors did not have access to Jay's online accounts until the FBI returned his phone and laptop in 2025. Taylor Decl. ¶ 17. Critical information about the people responsible for Jay's death emerged only after Javan's arrest in June 2025. The Associated Press published its investigation on June 18, 2025, and the facts were discussed publicly following Javan's arrest. Taylor Decl., Exs. A–B. The Washington Post likewise reported on law enforcement's efforts to identify the people responsible for Jay's death. Id., Ex. C.

Discord cannot turn the Taylors' limited knowledge immediately after Jay's death into knowledge of the fact````````ual predicate for these claims. Indeed, Discord's own motion relies on facts about 764's organization, Discord's prior reports, the relationship between 764 and Discord, Jay, L.S., Javan, and the final phone call. Those facts distinguish this case from an ordinary claim



C.A. GOLDBERG PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

arising from an isolated criminal misuse of an online service. They also concern information that was not available to the Taylors and remains largely in Discord's possession.

Discord now faults Jay's parents for not suing the phone company, a twelve-year-old Discord victim, or one of the many predators on Discord. That argument misses the point. Plaintiffs challenge Discord's own conduct and the product it continued operating despite its knowledge of a specific, extraordinary danger. The full factual record necessary to evaluate that conduct was not available to the Taylors in January 2022. Knowing that Jay died is not knowing that Discord had independently documented the criminal organization responsible for his death and continued operating its platform without safeguards against that known danger.

At minimum, accrual presents factual questions that cannot be resolved against Plaintiffs on the pleadings. See *M.L. v. craigslist, Inc.*, 2022 WL 1210830, at *10 (denying summary judgment because "whether [the plaintiff] exercised due diligence is a question of fact that the Court cannot determine on this summary judgment record").

**2. The Washington State Trafficking Claim Has Its Own Statutory Limitations Rule.**

The Washington trafficking claim is independently governed by Wash. Rev. Code § 9A.82.100(7), Washington's Criminal Profiteering Act limitations provision for offenses under Wash. Rev. Code § 9A.40.100, which this Court has already construed. A civil action may be commenced within three years after discovery of the pattern of criminal profiteering activity, or after the pattern should reasonably have been discovered, or "in the case of an offense that is defined in RCW 9A.40.100 . . . within three years after the final disposition of any criminal charges relating to the offense." Wash. Rev. Code § 9A.82.100(7). See *M.L. v. craigslist, Inc.*, 2022 WL 1210830, at *11 (quoting the statute and recognizing that the limitations period may run from "the final disposition of any criminal charges relating to the offense").



C.A.GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

Javan was arrested on June 18, 2025, SAC ¶ 144, and his criminal trial remains ongoing. The final-disposition provision of Wash. Rev. Code § 9A.82.100(7) therefore independently keeps the limitations period open. The trafficking claim cannot be dismissed on the theory that every claim accrued when Jay died.

**3. The Federal Trafficking Claim Also Has Its Own Statutory Limitations Rule.**

Discord's limitations argument independently fails as to the Taylors' federal trafficking claim. Congress expressly provided a separate limitations period for civil actions under the Trafficking Victims Protection Reauthorization Act ("TVPRA"). Under 18 U.S.C. § 1595(c), an action must be commenced by the later of (1) ten years after the cause of action arose, or (2) ten years after the victim reaches eighteen years of age, if the victim was a minor at the time of the alleged offense.

Jay was a minor—thirteen years old—at the time of the trafficking conduct alleged, which is what triggers § 1595(c)(2)'s extended, minor-protective limitations period in the first place. But the Taylors do not need that extended period to be timely: even under the baseline measure in § 1595(c)(1)—ten years from when the cause of action arose in January 2022—the Taylors' 2026 filing falls well within the statutory window. Discord cannot impose a shorter limitations period on a federal claim for which Congress expressly established its own, more generous accrual-based deadline for minor trafficking victims.

Accordingly, even if the Court were to reject the Taylors' discovery-rule arguments as to any state-law claim, the federal TVPRA claim remains timely under the statute governing that claim.

**B. Section 230 Does Not Bar Plaintiffs' Claims.**

Discord's Section 230 argument forcibly collapses every claim into the proposition that "third-party messages caused Jay's death." That is neither the basis for Plaintiffs' claims nor the Section 230 inquiry.



C.A.GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

Section 230 provides that: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The Ninth Circuit applies a three-part test: (1) whether the defendant is an interactive computer service, (2) whether the plaintiff seeks to treat it as a publisher or speaker, and (3) whether the information at issue was provided by another information content provider. *Barnes*, 570 F.3d at 1100–01.

The critical inquiry is the second prong: whether the duty alleged derives from the defendant's status or conduct as a publisher or speaker. *Id*. at 1102. The Ninth Circuit has rejected a generalized "but-for" test under which Section 230 would immunize anything that would not have occurred absent third-party content. See *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019); *Jane Doe No. 14 v. Internet Brands, Inc.*, 824 F.3d 846, 853 (9th Cir. 2016).

The Ninth Circuit's more recent cases continue to apply that duty-based inquiry. See *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 740–44 (9th Cir. 2024); *Estate of Bride*, 112 F.4th at 1175–82; *Grindr Inc.*, 128 F.4th at 1151–55; see also *Salesforce*, 123 F.4th at 793–94 (holding that statutory claims for knowingly participating in or benefiting from a trafficking venture do not derive from the platform's status or conduct as a publisher). The SAC survives that analysis.

**1. Plaintiffs Do Not Treat Discord as a Publisher or Speaker.**

The duties underlying Plaintiffs' claims do not arise from Discord's status as a publisher. The negligence and outrage claims concern Discord's own conduct in designing and operating a platform used by the young people it markets to; failing to implement reasonable safety infrastructure; permitting unrestricted communications between adults and minors; failing to implement meaningful age and identity verification; and continuing to operate the platform after learning that 764 was using it to systematically exploit children.



C.A.GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

The product liability claims concern the design and safety of Discord's product. The failure-to-warn claim concerns Discord's failure to warn about a danger it independently knew existed. The trafficking claims concern Discord's alleged participation in and benefit from the trafficking venture. None requires the Court to decide whether a particular message should have been published.

That distinction is dispositive under *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021). There, the Ninth Circuit allowed a product liability claim to proceed because the alleged duty had "nothing to do with" editing, monitoring, or removing user content. *Id*. at 1092–93. The duty to avoid designing a product that encouraged dangerous conduct was independent of Snap's publishing function. *Id*. at 1093.

The same distinction applies here. Discord repeatedly characterizes Plaintiffs' claims as requiring it to "monitor," "block," and "remove" third-party messages. But that is Discord's characterization, not the SAC's. The SAC identifies affirmative design and operational choices that increased the risk of harm independently of any particular message: making the product accessible to children and adults alike; permitting private communications between adults and minors; choosing its age- and identity-verification architecture; choosing its reporting and moderation infrastructure; and continuing to operate after learning that 764 was using Discord to exploit children.

Those decisions do not become "publishing" simply because third-party communications occurred on the platform.

**2. *Grindr* Reinforces the Distinction Between This Case and an Ordinary Failure to Moderate.**

Discord's analysis of *Grindr* stops short of its own conclusion. *Grindr* held that Section 230 barred claims where the plaintiff alleged that Grindr should have prevented adults and minors from communicating through the application. 128 F.4th at 1153–54. But the Ninth Circuit expressly



C.A. GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

recognized that *Internet Brands* remained good law and specifically distinguished it. In *Internet Brands*, the defendant knew from an outside source that two men were using its website to identify targets for a rape scheme. 824 F.3d at 848–49. The plaintiff's failure-to-warn claim was not based on the defendant's failure to remove content or monitor publication, *Id.* at 851; it was based on the defendant's failure to warn about information, specifically an ongoing criminal conspiracy occurring through its online platform it had obtained independently. *Id.* In *Internet Brands,* a user was drugged and raped by the conspirators who were using the online platform as a hunting ground to prey on women. *Grindr* recognized that an interactive computer service provider may have a duty to warn where it is aware of a "known conspiracy operating independent of the site's publishing function." 128 F.4th at 1154 (quoting *Yolo*, 112 F.4th at 1181, and citing *Internet Brands*, 824 F.3d at 851). The court then explained why *Grindr* itself did not fall within that rule: "Doe does not allege that Grindr had independent knowledge of a conspiracy." *Id.*

That is the distinction here. The SAC does allege that Discord had independent, self-generated knowledge of a specific criminal conspiracy operating on its platform. Discord's Trust and Safety team filed 58 CyberTipline reports concerning 764 as it was statutorily obligated to do in 18 U.S.C. 2258A. SAC ¶ 28. Discord knew of 764's activities before Jay ever joined the platform. It knew that 764 was exploiting children. It knew that 764 was driving children toward self-harm and suicide. It knew specifically that Javan was the ringleader and that a young Finnish girl, L.S., was being pressured into suicide. L.S., of course, is the very child Javan commanded to orchestrate Jay's suicide. And it knew this through its own internal reporting and interactions with law enforcement. This is not the generalized knowledge that "bad things happen online" Discord would like this to be. It is knowledge of a named criminal organization, a named leader, its activities, its victims, and its reliance



C.A. GOLDBERG PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

on Discord as its operational nerve center—exactly the type of independent knowledge *Internet Brands* and *Grindr* treat as analytically different from ordinary content moderation.

**3. *Yolo* Does Not Change the Analysis.**

Discord also relies on *Estate of Bride v. Yolo Techs., Inc.*, 112 F.4th 1168 (9th Cir. 2024). But *Yolo* does not establish that Section 230 immunizes every claim involving a platform's safety decisions. *Yolo* held that certain product liability claims were barred where the alleged defect was the anonymous-messaging feature itself and the theory required the platform to moderate third-party content. *Id*. at 1180–82. The Ninth Circuit also distinguished claims based on specific moderation-related promises, which do not seek to impose liability for a failure to take particular moderation actions. *Id*. at 1178–79.

Plaintiffs do not allege simply that Discord should have done a better job catching Jay's abusers' messages. They allege that Discord knew a specific criminal organization was systematically exploiting children on its platform and continued operating the product without reasonable measures responsive to that known danger. That is a claim about Discord's own conduct after it acquired independent knowledge of a specific threat.

**4. Section 230 Does Not Protect Discord from Liability for its Own Bad Conduct.**

The Ninth Circuit has repeatedly made clear that Section 230 does not provide a general immunity from liability merely because third-party content is part of the causal chain. In *Barnes*, the court explained that Section 230 does not provide "a general immunity from liability deriving from third-party content." 570 F.3d at 1100. In *Internet Brands*, the Ninth Circuit rejected immunity where the alleged duty arose from information the defendant obtained independently. 824 F.3d at 851–53. In *Lemmon*, the court allowed product liability claims where the duty was independent of publishing. 995 F.3d at 1092–94.



C.A. GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

Discord's proposed rule would erase those distinctions. Under Discord's formulation, any defendant could avoid liability for a defective product simply by identifying one piece of user-generated content that occurred somewhere in the set of facts. That is not the law. The question is whether Discord itself was reasonable in what it did and didn't do in the face of a foreseeable risk. And Plaintiffs allege duties that arise from Discord's own product design, its own safety infrastructure, its own marketing, its own representations, its own knowledge, and its own decision to continue operating the product after learning what 764 was doing.

**5. The Federal Trafficking Claim Falls Within FOSTA's Express Carveout.**

Discord improperly treats Section 230 as the rule and FOSTA as an exception Plaintiffs must narrowly plead around. Congress enacted FOSTA to clarify that Section 230 does not immunize qualifying sex-trafficking claims. 47 U.S.C. § 230(e)(5)(A) provides that Section 230 does not impair or limit:

"[A]ny claim in a civil action brought under section 1595 of title 18, if the conduct underlying the claim violates section 1591 of that title." 47 U.S.C. § 230(e)(5)(A). *See Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1141–42 (9th Cir. 2022).

Discord correctly notes that *Reddit* and *Doe v. Grindr Inc.*, 128 F.4th 1148 (9th Cir. 2025), require a plaintiff to plausibly allege that the defendant's own conduct violated § 1591. The SAC does so. It alleges that Discord knowingly maintained the infrastructure through which 764 operated; had extensive actual knowledge of 764's exploitation of children including specifically that Javan was abusing the Finnish child, L.S. – that abuse of which would soon escalate to Javan commanding L.S. to help him orchestrate Jay's death; continued providing the platform despite that knowledge; designed a product that enabled perpetrators to reach vulnerable children; and financially benefited from maintaining that platform.



C.A.GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

Those allegations go beyond a claim that Discord merely benefited from a trafficker's use of a website. They allege affirmative conduct after Discord acquired actual knowledge of the trafficking enterprise. That distinguishes this case from *Grindr,* where the plaintiff alleged that Grindr advertised its application and received advertising revenue while failing to prevent unlawful matches. 128 F.4th at 1155–56. Whether Plaintiffs can ultimately prove the required elements is a question for discovery and trial. The SAC plausibly alleges them.

**C. The First Amendment Does Not Bar Plaintiffs' Claims.**

Discord's First Amendment argument repackages its Section 230 argument. The First Amendment does not prohibit liability for a defendant's own tortious or potentially criminal conduct merely because third-party speech forms part of the factual circumstances giving rise to the claim. It protects speech; it does not grant general immunity to companies whose independent conduct creates foreseeable risks of harm.

Discord relies on *Smith v. California*, 361 U.S. 147 (1959), and cases concerning distributors of allegedly obscene speech. But Smith cuts against Discord's position. In Smith, the Supreme Court invalidated a strict-liability ordinance that imposed criminal penalties on a bookseller for possessing obscene material without requiring knowledge or scienter. The Court reasoned that absolute liability could chill protected speech by making booksellers afraid to stock books they had not personally inspected. *Id*. at 153–54. The ordinance violated the First Amendment because it eliminated the requirement that the distributor know the character of what it was distributing. *Id*.

Discord's situation is the inverse. Plaintiffs do not allege liability divorced from knowledge. The SAC alleges that Discord knew 764 existed, knew what 764 was doing to children, documented that activity itself, reported it to federal authorities, and continued operating the product without reasonable safeguards or warnings. In other words, Discord recklessly disregarded the information it



C.A.GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

had to increase the risk of child exploitation. Discord cannot hide behind the First Amendment when the liability flows not from the speech of others, but from Discord's own documented knowledge coupled with its refusal to act.

The First Amendment doesn't cosset a company from being held liable for designing a defective product. Nor does it bar liability for failing to warn of a danger independently known to the company. And, albeit Discord's preference, the Bill of Rights was not drafted to protect tech companies who engage in affirmative bad conduct because the company in question operates a platform where users speak.

**D. The Taylors Properly Pleaded All State-Law Claims.**

**1. Discord Had Actual, Specific Notice of 764 and the Danger It Posed.**

Discord repeatedly characterizes its knowledge "general" but that is its own framing not found in the SAC. Discord's own Trust and Safety team filed 58 CyberTipline reports concerning 764's activity between June and August 2021. SAC ¶ 28. Dallas Police separately reported 764's activity on Discord six times. *Id.* ¶ 27. Discord knew 764 was operating on its platform. More importantly, Discord knew what 764 was doing to other Discord users whose safety it feigned to protect. It knew that 764 was producing and distributing child sexual abuse material. It knew that 764 was coercing children into self-harm. It knew that 764 was pushing children toward suicide. It knew of a fifteen-year-old girl's suicide attempt after 764 tormented her on Discord. It knew of a November 2021 suicide incident involving 764. It knew graphic images of children being tortured were circulating on its platform. SAC ¶¶ 132(a)–(d). This is not constructive knowledge. It is precisely the type of specific and actual knowledge that distinguishes this case from the ordinary platform cases Discord cites.

In *Internet Brands*, the Ninth Circuit held that a platform could face a failure-to-warn claim where it knew from an independent source that criminals were using its website to identify victims



C.A. GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

for a rape scheme. 824 F.3d at 851–53. In *Grindr*, the Ninth Circuit preserved that rule while distinguishing the case before it because the plaintiff had not alleged that Grindr possessed independent knowledge of a conspiracy. 128 F.4th at 1154. Here, Plaintiffs have alleged that independent knowledge.

The Court should not convert *Grindr* into a rule that a platform may ignore a known criminal organization and its known members until it receives a report naming a specific child the organization later targets. That would turn the existence of a known criminal scheme into a useless fact precisely when the duty to respond becomes most important.

**2. Discord Proximately Caused Jay's Death.**

Discord argues that Javan's criminal conduct necessarily constitutes a superseding cause. Washington law imposes no such categorical rule. An intervening criminal act does not automatically sever proximate causation. As Washington courts have recognized: "Criminal conduct is, however, not unforeseeable per se." *Adgar v. Dinsmore*, 26 Wash. App. 2d 866, 875, 530 P.3d 236 (2023) (quoting *Washburn v. City of Fed. Way*, 178 Wash.2d 732, 757, 310 P.3d 1275 (2013)). An intervening criminal act does not necessarily break the causal chain where the resulting harm was foreseeable. See*, Id.*. The foreseeability analysis is fact-dependent; Discord cannot establish superseding causation merely by pointing to the criminal conduct of 764. Where the very danger that makes a defendant's conduct unreasonable is the foreseeable criminal exploitation and suicide of a child, the intervention of the criminals who carry out that danger does not sever the causal chain.

Washington applies the Restatement's framework for determining whether an intervening act is superseding. *Campbell v. ITE Imperial Corp.*, 107 Wash. 2d 807, 733 P.2d 969 (1987). The inquiry considers whether the intervening act created a different type of harm, whether it was extraordinary,



C.A. GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

and whether it operated independently of the situation created by the defendant's conduct. Those considerations cannot be resolved against Plaintiffs as a matter of law on the pleaded facts.

The harm here was not merely foreseeable in the abstract. Plaintiffs allege that Discord knew 764 was driving children toward self-harm and suicide before Jay died. Discord knew in July 2021 that a fifteen-year-old girl had attempted suicide after 764 tormented her on Discord. SAC ¶ 132(a). It knew in November 2021 that a victim had been goaded toward suicide in a Discord chat. Id. ¶ 132(d). Jay died approximately two months later after being targeted by the same organization. The precise category of harm Discord allegedly knew about materialized.

The Washington Supreme Court's recent decision in *Scott v. Amazon.com, Inc.* independently forecloses dismissal on this basis. 6 Wash. 3d 1, 583 P.3d 1155 (2026). There, the Supreme Court held that whether suicide was a foreseeable consequence of a defendant's conduct could not be resolved at the motion-to-dismiss stage where foreseeability remained factually disputed. *Id*. at 13–16, 583 P.3d at 1160–63. If foreseeability could not be resolved on the pleadings in *Scott*, it certainly cannot be resolved against Plaintiffs here, where the SAC alleges that Discord had documented prior suicides and suicide attempts involving the same criminal organization.

Discord's argument also ignores its alleged affirmative role. Plaintiffs allege that Discord designed and operated the infrastructure through which 764 could find vulnerable children; permitted private communications between adults and minors; declined to verify age and identity meaningfully; and continued providing access to the platform after documenting the organization's crimes. Whether that conduct proximately caused Jay's death requires factual development.

**3. The Taylors Properly Pleaded Outrage.**

Washington's tort of outrage requires proof of three elements: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of



C.A. GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

severe emotional distress." *Trujillo v. Northwest Trustee Services, Inc.*, 183 Wash. 2d 820, 840 (2015) (quoting *Kloepfel v. Bokor*, 149 Wash. 2d 192, 195, 66 P.3d 630 (2003)). Where conduct is directed at a third person, Washington law incorporates Restatement (Second) of Torts § 46(2)(a), which limits recovery to immediate family members who were present at the time. *Lund v. Caple*, 100 Wash. 2d 739, 675 P.2d 226 (1984). That rule concerns bystander claims arising from conduct aimed at third persons; it does not automatically dispose of claims alleging a course of extreme and outrageous conduct independently directed toward the plaintiffs themselves. *Id*. The SAC plausibly alleges each required element.

**a. Discord's Conduct Was Extreme and Outrageous.**

Discord knew a criminal organization was using its platform to torture children, distribute child sexual abuse material, and drive children toward suicide. Discord learned this months before Jay died. Its own Trust and Safety team generated 58 federal reports concerning 764. SAC ¶ 28. Discord knew about prior suicide-related incidents. It knew about the exploitation of children. It knew about Javan. And it continued to operate the same platform without taking reasonable steps commensurate with the known danger. Whether that conduct ultimately meets the demanding outrage standard is not appropriately resolved on the pleadings. The SAC alleges conduct from which a reasonable jury could conclude that Discord acted with reckless disregard for a known and extraordinary risk to children.

**b. The SAC Pleads Intentional or Reckless Conduct.**

The SAC alleges deliberate corporate decisions, not an isolated mistake. Discord chose to operate with 79 safety staff for 150 million monthly global users in 2022. It chose not to moderate small servers, permitted adults to contact minors, did not verify age meaningfully, and continued



C.A. GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

providing access to the platform after receiving extensive information about 764. Those allegations support an inference of reckless disregard.

**c. The Conduct Was Directed at Jay and His Family.**

Discord argues that it could not have directed conduct toward Jay because it did not know his name. That sets the bar higher than the law. Plaintiffs allege that Discord marketed its platform to children like Jay, knew children were targets of 764, and maintained the environment through which 764 found Jay. Whether that conduct satisfies the directedness requirement should be assessed against the full factual allegations, not defeated solely because Discord did not know in advance which child would be targeted.

**d. The Taylors' Physical Presence Does Not Resolve the Claims on the Pleadings.**

Discord relies on *Lund v. Caple*, to argue that Jay's parents were not physically present when he was abused. 100 Wash. 2d 739, 675 P.2d 226 (1984). But Plaintiffs allege more than distress arising solely from witnessing harm to a third person. They allege that Discord marketed itself to parents and children as safe while operating a product that enabled the very secret adult-minor communications parents could not see. The SAC's allegations concerning Discord's representations and conduct must be considered in determining whether the parents' claims are independently directed toward them. The question under Lund is whether the parents' claim concerns outrageous conduct toward them or instead toward a third person for which the immediate-family presence rule applies. The SAC's allegations must be assessed under that distinction.

**4. Discord Is a Product Subject to Washington Product Liability Law.**

Discord argues that it cannot be a "product" because it is a "service." The label resolves nothing. Washington's Product Liability Act provides: "'Product' means any object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and


C.A.GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM
Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

produced for introduction into trade or commerce." Wash. Rev. Code § 7.72.010(3). The SAC alleges that Discord is commercially distributed software, downloaded through commercial application marketplaces, installed on physical devices, and monetized through subscriptions and other paid features. SAC ¶¶ 163–65. Plaintiffs challenge Discord's design and functionality, not the content of any particular message.

Discord relies on *Quinteros v. InnoGames*, No. C19-1402RSM, 2022 WL 898560, at *7 (W.D. Wash. Mar. 28, 2022), aff'd in part, rev'd in part, and remanded, No. 22-35333, 2024 WL 132241 (9th Cir. Jan. 8, 2024), and *Grigsby v. Valve Corp.*, No. C12-0553JLR, 2013 WL 12310666, at *6 (W.D. Wash. Mar. 18, 2013). But neither establishes a rule that commercially distributed software can never constitute a product under Washington law.

The products-liability analysis in *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, focused on platform design and functionality rather than treating user-generated content as dispositive, 702 F. Supp. 3d 809 (N.D. Cal. 2023). That is the relevant distinction here. Plaintiffs allege that Discord's design created foreseeable dangers and that safer designs and safeguards were available. The claim should proceed to discovery.

Discord also argues that the dangers of communicating with strangers online are obvious. Mot. at 20. But whether a danger is open and obvious is fact dependent. See *Schuck v. Beck*, 19 Wash. App. 2d 465, 485–86, 497 P.3d 395 (Wash. Ct. App. 2021) (citing *Ewer v. Goodyear Tire & Rubber Co.*, 4 Wash. App. 152, 162, 480 P.2d 260 (Wash. Ct. App. 1971)). And Discord's argument ignores the user at issue. Jay was thirteen. He joined Discord to find a pen pal interested in crocheting. The SAC alleges that Discord marketed directly to teenagers and represented itself as a safe environment for them. SAC ¶¶ 47, 58, 67–70. The question is not whether a sophisticated adult internet user understands that strangers may pose dangers online. The question is whether the specific dangers



C.A.GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

Discord's product created, and that Discord itself knew about, were obvious to the thirteen-year-old child Discord invited onto the platform—whether a thirteen-year-old understands that predators run rampant on Discord, and whether a thirteen-year-old can glean from a stranger's messages that he is one. None of that can be answered on a motion to dismiss.

Discord's reliance on *Doe v. SexSearch.com*, 551 F.3d 412 (6th Cir. 2008), is as misplaced as it is alarming. SexSearch is a platform that was designed for the purpose of facilitating adult sexual encounters. The alleged risk there was inseparable from the service's expressly adult purpose. Discord, by contrast, markets itself to teenagers, school communities, and parents as a place for kids to safely find community.

Discord's open-and-obvious argument is self-defeating. Discord cannot market its platform as a safe space for teenagers, design it in a way that exposes them to predators, and then argue that the resulting risk of child sexual exploitation was obvious to the children it invited onto the platform. The SAC alleges that Discord concealed the risks through safety representations and failed to implement available safeguards. Those allegations preclude resolving the open-and-obvious issue on the pleadings. A manufacturer does not escape liability for a defective design by calling its own defects foreseeable and its own dangers obvious—especially where it concealed those defects through safety promises and withheld the safeguards available to make the product safe. Discord's argument essentially says: we understood the risk, we marketed on a promise to protect users from that risk, and the child now dead should have known better than to believe our promise.

This Court should not reward Discord for manufacturing the very danger it now calls obvious.

**5. Discord Owed and Breached Its Duty of Care.**

Washington law recognizes a general duty to exercise reasonable care to avoid the foreseeable consequences of one's conduct, including a duty arising from affirmative conduct that creates or



C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

exposes another to a recognizable high degree of risk. *Washburn v. City of Fed. Way*, 178 Wash.2d 732, 757, 310 P.3d 1275 (2013). Whether a duty exists is a question of law that depends on "logic, common sense, justice, policy, and precedent, as applied to the facts of the case." *Centurion Props. III v. Chi. Title Ins.*, 186 Wash. 2d 58, 65 (2016).

The SAC pleads several independent bases for Discord's duty. First, Discord actively marketed its product to children, including teenagers in Jay's demographic. SAC ¶¶ 47, 58. Second, Discord made affirmative safety representations to parents and users. *Id.* ¶¶ 67–70. Third, Discord had actual knowledge of the specific danger posed by 764. Fourth, Discord affirmatively designed and operated the product in a manner that permitted adults and children to communicate privately without meaningful identity verification.

These allegations distinguish this case from *M.L. v. Craigslist, Inc.*, No. 3:19-cv-06153-BHS-TLF, 2021 WL 5217115 (W.D. Wash. Sept. 16, 2021), report and recommendation adopted in part, rejected in part on other grounds, 2022 WL 1210830 (W.D. Wash. Apr. 25, 2022) (Settle, J.). *M.L.* did not involve allegations of specific, self-generated knowledge of a named criminal organization systematically exploiting children on the defendant's platform. The duty alleged here is not a generalized duty to prevent all criminal conduct by strangers on the internet. It arises from Discord's own conduct after it learned of a specific and extraordinary danger.

Discord also characterizes its alleged conduct as nonfeasance rather than misfeasance. Mot. at 22. The SAC alleges otherwise. Washington distinguishes passive inaction from misfeasance that creates a new risk of harm, and an affirmative act may give rise to an independent duty to protect against third-party criminal conduct. *Robb v. City of Seattle*, 176 Wash.2d 427, 435–38 (2013) (citing Restatement (Second) of Torts § 302B cmt. e). Although *Robb* concluded that police officers' failure to pick up discarded shotgun shells during a Terry stop constituted nonfeasance on the facts of that



C.A.GOLDBERG PLLC. NEW YORK 16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908 WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC 101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

case, *Id*. at 438–40, it affirmed § 302B comment e that an actor can owe a duty to protect against a third party's criminal actions if their own *affirmative misfeasance* creates or exposes others to a recognizable high degree of risk. *Id.*

The SAC alleges several forms of affirmative conduct here. For example, designing a product that permitted unrestricted adult-minor communications (SAC ¶ 7, 53, 171, 190); marketing that product to children (SAC ¶ 3, 32, 47, 54, 67-70, 200, 206, 221); choosing its safety architecture, reporting infrastructure, and non-moderation model; (SAC ¶ 59-66, 71, 73-77, ) and continuing to operate it after learning that 764 was systematically exploiting children (SAC ¶ 26-39, 116-133, 136). These allegations describe the design and operation of a product that increased a known risk of severe harm, not merely a failure to intervene in a stranger's conduct. *Robb* is useful in drawing this distinction between passive failure to protect and affirmative conduct creating risk—liability attaching to the latter.

**6. The Taylors Properly Pleaded a Claim Under Wash. Rev. Code § 9A.40.100.**

Discord's state trafficking argument rests on two incorrect premises. First, that the statutory verbs necessarily require physical custody of the victim, and second, that Plaintiffs must allege Discord knew in advance the precise communications that would ultimately cause Jay's death.

Neither follows from the statute. As in effect at the time of the conduct in January 2022, Wash. Rev. Code § 9A.40.100(1) prohibits a person from recruiting, enticing, harboring, transporting, isolating, soliciting, providing, obtaining, buying, purchasing, maintaining, or receiving another person while knowingly or recklessly disregarding that force, fraud, or coercion will be used to cause the person to engage in specified exploitative conduct. Wash. Rev. Code § 9A.40.100(3) separately reaches a person who knowingly causes a minor to engage in a sexually explicit act or commercial



C.A.GOLDBERG PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

sex act, or who benefits financially or by receiving anything of value from participation in a venture that has engaged in such acts.

The statute does not require physical custody for every listed verb. "Recruits," "entices," "solicits," "provides," and "maintains" do not inherently require physical possession of a person. Discord's interpretation would render several of the Legislature's chosen verbs redundant. The SAC alleges that Discord provided the infrastructure through which 764 recruited, isolated, manipulated, and exploited children; knew that 764 was operating on its platform and coercing children into sexually explicit conduct; continued providing that infrastructure; and financially benefited from maintaining the platform. Those allegations are sufficient at the pleading stage. Cf. *M.L. v. Craigslist, Inc.*, 2021 WL 5217115, at *10–11 (allowing a parallel Washington trafficking-predicate claim to proceed on allegations that the platform knowingly created features enabling traffickers to operate undetected and knowingly profited from that activity), adopted, 2022 WL 1210830 (W.D. Wash. Apr. 25, 2022). Discord's reliance on *M.L.* is misplaced for the same reason. There, this Court dismissed a parallel Wash. Rev. Code § 9A.40.100 trafficking predicate against craigslist because the complaint "fail[s] to state any factual allegations indicating that craigslist knew, actually or constructively, that [the] plaintiff was being trafficked by force, fraud, or coercion or that craigslist was knowingly profiting from such trafficking." The dismissal was without prejudice. *Id*. at *8–9.

The SAC does not share that gap. It alleges specific, self-generated knowledge of a named trafficking organization and its leader, including 58 CyberTipline reports concerning 764 and a report specifically documenting Javan's abuse of L.S., months before Jay was targeted. That is the defendant-specific knowledge *M.L.* found missing.

The Court should permit the claim to proceed to discovery.



C.A. GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

**7. The Taylors Plausibly Pleaded a Civil TVPRA Claim Based on a Violation of § 1591.**

Discord's attack on the federal trafficking claim fails for the same reason its attack on the state trafficking claim fails: it treats this case as though Discord had the same generalized, after-the-fact awareness of third-party misconduct that defeated the claims in *Doe v. Grindr Inc.*, 128 F.4th 1148 (9th Cir. 2025); *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022); and *Doe v. Webgroup Czech Republic*, AS, No. 25-2424, 2026 WL 2334146 (9th Cir. Aug. 12, 2026) (unpublished memorandum disposition). It did not. The SAC alleges that Discord possessed specific, pre-event, documented knowledge of Javan by name—obtained through Discord's own CyberTipline reporting and internal investigation—months before Javan used that same unimpeded access to recruit, exploit, and ultimately kill Jay. SAC ¶¶ 117–22, 132–36, 212–13. That distinction, which drives the Section 230 and failure-to-warn analysis above, drives the trafficking analysis too.

Discord argues that no "commercial sex act" is alleged because Javan did not extract sex acts from Jay in exchange for anything of value, citing the definition of a commercial sex act in *United States v. Clark*, 435 F.3d 1100, 1114 (9th Cir. 2006) (addressing the definition in a different statutory context) and *United States v. Raniere*, 55 F.4th 354, 363–64 (2d Cir. 2022). This narrows the inquiry too far. The venture Discord is alleged to have knowingly benefited from and participated in was not limited to Jay's death—it encompassed Javan's use of Discord to exploit children and coerce production and dissemination of child sexual abuse material in exchange for status within 764 and, as to Javan's own conduct, for his sexual gratification. SAC ¶¶ 81, 95–101, 114, 199, 206–09. The statute does not require a monetary payment. The Second Circuit held in *Raniere* that "anything of value" under 18 U.S.C. § 1591(e)(3) is not limited to financial transactions and encompasses nonmonetary advantages, including organizational status or privileges. 55 F.4th at 363–64. This is



C.A.GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

not a case where Plaintiffs must locate a cash transaction. Jay was recruited into and killed as part of that same commercial venture—not an act severed from it.

Second, Discord argues the SAC alleges only general awareness, not the knowledge-and-intent required by *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010), and *United States v. Wearing*, 865 F.3d 553, 556 (7th Cir. 2017), to "cause" a minor to engage in a commercial sex act. Those are criminal prosecutions construing § 1591's elements; the question for this civil claim is the ordinary plausibility standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Measured against that standard, the SAC does not stop at general awareness—it alleges that Discord knowingly recruited, enticed, provided, and solicited minors, including Jay, "knowing and causing them to be used in commercial sex acts," SAC ¶ 200, and that Discord "is not merely a beneficiary of third-party trafficking but itself knowingly participated in a sex trafficking venture," SAC ¶ 209.

Finally, Discord argues the SAC alleges only that Discord furnished a platform and collected general subscription and advertising revenue—what *Grindr*, 128 F.4th at 1155; *Reddit*, 51 F.4th at 1141, 1145; and *Webgroup Czech Republic*, 2026 WL 2334146, at *2, held insufficient to show knowing participation in, and a knowing causal connection to, the venture. But each of those cases turned, in substantial part, on the absence of defendant-specific knowledge of the particular perpetrator or venture. In *Webgroup*, the court affirmed dismissal because the plaintiff's pre-suit communications did not put the platform on notice of the sex-trafficking circumstances, meaning the defendant lacked knowledge connecting the uploads to a trafficking venture as opposed to ordinary third-party content.

Here, the SAC alleges that Discord had actual, documented knowledge of Javan himself and his pattern of exploiting children on Discord's platform before Jay was ever targeted, SAC ¶¶ 117–22, 132–36, 211–13, and that Discord continued to provide Javan access to its infrastructure and



C.A.GOLDBERG PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com

continued to profit from the traffic and engagement that access generated, after acquiring that knowledge. SAC ¶¶ 193, 202–03, 205, 214, 221. That is the causal and knowledge link *Reddit* and *Grindr* found missing on their own facts, not the kind of blind eye to a volume source of revenue those courts rejected. This Court has already recognized that distinction in the trafficking context. A theory that a platform knowingly profited from a trafficking enterprise it facilitated "[does] not seek to hold [the defendant] liable for the content created by a third party or for acting as the publisher of third-party content." *M.L.*, 2022 WL 1210830 at *10–11.

The Court should permit the federal trafficking claim to proceed to discovery.

## CONCLUSION

Discord asks this Court to resolve fact questions concerning what it knew, when it knew it, what risks it understood, how its product was designed, whether those risks were foreseeable, and whether its conduct caused Jay's death. The SAC alleges that Discord knew 764 was operating on its platform months before Jay joined; knew that 764 was exploiting children and driving them toward self-harm and suicide; documented that knowledge; knew about Javan's activities; and nevertheless continued operating a product that exposed the children it invited to that known danger.

The Court should deny Discord's motion to dismiss in its entirety.

**DATED** this 19th day of October, 2026

CORRIE YACKULIC LAW FIRM, PLLC

/s/ Corrie J. Yackulic
Corrie J. Yackulic, WSBA #16063
101 Yesler Way, Suite 600
Seattle, WA 98104
Tel. (206) 787-1915
corrie@cjylaw.com

C.A. GOLDBERG, PLLC

/s/ Carrie Goldberg
Carrie Goldberg (*pro hac vice*)
Naomi Leeds (*pro hac vice*)
Roshelle Firdman (*pro hac vice*)
16 Court Street, 33rd Floor
Brooklyn, New York 11241

Tel. (646) 666-8908
carrie@cagoldberglaw.com
naomi@cagoldberglaw.com
roshelle@cagoldberglaw.com

*Attorneys for Plaintiff*

*I certify that this memorandum contains 8,377 words in compliance with Local Civil Rules.*



C.A. GOLDBERG PLLC NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

Corrie Yackulic LAW FIRM PLLC
101 Yesler Way Suite 600, Seattle, WA 98104 · 206-787-1915 · www.cjylaw.com